**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

DIANE MURPHY,

      Plaintiff,

v.

                                          NO.  1:05cv443-W
                                          Demand for Jury Trial

ADVANCE AMERICA CASH
ADVANCE CENTERS OF ALABAMA,

      Defendant.

---

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff alleges disparate treatment and hostile work environment race discrimination under 42 U.S.C. § 1981.  Plaintiff claims she was denied promotion on three occasions, was paid less as a Branch Manager than Caucasians and was terminated on the basis of her race.

However, the undisputed material facts reveal that Plaintiff: 1) was timely promoted to a Branch Manager position; 2) did not suffer disparate treatment with respect to her pay as a Branch Manager; 3) was transferred with the same pay, benefits and duties to another branch as part of a corporate reorganization; and 4) was ultimately terminated from her employment because she violated the Fair Debt Collection Practices Act, failed to implement a marketing plan as directed by her supervisor, and failed to comply with the Company Collection Policy.

Arguably, Plaintiff's Complaint alleges that she was subjected to a racially hostile work environment by being required to "clean toilets" and perform "door to door marketing." She testified

at her deposition, however, that all Branch Managers were responsible for cleaning (including toilets) and that Caucasian, as well as African American, employees performed door to door marketing.

Plaintiff's disparate treatment claims should be dismissed because: (1) Plaintiff cannot establish a *prima facie* claim of race discrimination in violation of § 1981; (2) Defendant has stated legitimate, nondiscriminatory reasons for its actions; and (3) Plaintiff cannot show that Defendant's legitimate, nondiscriminatory reasons are a pretext for race discrimination.

Plaintiff's hostile work environment claim should be dismissed because the facts demonstrate that the activities required of Plaintiff for which she claims harassment were race neutral being required of all employees. Further, these actions were not sufficiently severe or pervasive so as to alter the terms and conditions of her employment. Moreover, Plaintiff admits that she was aware of but never used Defendant's anti-harassment policy and reporting procedures. She never complained about any alleged racial harassment or racial discrimination during her employment. Thus, she failed to take advantage of procedures reasonably calculated by the employer to avoid such harm.

## SUMMARY JUDGMENT STANDARD

Summary judgment, which is designed to "isolate and dispose of" factually unsupported claims, must be granted where the record evidence, including the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment in its favor as a matter of law. Federal Rule of Civil Procedure 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material and must be facts which, under the

substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Once a defendant moves for summary judgment, the plaintiff may not rest on conclusory allegations or denials in the pleadings or rumors and subjective beliefs. Fed. R. Civ. P. 56(e); *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Neither the mere existence of some alleged factual dispute nor the existence of "some metaphysical doubt as to the material facts" is sufficient to avoid summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Similarly, the plaintiff cannot rely on speculation in order to defeat a summary judgment motion. *Celotex*, 477 U.S. at 324. Rather, a plaintiff must tender cold, hard facts that establish a necessary and genuine issue for trial. *Id.* "A complete failure of proof on an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 323.

In cases of employment discrimination, judgment as a matter of law for the employer is appropriate if the plaintiff fails to establish a *prima facie* case of discrimination or fails to raise a factual dispute regarding the employer's proffered reasons for the alleged discriminatory act. *See Holifield v. Reno*, 115 F.3d 1555 (11th Cir. 1997).

### STATEMENT OF UNDISPUTED[1] MATERIAL FACTS[2]

1.     Diane Murphy was hired by Advance America on March 23, 2000 as Assistant

---

[1]     The facts set forth below are undisputed for purposes of summary judgment only. A number of these facts will be disputed at trial, but such disputes do not create a genuine issue of material fact which would preclude summary judgment.

[2]     Referred to in the Argument section below as "SOF."

Manager for the Enterprise branch. (Deposition of Plaintiff Diane Murphy ("Plaintiff's dep."), pp. 39, l.2-40, l.4; 117, ll. 4-21; Ex. 2).[3]

2.     Murphy signed an Acknowledgment and Proof of Acceptance of Employee Handbook, and she had access to the Advance America's employee handbook throughout her employment. (Plaintiff's dep., pp. 149, ll.7-9; 183, l.13-84, l.6; Ex. 11).

3.     Murphy also signed an Acknowledgment and Proof of Acceptance of the Anti-Harassment Policy. She always had access to the anti-harassment policy and reporting procedures that accompanied the policy. (Plaintiff's dep., pp. 185, l.9-86, l.7; Ex. 14; Declaration of John Knowles, ¶ 41, Ex. I, J).[4]

4.     After Plaintiff's initial manager at the Enterprise branch transferred to another branch in Florida, Plaintiff claims she expressed an interest in the manager position to Divisional Director of Operations ("DDO"), John Knowles. (Plaintiff's dep., pp. 48, l.16-49, l.5; 59, ll.11-18).

5.     Branch Manager of the Troy branch, Edward Finnegan, was transferred to the Enterprise branch on May 28, 2001. (Declaration of John Knowles, ¶ 7).

6.     While Plaintiff contends that she should have received the Enterprise Branch Manager position instead of Edward Finnegan, it is undisputed that Knowles did not select her for the position because Plaintiff lacked the necessary qualifications for the job. (Plaintiff's dep., pp. 55, ll.3-13; 59, l.16-60, l.9; Declaration of John Knowles, ¶¶ 6-8).

7.     Knowles met with Plaintiff well before he transferred Finnegan to the Enterprise

---

[3]     Referenced excerpts from the deposition transcript of Plaintiff Diane Murphy are attached hereto as Exhibit 1.

[4]     The Declaration of John Knowles is attached hereto as Exhibit 2.

branch for purposes of helping Plaintiff understand why she did not have the minimum qualifications of the job. (Plaintiff's dep., pp. 59, l.16-60, l.9; Declaration of John Knowles, ¶ 8).

8.    Plaintiff claims that Knowles told her that if she later proved that she was capable of running a branch, she would receive the next available branch manager position, "which was supposed to be the Ozark store." (Plaintiff's dep., pp. 60, ll.4-9; 67, ll.9-18).[5]

9.    Plaintiff does not know what Mr. Finnegan's background was. (Plaintiff's dep., p. 55, ll.16-18).

10.    Edward Finnegan lived in Enterprise, Alabama and had many years of management and collections experience prior to becoming employed by Defendant. At the time Finnegan was transferred to the Enterprise branch, he had more management and collection experience than Plaintiff. Finnegan's superior qualifications were a factor in John Knowles' decision to transfer Finnegan to Enterprise instead of promoting Plaintiff. (Declaration of John Knowles, ¶ 10, Ex. A).

11.    Plaintiff claims that she interviewed with DDO Jennifer Rodriguez for the Ozark Branch Manager position when it became available. (Plaintiff's dep., pp. 60, l.10-62, l.2).

12.    On or about September 24, 2001, Deborah Mercer, a Caucasian female, was promoted to the Ozark Branch Manager position. (Plaintiff's dep., pp. 60, l.10-62, l.19; Declaration of John Knowles, ¶ 11).

13.    Plaintiff was not selected for the Ozark Branch Manager position because, when informed that the Ozark position was available, Plaintiff told John Knowles that she did not want him to interview her for the position; consequently, Knowles did not interview Plaintiff or consider

---

[5]    John Knowles testified that he told Plaintiff that, if she later improved and became qualified, she would be considered for promotion with her peers to any available branch manager position – not a specific location. (Declaration of John Knowles, ¶ 9).

her for the position.[6] Even if Plaintiff had interviewed for the position, Knowles would not have selected her because Plaintiff had not yet proven to Knowles that she was capable of running a branch. (Declaration of John Knowles, ¶ 12).

14.    Plaintiff admits that she does not know Ms. Mercer's qualifications for the job or her educational or work background. (Plaintiff's dep., p.70, ll.7-9).

15.    Prior to being hired by Defendant, Mercer had approximately twenty-five (25) years of management experience. (Declaration of John Knowles, ¶ 13, Ex. B).

16.    During her employment with Defendant, Deborah Mercer was a team player who was well respected by her superiors, peers and subordinates. She was hired as a CSR and quickly moved to the Assistant Manager position at Defendant's Dothan store. At Dothan, she was instrumental in helping move the store from a sub-par operation to one of the best in the region. She did this by setting up a marketing program that produced over 300 new customers in a one-year period. (Declaration of John Knowles, ¶ 14).

17.    In or about July 2002, Plaintiff received a performance evaluation which stated that Plaintiff was promotable with additional training and experience. (Plaintiff's dep., pp. 131, l.1-33, l.8; Ex. 5).

18.    The July 2002 performance evaluation also stated that Plaintiff needed to "work on planning in collections and marketing and be more productive towards these areas." (Plaintiff's dep., pp. 134, l.1-41, l.12; Ex. 5).

19.    DDO John Knowles signed off on the July 2002 performance evaluation on August

---

[6]    As set forth below, this does not create a genuine issue of material fact which would preclude summary judgment.

12, 2002. (Plaintiff's dep., p. 141, ll.2-7; Ex. 5).

20.    Plaintiff claims she later expressed to John Knowles her interest in the Dothan Branch Manager position when it became available. (Plaintiff's dep., pp. 67, l.21-68, l.9).[7]

21.    On or about September 30, 2002, Jennifer Baker, a Caucasian female, was promoted to the Dothan Branch Manager position instead of Plaintiff. (Plaintiff's dep., pp. 68, l.10-69, l.13).

22.    Plaintiff admits that she does not know Ms. Baker's qualifications. (Plaintiff's dep., pp. 69, l.20-70, l.6).

23.    Prior to the time the Dothan manager position was filled, John Knowles offered Plaintiff the Branch Manager position at Defendant's Andalusia center.  Plaintiff declined the offer. (Plaintiff's dep., pp. 65, l.23-68, l.2; 235, l.13-36, l.18; Declaration of John Knowles, ¶ 17).

24.    Plaintiff did not want the Andalusia branch manager position because she didn't want to move her ailing mother, for whom Plaintiff had care giving responsibilities, away from her doctor. (Plaintiff's dep., pp. 67, ll.3-8; 235, l.18-236, l.3).

25.    The Andalusia branch is approximately 40 miles from the Enterprise branch, where Plaintiff was then working.  (Declaration of John Knowles, ¶ 18).

26.    Prior to the time the Dothan Branch Manager position was filled, John Knowles also offered Plaintiff the Branch Manager position at Defendant's Opp branch. (Declaration of John Knowles, ¶ 19).

27.    Plaintiff told John Knowles that she did not want to be considered for the Branch

_____

[7] John Knowles testified that he asked Plaintiff if she wanted to be considered and interviewed for the Dothan position, but she declined.  (Declaration of John Knowles, ¶ 16). Consequently, Knowles did not interview or consider Plaintiff for her position. (Declaration of John Knowles, ¶ 16).  As noted below, this does not create a genuine issue of material fact which would preclude summary judgment.

7

Manager position at the Opp branch. (Declaration of John Knowles, ¶ 19).

28.    The Opp branch is approximately 20 miles from the Enterprise branch, where Plaintiff was then working.  (Declaration of John Knowles, ¶ 20).

29.    Plaintiff was later promoted by John Knowles to the Ozark Branch Manager position on November 25, 2002. (Plaintiff's dep., pp. 75, l.6-76, l.19; 79, l.15-83, l.9; 146, l.14-48, l.17; Ex. 6; Declaration of John Knowles, ¶ 21).

30.    Upon being promoted to manager of the Ozark branch, Plaintiff received a raise from $8.63/ hr to $11.06/hr. (Plaintiff's dep., pp. 147, l.23-48, l.11; Ex. 6; Declaration of John Knowles, ¶ 22, Ex. C).

31.    Plaintiff claims shortly after she was promoted to the Ozark Branch Manager position, another Branch Manager told her that Plaintiff was not earning as much as the other Branch Managers. (Plaintiff's dep., pp. 226, l.20-29, l.20).

32.    Plaintiff has no personal knowledge of the salaries of the other Branch Managers to which she seeks to compare, except for the Branch Manager who told her about the alleged pay disparity. (Plaintiff's dep., pp.  226, l.20-29, l.20).

33.    Plaintiff  alleges that the alleged disparity in salary with other Branch Managers occurred at the time she was promoted to Branch Manager of the Ozark store. (Plaintiff's dep., pp. 227, l.20-29, l.20).

34.    Plaintiff acknowledged that at the time she was promoted she was the least experienced Branch Manager. (Plaintiff's dep., p. 229, ll.16-20).

35.    When setting the salary of a Branch Manager, Defendant considers the manager's qualifications and experience and the size of the branch. (Declaration of John Knowles, ¶ 24).

36.    As Branch Manager, Plaintiff was paid a salary commensurate with her qualifications and experience and commensurate with the size of the Ozark branch. (Declaration of John Knowles, ¶ 23).

37.    The Caucasian Branch Managers in Division 7 who had a higher salary than Plaintiff, at the time Plaintiff was promoted to Branch Manager, managed a larger store and/or had better qualifications and experience than Murphy. For instance, Deborah Mercer (then Hughes) had over 25 years of prior management experience and managed a larger store (Eufaula #1635) with almost twice the budgeted revenue ($25,406) of the Ozark store ($13,325). Likewise, Eunice Bartholomew managed a store (Dothan #1610) with over three (3) times the budgeted revenue ($45,703) of the Ozark store. (Declaration of John Knowles, ¶¶ 25-26, Ex. D).

38.    Rhonda J. Herring, a Caucasian Branch Manager of Center #1664 in Dothan was being paid a salary ($9.55/hr) which was <u>lower</u> than Diane Murphy's salary at the time Murphy was promoted to Branch Manager. (Declaration of John Knowles, ¶ 27, Ex. D).

39.    In June 2003, Plaintiff received a performance evaluation from John Knowles. (Plaintiff's dep., pp. 149, l.17-154, l.14; Ex. 7).

40.    In August 2003, Diane Murphy received a pay increase from $11.06/hr to $11.27/hr. (Declaration of John Knowles, ¶ 28).

41.    In June 2004, Plaintiff was transferred to Floating Branch Manager. Murphy received the same salary and benefits after the transfer, and she retained the same basic duties after the transfer. (Declaration of John Knowles, ¶ 29, Ex. E).

42.    At the time Diane Murphy was transferred to Floating Branch Manager, her salary was higher than at least six (6) Caucasian Branch Managers in Division 7 (Dorothy May, Arlene

Cook, Jennifer Sheffield, Angel Thornton, Christine Jackson, and Paula Thomas). (Declaration of John Knowles, ¶ 30, Ex. D).

43.    In August 2004, Diane Murphy received a pay increase from $11.27/hr to $11.61/hr. (Declaration of John Knowles, ¶ 31).

44.    On August 3, 2004, Plaintiff was counseled because her branch was violating the Fair Debt Collection Practice Act and the Company's Collection Policy. (Plaintiff's dep., pp. 156, l.13-62, l.8; Ex. 9).

45.    In or about October 2004, Plaintiff was transferred to the Enterprise branch due to a corporate reorganization. (Plaintiff's dep., pp. 93, l.22-100, l.22; 154, l.15-156, l.12; Declaration of John Knowles ¶ 32, Ex. F).

46.    Regional Director of Operations, Brenda Stewart, an African American, approved John Knowles' decision to transfer Plaintiff to the Enterprise branch as part of that corporate reorganization. (Plaintiff's dep., pp. 102, l.2-104, l.8; Declaration of Brenda Stewart,[8] ¶ 3; Declaration of John Knowles, ¶ 32).

47.    Plaintiff received the same salary and benefits after the transfer. She retained the same basic duties after the transfer. (Plaintiff's dep., pp. 88, l.1-92, l.19; Declaration of John Knowles, ¶ 33).

48.    Plaintiff's claims that she had "a lot more to do" because she claims Enterprise had a larger customer base than the Ozark branch. (Plaintiff's dep., pp. 90, l.4-92, l.19).

49.    At the time Diane Murphy was transferred to the Enterprise branch, her salary was higher than at least six (6) Caucasian Branch Managers in Division 7 (Dorothy May, Angel

---

[8]    The Declaration of Brenda Stewart is attached hereto as Exhibit 3.

Thornton, Jennifer Drewell, Jennifer Sheffield, Christine Jackson, and Helen Davis). (Declaration of John Knowles, ¶ 34, Ex. D).

50.     Upon Plaintiff's transfer to the Enterprise branch, John Knowles directed Plaintiff to come up with a marketing plan for the branch. (Plaintiff's dep., pp. 168, l.15-173, l.17; Ex. 10; Declaration of John Knowles, ¶ 35).

51.     On November 2, 2004, Knowles conducted an audit of the Enterprise branch which revealed that Plaintiff had not implemented a marketing plan. (Plaintiff's dep., pp. 173, l.1-74, l.23; Ex. 10; Declaration of John Knowles, ¶ 36).

52.     On December 16, 2004, John Knowles conducted another audit of the Enterprise branch. ( Plaintiff's dep., pp. 168, l.15-76, l.4; Ex. 10; Declaration of John Knowles, ¶ 37).

53.     The December 16, 2004 audit revealed that Plaintiff had not implemented a marketing plan as Knowles had previously instructed her to do. (Plaintiff's dep., pp. 171, l.1-76, l.4; Ex. 10; Declaration of John Knowles, ¶ 37, Ex. G).

54.     In December 2004, Defendant terminated Plaintiff's employment because she violated the Fair Debt Collection Practices Act, she failed to implement a branch marketing plan as her supervisor had directed her to do, and she failed to comply with the Company's Collection Policy. (Plaintiff's dep., pp. 190, l.22-97, l.8; Ex. 15; Declaration of John Knowles, ¶ 39, Ex. H; Declaration of Brenda Stewart, ¶ 4).

55.     John Knowles made the decision to terminate Plaintiff's employment after consulting with and receiving the approval of Brenda Stewart. (Declaration of John Knowles, ¶ 40; Declaration of Brenda Stewart, ¶ 5).

56.     John Knowles and Brenda Stewart advised Plaintiff in person that her employment

was terminated. (Plaintiff's dep., pp. 191, l.6-97, l.8; Declaration of Brenda Stewart, ¶ 6).

57.    Plaintiff identified only two practices which she alleges support her claim of a racially hostile work environment - being made to "clean toilets" and "conduct door to door marketing." (Plaintiff's dep., pp. 221, l.1-25, l.9; Ex. 16).

58.    Plaintiff acknowledges that both African American and Caucasian employees were required to clean the bathrooms at Defendant's stores and perform marketing since each store was staffed with 1 to 3 employees. (Plaintiff's dep., pp. 50, l.1-53, l.23; 84, l.3-85, l.23; 177, l.14-83, l.12; 221, l.1-25, l.9).

59.    Defendant has an anti-harassment policy with procedures for its employees to report harassment, and Plaintiff was aware of the policy. (Plaintiff's dep., pp. 185, l.9-86, l.7; Ex. 14; Declaration of John Knowles, ¶ 41, Ex. J).

60.    Plaintiff admits that she never used Defendant's complaint procedures to report any harassment or discrimination. (Plaintiff's dep., pp. 185, l.9-86, l.17;198, l.12-202, l.23).

## ARGUMENT

## I.    DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR WITH RESPECT TO PLAINTIFF'S DISPARATE TREATMENT CLAIMS UNDER SECTION 1981.

### A.    Allocation and Order of Proof.

Claims under 42 U.S.C. § 1981 have the same requirements of proof and use the same analytical framework as claims under Title VII. *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 (11th Cir. 2000); *Standard v. A.B.E.L. Services, Inc*, 161 F.3d 1318, 1330 (11th Cir. 1998). Where, as here, there is no direct or statistical evidence of discrimination, Plaintiff must prove her allegations of intentional discrimination under Section 1981 based on the allocation and order of

proof first articulated in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  *See EEOC v. Joe's Crab Shack*, 220 F.3d 1263, 1286 (11th Cir. 2000).

Under the *McDonnell Douglas* framework, Plaintiff first must establish a *prima facie* case. *Id*; *Vessels vs. Atlanta Independent School Sys.*, 408 F.3d 763, 767 (11th Cir. 2005). If Plaintiff succeeds in proving a *prima facie* case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the challenged employment action. *Holifield*, 115 F.3d at 1564, citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).   If Defendant produces such a reason, Plaintiff has the ultimate burden to prove that the reason offered is a pretext for unlawful discrimination. *Holifield*, 115 F.3d 1565.

These cases make it clear that "a . .. plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a discriminatory criterion illegal under the Act.'" *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 576 (1978).

Only if the plaintiff succeeds in first establishing a *prima facie* case does the burden of articulation then shift to the defendant. "[T]he employer's burden is satisfied if he simply 'explains what he has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.'" *Burdine*, 450 U.S. at 256, *quoting Board of Trustees of Keene State College v. Sweeny*, 439 U.S. 24, 25 n.2 (1978). Or, as the Supreme Court stated in *Hicks*, the employer need only "introduce evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 590 (1993) The defendant is not required to prove the absence of discriminatory motive. *Sweeny*, 439 U.S. at 24.

Once the employer has met this burden, the plaintiff bears the burden of proving that he was

13

a victim of proscribed, intentional discrimination. *Hicks*, 509 U.S. at 512, n.4. To avoid summary judgment on the ultimate issue, a Title VII plaintiff must produce some objective evidence that the employer's asserted reason is a mere pretext for unlawful discrimination. *Id.* To do so, she must come forward with evidence " ... sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 quoting *Burdine*, 450 U.S. at 254. *See also, Silvera v. Orange County Sch. Bd.*, 244 F3d 1253,1262 (11th Cir. 2001)(Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent."). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Hicks*, 509 U.S. at 517, *quoting Burdine*, 450 U.S. at 253. Thus, if Plaintiff cannot present some affirmative evidence of proscribed, intentional discrimination – and her deposition testimony clearly establishes that she cannot – her claims cannot survive summary judgment.

### B.    Plaintiff's Claim of Disparate Treatment Based on Her Failure to Receive Certain Promotions Prior to November 2002 Fails As A Matter of Law.

#### 1.    Plaintiff Cannot Establish A *Prima Facie* Case With Respect to Each of the Promotion Decisions.

To establish a *prima facie* claim of racial discrimination based on failure to promote, Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she applied for and was qualified for a promotion;[9] (3) she was considered for and denied the promotion; and (4) an individual with

---

[9]      Where a position is not formally announced, the plaintiff may show that the employer had some reason to consider her for the post rather than meeting with usual second prong. *Vessels*, 408 F.3d at 758, citing *Jones v. Firestone Tire and Rubber Co.*, 977 F.2d 527, 533 (11th Cir. 1992).

14

fewer or similar qualifications who was not a member of the protected class received the promotion. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004).

> **a.    Plaintiff Cannot Establish Two of the *Prima Facie* Elements With Respect to The Enterprise Branch Manager Position.**

After Plaintiff's manager at the Enterprise Branch transferred to another branch in Florida, Plaintiff expressed an interest in the manager position to Divisional Director of Operations, John Knowles. (SOF 4). While she contends that she should have received the position instead of Edward Finnegan, it is undisputed that Knowles did not select her for the position because Plaintiff lacked the necessary qualifications for the job. (SOF 5-6). Knowles even met with Plaintiff well before he hired Finnegan for purposes of helping Plaintiff understand why she did not have the minimum qualifications of the job. (SOF 7). Plaintiff claims that Knowles told her that if she later proved that she was capable of running a branch, she would receive the Ozark Branch Manager position when it became available. (SOF 8). Accordingly, Plaintiff cannot prove that she was qualified for the position.

Even if Plaintiff could somehow establish that she was qualified for this position, Plaintiff is still unable to establish a *prima facie* of disparate treatment based on this promotion decision because she cannot prove that she was equally or more qualified for the position than Finnegan. For, as Plaintiff readily admits, she has no knowledge of Finnegan's qualifications. (SOF 9). In fact, Finnegan was more qualified than Plaintiff. (SOF 10).

> **b.    Plaintiff Cannot Establish Two of the *Prima Facie* Elements With Respect to The Ozark Branch Manager Position.**

As with the Enterprise Branch Manager position, Plaintiff cannot establish either that she was qualified for the Ozark Branch Manager position, or that an individual in a non-protected class with

fewer or similar qualifications received the position. It is undisputed that at the time the Ozark position became available Plaintiff had not yet proven to John Knowles that she was capable of running a branch. (SOF 13). Moreover, Plaintiff cannot prove that an individual with fewer or similar qualifications received the position because she admits that she does not know Ms. Mercer's qualifications for the job or her educational or work background. (SOF 14). In any event, it is clear that Mercer was better qualified than Plaintiff. (SOF 15-16).

<strong>c.    Plaintiff Cannot Establish a <em>Prima Facie</em> Case With Respect to The Dothan Branch Manager Position.</strong>

Plaintiff cannot establish that she was considered for the Dothan Branch Manager position as John Knowles testified that she was not. (SOF 20 n.7). In any event, it must be noted that, prior to the time the Dothan manager position was filled, Plaintiff was offered the Branch Manager position at Defendant's Andalusia branch, and Plaintiff admits that she did not want the position. (SOF 23-25). Plaintiff was also offered the manager position at Defendant's Opp branch, which she declined. (SOF 26-28).

<strong>2.    Even if Plaintiff Could Establish a <em>Prima Facie</em> Case With Respect to Any of the Promotion Decisions At Issue, Defendant Has Articulated Legitimate, Non-Discriminatory Reasons For the Decisions That Plaintiff Cannot Prove Are Pretext For Discrimination.</strong>

Assuming <em>arguendo</em> that Plaintiff could establish a <em>prima facie</em> case with respect to any of the promotion decisions at issue, Defendant has articulated a legitimate, non-discriminatory reason for its decision not to promote Plaintiff to each of the positions which Plaintiff cannot prove is pretextual. Specifically, Plaintiff was not promoted to each of the positions because she did not apply for the position, Defendant determined that Plaintiff did not yet have the qualifications to be a branch manager and/or the individual who was promoted at the time was more qualified for the

position than Plaintiff. (SOF 6-10, 13-16, 20 n.7).

Plaintiff cannot prove that Defendant's non-discriminatory reasons are pretext for intentional discrimination. To the extent Plaintiff relies upon her alleged superior qualifications as compared to the individuals who were promoted as evidence of pretext, her reliance is decidedly misplaced. The Eleventh Circuit requires a "strong showing of a disparity in qualifications in order for an inference of discrimination to arise." *Denny v. City of Albany*, 247 F.3d 1172, 1187 (11th Cir. 2001). As the Eleventh Circuit recently explained:

> [A] plaintiff . . . cannot prove pretext merely by asserting that [she] was better qualified. *Wilson*, 336 F.3d at 1090. We "must not judge which employee was more qualified, but determine whether any disparity is so great that a reasonable fact-finder could infer that [the employer] did not believe" that the comparator was better qualified. *Id.* Moreover, "a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason," as long as "the reason is one that might motivate a reasonable employer." *Pennington v. Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001); *see also Rowell v. BellSouth Corp.*, 433 F.3d 794, 798-99 (11th Cir. 2005) (explaining that "[it]is by now axiomatic that we cannot second-guess the business decisions of an employer").

*Roper v. Foley*, 2006 WL 1004377, (11th Cir. April 18, 2006). As noted above, Plaintiff does not know the qualifications of any of the individuals who were promoted to the positions at issue. (SOF 9, 14, 22). As such, she cannot show *any* disparity between her qualifications and theirs, much less a disparity "so great that a reasonable fact-finder could infer that [the employer] did not believe that the comparator was better qualified." *Id.* In any event, with respect to the Enterprise and Ozark positions, it is clear that the person who received the position was better qualified than Plaintiff. (SOF 10, 15-16).

Further, Plaintiff cannot prove that she was a victim of proscribed, intentional discrimination with respect the promotion decisions at issue because it is undisputed that Plaintiff was later timely

17

promoted to the Ozark Branch Manager position in November 2002. (SOF 29). Moreover, prior to the filling of the Dothan position, Defendant offered at least two other Branch Manager positions to Plaintiff which she declined. (SOF 23-28). Surely, Plaintiff cannot contend that her race was the reason for not receiving a promotion when the Company offered Branch Manager positions to her which she rejected, and then did indeed promote her to a Branch Manager position - a position in which she was then employed for over two years. (SOF 23-29).

### C.    Plaintiff's Claim of Disparate Treatment Based on An Alleged Pay Disparity with Majority Managers Fails As a Matter of Law.

Plaintiff next claims that she suffered disparate treatment based on her race because, at the time she was promoted to Branch Manager, she alleges she was earning less than other Branch Managers. Plaintiff bases her claim solely on an alleged statement made to her at the time she was promoted by another Branch Manager that Plaintiff was not earning as much as the other Branch Managers. (SOF 31-33).

To state a *prima facie* case of intentional discrimination in compensation, a plaintiff must establish that: 1) she belongs to a protected class; 2) she received low wages; 3) similarly situated comparators outside the protected class received higher compensation; and 4) she was qualified to receive the higher wage. *Cooper v. Southern Co.*, 390 F.3d 695, 735 (11th Cir. 2004). However, a prima facie case may not be based on evidence that just one employee who was not in the protected class was treated more favorably while other employees similarly situated were subjected to similar adverse treatment or while members of the plaintiff's protected class were also treated more favorably. *Bush v. Commonwealth Edison, Co.,* 990 F.2d 928 (7th Cir. 1993). Such a pattern of random treatment with respect to protected class status is not evidence of unlawful discrimination.

18

*Id.*

In order to be considered similarly situated to Plaintiff, the alleged comparators must be "similarly situated in all relevant respects" to Plaintiff. *Cooper v. Southern Co.,* 390 F.3d 695, 735-36 (11th Cir. 2004), *citing MacPherson v. Univ. of Montevallo,* 922 F.2d 766, 774, n.16 (11th Cir. 1991)("In a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics and <u>who are in a similar job situation</u> to determine if the plaintiff has been treated differently than others who are similar to him.") (emphasis added).

Plaintiff cannot establish a *prima facie* case. Plaintiff admits that she has no personal knowledge of the salaries of the other managers to which she seeks to compare. (SOF 32). But, even if she did know them, those managers are not similarly situated to her. As she stated in her deposition, the alleged disparity in salaries occurred *at the time she was promoted to manager of the Ozark store*. (SOF 33)(emphasis added). Plaintiff acknowledged that at the time she was, obviously, the least experienced Branch Manager. (SOF 34). Moreover, it is undisputed that the size of a branch was a factor for Defendant when setting manager salaries, and the branches in the district in which Plaintiff was employed varied in size. (SOF 35-37). As such she cannot seek to compare herself with other Branch Managers who had more Branch Management experience or were employed at a branch that differed in size from the Ozark branch because they are "not in a similar job situation." *MacPherson,* 922 F.2d at 774, n.16.

Even if Plaintiff were able to prove that she was treated less favorably than similarly situated non-protected employees, Defendant has articulated a legitimate non-discriminatory reason for the pay disparity that Plaintiff cannot prove to be pretextual. Specifically, at the time Plaintiff was promoted to Branch Manager, the Caucasian Branch Managers who had higher salaries than Plaintiff

19

managed a larger store and/or had better qualifications and experience than Plaintiff. (SOF 37). Moreover, at the same time, Plaintiff had a higher salary than one Caucasian Branch Manager in the division. (SOF 38).

Plaintiff's pay disparity claim is further undercut by the fact that, at the time she was transferred to Floating Branch Manager, and at the time she was transferred to the Enterprise Branch as Branch Manager, her salary was higher than at least six (6) Caucasian Branch Managers in her division. (SOF 42, 49). Surely, no reasonable fact finder could conclude that a discriminatory pay disparity existed when Plaintiff's salary was _higher_ than Caucasian managers. (SOF 42, 49). *See, Porter v. Milliken & Michaels, Inc.,* 2001 WL 736753 *4 (E.D. La. 2001)(no race discrimination based on disparate wages where "some white employees made more and some made less than plaintiff) (copy attached); *Warren v. Blockbuster Music,* 1997 WL 47780 *4 (E.D. La. 1997)("[A]s a matter of law, the simple fact that white employees received a higher salary than plaintiff does not establish wage discrimination.") (copy attached); *Harris v. Home Savings Association,* 730 F.Supp. 298, 306 (W.D. Mo. 1989)(no race or sex discrimination if Plaintiff's salary is both higher than and lower than comparators).

Plaintiff has adduced no evidence to suggest that the alleged disparity was due to proscribed, intentional discrimination. Thus, her claim fails as a matter of law.

**D.    Plaintiff's Claim of Disparate Treatment Based on Her Transfer from the Ozark Branch to the Enterprise Branch Fails As A Matter of Law.**

**1.    Plaintiff Cannot Establish a *Prima Facie* Case Because the Transfer Was Not An Adverse Employment Action Actionable Under Section 1981.**

As noted in section I.B. above, in order to establish a *prima facie* case of disparate treatment, Plaintiff must establish that she suffered an adverse employment action. *See Hinson v. Clinch Cty.,*

231 F.3d 821, 828 (11th Cir. 2000). An adverse employment action results in a "serious and material change in the terms, conditions, or privileges of employment." *Barrow v. Georgia Pacific Corp.,* 114 Fed. Appx. 54, 57 (11th Cir. 2005), *citing Davis v. Lake Park,* 245 F.3d 1232, 1239 (11th Cir. 2001). Plaintiff's subjective view of the significance and adversity of Defendant's act is not controlling; "the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

Here, Plaintiff cannot establish that her transfer was an adverse employment action. It is undisputed that Plaintiff received the same salary and benefits after the transfer, and that she had the same basic duties after the transfer. (SOF 47). Plaintiff's contention that she had "a lot more to do" because she claims Enterprise had a larger customer base than Ozark does not make the transfer rise to the level of an adverse employment action. (SOF 48). *Barrow,* 114 Fed. Appx. at 57. (the plaintiff's "bald assertion that her 'job responsibilities changed substantially' is insufficient to withstand summary judgment."), *quoting Holifield v. Reno,* 115 F.3d 1555, 1564 n.6 (11th Cir. 1997). Accordingly, Plaintiff's claim of disparate treatment based on her transfer fails as a matter of law.

**2.    Even if Plaintiff Could Establish a *Prima Facie* Case With Respect to Her Transfer, Defendant Has Articulated Legitimate, Non-Discriminatory Reasons For the Decisions That Plaintiff Cannot Prove Are Pretext For Discrimination.**

It is undisputed that Plaintiff was transferred to the Enterprise branch due to a corporate reorganization. (SOF 46). It is also undisputed that Regional Director of Operations, Brenda Stewart, an African American, approved the decision to transfer Plaintiff to the Enterprise branch as part of that corporate reorganization (SOF 46). Thus, even if Plaintiff were able to prove a *prima*

21

*facie* case of discrimination based on her transfer, her claim still fails a matter of law because Defendant has articulated a legitimate, non-discriminatory reason for its action that Plaintiff cannot prove is pretextual. Where the decision maker is of the same race as the plaintiff, the plaintiff must present evidence that the decision maker held members of her own race to a higher standard of conduct than members of another race in order to show pretext.[10] *U.S v. Crosby*, 59 F.3d 1133, 1136 (11th Cir. 1995). Plaintiff here has presented no such evidence. Accordingly, her disparate treatment claim based on her transfer fails as a matter of law.

### E.    Plaintiff's Claim of Disparate Treatment Based on Her Termination Fails As A Matter of Law.

#### 1.    Plaintiff Cannot Establish a *Prima Facie* Case.

In cases where an employee is discharged as a disciplinary measure for a work rule violation, the *prima facie* case requires Plaintiff to show that: (1) she is a member of a protected group; (2) she was subjected to an adverse employment action; (3) similarly situated employees outside her protected classification were treated more favorably; and (4) she was qualified for her job. *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *Jones v. Bessemer Carraway Medical Center,* 137 F.3d 1306, 1310 (11th Cir. 1998); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). Here, Plaintiff cannot establish that she was treated less favorably than a similarly situated, non-minority employee.

To be deemed "similarly situated" for purposes of a *prima facie* case, the individuals with

---

[10]    Moreover, it is undisputed that the same person who promoted Plaintiff, John Knowles, played a role in the decision to transfer her to the Enterprise Branch. (SOF 29, 46). *See, Williams v. Vitro Servs. Corp.,* 144 F.3d 1438, 1443 (11th Cir. 1998)("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class. This general principle applies regardless of whether the class is age, race, sex, or some other protected classification.").

whom the plaintiff seeks to compare her treatment must have been "...involved in or accused of the same or similar conduct and ... disciplined in different ways". *Holifield v. Reno*, 115 F.3d at 1562; *see also Maniccia*, 171 F.3d at 1368 ("The most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed"). The comparator's misconduct must be nearly identical to the Plaintiff's so the Court is not put in the position of "second guessing an employer's reasonable decisions and confusing apples with oranges." *Silvera v. Orange County School Board*, 244 F.3d 1253, 1259 (11th Cir. 2001) *citing, Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989) ("Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.").

Plaintiff is unable to establish that any other employee was involved in or accused of the same or similar misconduct as she and disciplined in a different manner. Plaintiff was discharged for violating the Fair Debt Collection Practices Act, failing to implement a branch marketing plan as her supervisor had directed her to do, and failing to comply with the Company's Collection Policy, after having been previously counseled with respect to the same issues. (SOF 44, 50-54). Plaintiff has not identified, and cannot identify, a non-protected employee who engaged in such conduct and was not terminated. Her disparate treatment claim based on her termination, therefore, fails as a matter of law and should be dismissed.

> **2.    Even if Plaintiff Could Establish a *Prima Facie* Case, Defendant Has Articulated A Legitimate, Non-Discriminatory Reason For Her Termination That Plaintiff Cannot Prove is a Pretext for Discrimination.**

Assuming *arguendo* that Plaintiff could establish a *prima facie* case of discrimination with respect to her termination, Defendant has articulated a legitimate, non-discriminatory reason for her

termination. Specifically, Defendant terminated Plaintiff's employment because she violated the Fair

Debt Collection Practices Act, she failed to implement a branch marketing plan as her supervisor had

directed her to do, and she failed to comply with the Company's Collection Policy. (SOF 54).

Plaintiff admittedly had previously been counseled with respect to these issues. (SOF 44, 50-53).

Moreover, Plaintiff had ongoing issues with marketing, having received a poor score on audits which

were conducted November 2, 2004 and December 16, 2004. (SOF 51-53).

Plaintiff cannot prove that Defendant's proffered reason for her termination is pretext for

intentional race discrimination. The Eleventh Circuit has explained that:

> if an employer's proffered reason is "one that might motivate a reasonable employer,"
> a plaintiff may not rely on merely questioning the wisdom of that reason to prove that
> it is a pretext for a discriminatory motive. *Combs v. Plantation Patterns,* 106 F.3d
> 1519, 1543 (11th Cir.1997). Rather, in order to survive a motion for summary
> judgment, a plaintiff must demonstrate that a reasonable factfinder would not find
> credible the employer's reasons for its actions because of their inherent "weaknesses,
> implausibilities, inconsistencies, incoherencies, or contradictions." *Id.* at 1538
> (citation and quotation marks omitted). Furthermore, an analysis of pretext focuses
> on the employer's beliefs, "not the employee's own perceptions of his performance."
> *Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir.1997)

*Jones v. United Space Alliance, L.L.C.*, 2006 WL 250761, *5 (11th Cir. 2006). Here, it is clear that

Plaintiff cannot demonstrate that a reasonable factfinder would not find credible Defendant's reasons

for Plaintiff's termination.

Moreover, as here, where one of the decision makers, Brenda Stewart, is of the same race as

Plaintiff, Plaintiff must show that Stewart held members of her own race to a higher standard of

conduct than members of another race to show pretext. *U.S. v. Crosby,* 59 F.3d 1133, 1136 (11th Cir.

1995). Plaintiff has presented no such evidence. Plaintiff's pretext argument is further negated by

the fact that the same person, John Knowles, who promoted her also played a role in the decision to

terminate her employment. *See, Williams v. Vitro Servs. Corp.*, 144 F.3d 1438, 1443 (11th Cir. 1998) ("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class. This general principle applies regardless of whether the class is age, race, sex, or some other protected classification."). Accordingly, Plaintiff's disparate treatment claim must be dismissed.

## II.    DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT IN ITS FAVOR WITH RESPECT TO PLAINTIFF'S CLAIM OF HOSTILE WORK ENVIRONMENT UNDER SECTION 1981.

### A.    Plaintiff Cannot Establish A Prima Facie Case of Hostile Work Environment.

In order to establish a *prima facie* case of a racially hostile work environment under Section 1981, Plaintiff must show that: (1) she belongs to a protected class; (2) she was subjected to unwelcome racial harassment; (3) the harassment complained of was based on race; (4) the harassment created was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding Defendant liable. *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1257 (11th Cir. 2003). Plaintiff cannot establish at least three of these required elements.

### 1.    Plaintiff Cannot Establish that the Alleged Harassment Complained of Was Based on Race.

Plaintiff has identified only two practices which she alleges support her claim of a racially hostile work environment - being made to "clean toilets" and "conduct door to door marketing." (SOF 57). Yet, the incidents do not involve the use of any racially tinged conduct, nor is there any other indication that these incidences were racially-motivated. (SOF 58). Plaintiff has done nothing more than identify ordinary, perhaps subjectively uncomfortable, workplace duties.   Moreover,

25

Plaintiff acknowledges that both African American and Caucasian employees were required to clean the bathrooms at Defendant's stores and perform marketing. (SOF 58). As noted above, if there is no evidence to show that an action is race-based, the Court may not consider it in harassment analysis. *Watson,* 324 F.3d at 1257. Accordingly, Plaintiff cannot prove a *prima facie* case of racial harassment, and her harassment claim, therefore, fails as a matter of law.

### 2.    Plaintiff Cannot Establish That the Alleged Acts of Harassment Created a Hostile Work Environment.

Even if Plaintiff were able to prove that the alleged instances of harassment were race-based, she still cannot prove a *prima facie* case of hostile work environment. "Only when the workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment,' is the law violated. *Barrow v. Georgia Pacific Corp.*, 144 Fed. Appx. 54, 56 (11th Cir. 2005)(quoting *Harris v. Forklift Systems*, 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L.Ed.2d 295 (1993)). The allegedly abusive environment also must be both subjectively hostile or abusive from the perspective of the victim and objectively hostile or abusive from the perspective of the reasonable person. *Harris*, 510 U.S. at 21. The only evidence that Plaintiff has been able to muster up to support her claim of racially hostile work environment are two ordinary workplace duties which cannot be determined to be objectively hostile or abusive from the perspective of a reasonable person. (SOF 57-58). Accordingly, Plaintiff cannot prove that she was subjected to an abusive working environment. Her race harassment claim, therefore, fails as a matter of law.

3.    **Defendant Cannot Be Held Liable for Any Alleged Race Harassment Because Plaintiff Did Not Use Defendant's Procedures for Employees to Complain About Harassment.**

Even if Plaintiff were subjected to a racially hostile work environment, her harassment claim still fails as a matter of law because Plaintiff admits that she never complained to Defendant that she was suffering race harassment. The Eleventh Circuit recently held that, under the *Faragher/Ellerth* defense, an employer may be relieved of liability if: (1) it disseminated an adequate anti-harassment policy, and (2) the victimized employee failed to report her harassment in compliance with the reporting policy. *Lepera v. Cagle's, Inc.*, 2006 WL 452071 at *1 (11th Cir. February 24, 2006)(copy attached). Here, it is undisputed that Defendant has an anti-harassment policy with procedures for its employees to report harassment, and that Plaintiff was aware of the policy. (SOF 59). Moreover, Plaintiff admits that she never used Defendant's complaint procedures to report any harassment. (SOF 60). Accordingly, Plaintiff cannot prove a basis for holding Defendant liable for any alleged harassment. Her hostile work environment claim, therefore, fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant is entitled to judgment in its favor as a matter of law, and Plaintiff's Complaint should, therefore, be dismissed in its entirety.

27

Respectfully submitted,

LEWIS FISHER HENDERSON
   CLAXTON & MULROY, LLP
6410 Poplar Avenue, Suite 300
Memphis, Tennessee 38119
Telephone: (901) 767-6160
Facsimile: (901) 767-7411


By:/s/ James R. Mulroy, III _____
     James R. Mulroy, II
     Kelly S. Gooch


## CERTIFICATE OF SERVICE

I hereby certify that I have this 30th day of June, 2006 electronically filed the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

     Kenneth F. Gray, Jr., Esq.
     Bret M. Gray, Esq.
     Griffin & Associates
     2100 River Haven Drive, Suite 1
     Hoover, AL 35244


        /s/ James R. Mulroy, II _____
        Counsel for Defendant

Westlaw.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2001 WL 736753 (E.D.La.)

(Cite as: Not Reported in F.Supp.2d)

H

Only the Westlaw citation is currently available.
United States District Court, E.D. Louisiana.
Terry PORTER, et al.
v.
MILLIKEN & MICHAELS, INC.
No. Civ.A. 99-0199.

June 27, 2001.

*ORDER AND REASONS*

VANCE, J.
**\*1** Defendant Milliken & Michaels, Inc. moves for summary judgment dismissing all of Mr. Porter's claims on the grounds that Mr. Porter cannot establish a claim under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, or La.Rev.Stat. 23:331. For the following reasons, the Court grants Milliken & Michaels' motion for summary judgment.


I. Background

Milliken and Michaels employed Terry Porter, an African-American male, as a primary salesperson in its Metairie branch office from March 1997 to March 1998. Porter's job was to contact potential clients and convince them to place business with M & M. Porter left the firm after being injured in an elevator accident at work. Porter filed this claim in January 1999 alleging racial discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*, 42 U.S.C. § 1981, and La.Rev.Stat. Ann. § 23:331 (West 2001). Specifically, Porter alleges that he was placed on probation for failing to meet quota while white salespersons were not disciplined or were transferred to a different division. He also alleges that he was paid less than white employees with less job experience, that his potential clients were transferred away from him, which prevented him from making quota and earning commissions, and that he was not given the kind of employment opportunities routinely given to white employees. He also claimed that M & M fostered a hostile work environment. His claim against M & M is strictly limited to his treatment by M & M while he was employed there and does not relate to his severance from the firm.

In response, M & M argues that Porter has not established a *prima facie* case for his claims of disparate treatment regarding workplace violations and pay. In addition, M & M produces evidence that Porter was not more harshly disciplined than white salespersons, and that it did not pay Porter less than non-black salespersons. M & M also contends that Porter's allegations regarding a hostile workplace do not rise to the level of a Title VII violation.


II. Discussion

A. Summary Judgment Standard

Summary judgment is appropriate where there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2551 (1986). The court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S .Ct. 2505, 2510 (1986). The moving party bears the burden of establishing that there are no genuine issues of material fact. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1445 (5th Cir.1993).

**\*2** If the dispositive issue is one for which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *Celotex*, 477 U.S. at 325, 106 SCt. at 2552; *Lavespere*, 910 F.2d at 178. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exits. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553.

In an employment discrimination case, the Court must "focus on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff." *LaPierre v. Benson Nissan,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                              Page 2
Not Reported in F.Supp.2d, 2001 WL 736753 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**

_Inc., 86 F.3d 444, 447-48 (5th Cir.1996)._

### B. Title VII and 42 U.S.C. § 1981

Title VII of the 1964 Civil Rights Act provides that
"[i]t shall be an unlawful employment practice for an
employer ... to discriminate against any individual
with respect to his compensation, terms, conditions,
or privileges of employment, because of such
individual's race, color, religion, sex, or national
origin." 42 U.S.C. § 2000e-2(a). That an employee's
supervisor is one of the same gender or race does not
preclude a Title VII action. _See Newport News
Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S.
669, 676, 103 S.Ct. 2622, 2627 (1983)._

A Title VII plaintiff bears the initial burden to prove
a _prima facie_ case of discrimination by a
preponderance of the evidence. _McDonnell Douglas
Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817,
1824 (1973)._ A plaintiff may prove a _prima facie_
case of discrimination by showing (1) that he is a
member of a protected class, (2) that he was qualified
for the position, (3) that he was fired or suffered an
adverse employment action, and (4) that the
employer continued to seek applicants with the
plaintiff's qualification or that others similarly
situated were more favorably treated. _LaPierre, 86
F.3d 444, 448 (5th Cir.1996); Urbane v. Continental
Airlines, Inc., 138 F.3d 204, 206 (5th Cir.1998)._ The
elements of a plaintiff's _prima facie_ case necessarily
vary with the facts of the case and the nature of the
claim. _LaPierre, 86 F.3d at 448 n.3._

Once established, the plaintiff's _prima facie_ case
raises an inference of intentional discrimination.
_Grimes,_ 102 F.3d at 140; _see also McDonnell
Douglas, 411 U.S. at 802, 93 S.Ct. at 1824._ The
burden then shifts to the defendant to rebut that
presumption by articulating a legitimate,
nondiscriminatory reason for the challenged
employment action. _See Texas Dep't of Community
Affairs v. Burdine, 450 U.S. 248, 255, 101 S.Ct.
1089, 1094 (1981)._ The plaintiff then has the
"opportunity to prove by a preponderance of the
evidence that the legitimate reasons offered by the
defendant were not its true reasons, but were a
pretext for discrimination." _Burdine, 450 U.S. at 253,
101 S.Ct. 1089._

**\*3** To determine whether plaintiff can survive a
motion for summary judgment, the Court will
consider "the strength of the plaintiff's prima facie
case, the probative value of the proof that the

employer's explanation is false, and any evidence that
supports the employer's case and that properly may
be considered on a motion for judgment as a matter
of law." _Reeves v. Sanderson, 530 U.S. 133, 148, 120
S.Ct. 2097, 2109 (2001)._

Porter has alleged violations of both Title VII and §
1981. Because the elements of both claims are
identical, the Court will engage in only one analysis.
_Anderson v. Douglas & Lomanson Co., Inc., 26 F.3d
1277, 1284 n.7 (5th Cir.1994)._

### C. La.Rev.Stat. Ann. § 23:331

Porter's claims against M & M are also based on
La.Rev.Stat. Ann. § 23:331, Louisiana's
antidiscrimination law. This statute prohibits
intentional discrimination on the basis of race, color,
religion, sex, disability, or national origin.[FN1]
Louisiana courts follow federal antidiscrimination
jurisprudence when deciding cases under 23:331. _See
Wyerick v. Bayou Steel Corp., 887 F.2d 1271, 1274
(5th Cir.1989); Warren v. Blockbuster Music, 1997
WL 47780 \*3 (E.D.La.1997); King v. Phelps Dunbar,
L.L.P., 743 So.2d 181, 187 (La.1999); Bustamento v.
Tucker, 607 So.2d 532, 538 n. 6 (La.1992); Lebeaux
v. Newman Ford, Inc., 680 So.2d 1291, 1295
(La.Ct.App.1996)._ Therefore, the Title VII analysis
below applies equally to Porter's state law claims.

> FN1. By virtue of La. Acts 1997, No. 1409,
> § § 1 and 4, La.Rev.Stat. 23:1006 to
> 23:1008 were repealed and La.Rev.Stat.
> 23:331 to 23:334 were enacted relating to
> discrimination in employment on account of
> race, color, religion, sex, disability, or
> national origin.

### II. Analysis

#### A. Title VII Discriminatory TreatmentPorter's probation

Porter alleges that he was placed on probation for
failing to meet his sales quota because he was black.
Porter does not dispute that he was placed on
probation only after he failed to make quota, nor does
he dispute that M & M had a policy of placing
salespersons who failed to make quota on probation.
Instead, he alleges that white employees who
similarly failed to meet their quotas were not placed
on probation, but were either retrained or given

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 736753 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

another chance.

In work-rule violation cases, a _Title VII_ plaintiff may establish a _prima facie_ case by showing "either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly." _Mayberry v. Vought Aircraft Co ., 55 F.3d 1086, 1090 (5th Cir.1995)_ (citing _Green v. Armstrong Rubber Co., 612 F.2d 967, 968 (5th Cir.1980)_ (citations omitted)).

To establish a _prima facie_ case, Porter must show that white employees were treated differently under circumstances "nearly identical" to his. _Mayberry, 55 F.3d at 1090; Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir.1991); Smith v. Wal-Mart Stores, 891 F.2d 1177, 1180 (5th Cir.1990)_. Although Porter testified conclusorily about his belief that he was discriminated against, he presents no evidence to support his claim of disparate treatment.

In fact, M & M shows that no disparate treatment with regard to work-place violations exists by producing evidence in the form of Edward Morvant's affidavit and through probation letters sent to white salespersons which show that white salespersons who failed to meet quota were similarly placed on probation or terminated. In July 1997, when Porter was placed on probation for obtaining 45% of quota, two white salespersons, Matthew Fishman at 84% of quota and Randy Villafarra at 65% of quota, similarly received probation letters for their poor performance. In October 1997, when Porter received a probation letter for obtaining 37% of quota, James Duplechin and Matthew Fishman, both white salespersons, were terminated for obtaining 55% and 32% of quota, respectively. (Def.'s Mem. Supp. Summ. J., Ex. 5, Aff. E. Morvant); (Def.'s Mem. Supp. Summ. J., Ex. 7.) As such, Porter fails to establish a _prima facie_ case of discrimination.

*4 Additionally, Porter alleges that whites who had trouble reaching quota were transferred to the Consumer Service Department (CSD), while non-whites were summarily terminated. It is well-settled that plaintiff cannot defeat a properly supported motion for summary judgment by resting upon conclusory allegations. _See Douglass v. United Services Automobile Association, 79 F.3d 1415, 1429 (5th Cir.1996)_ (en banc ) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."); _Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-47 (5th Cir.1996); Ezekiel v. West, 2001 WL 179927,[*]3 (E.D.La.2001)_. In this case, Porter can point to no

evidence showing that M & M had such a policy at all. Porter relies exclusively on his belief that this policy exists, but presents no affidavits or facts to support his belief. Instead, plaintiff complains about defendant's obstructive behavior during discovery. (Pl.'s Mem. Opp. Summ. J. at 6.) However, with two weeks left to trial, Porter presents no facts at all indicating that defendant has a discriminatory policy regarding work-rule violations, and therefore summary judgment is proper. _See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994)_ ("If, after adequate time for discovery, a party cannot produce proof that it has facts to support its case, then the case should be resolved at that point, and this is true irrespective of the type of case.")

Moreover, the facts in this case belie plaintiff's claim that non-whites were summarily terminated for failing to meet quota, while whites were transferred to the CSD. Porter himself was not terminated for failing to reach quota. In addition, M & M refutes that allegation by producing evidence that whites were in fact terminated for failing to meet quota. (Def.'s Mem. Supp. Summ. J., Ex. 7.)

Since Porter fails to present any evidence that non-Black employees were treated differently when they failed to meet quota, Porter's fails to establish a prima facie case of discrimination, and the Court grants summary judgment for the defendant on this claim.

B. Porter's claim of Disparate Treatment with respect to pay

To establish a _prima facie_ claim for unequal pay under _Title VII_, "the plaintiff must show that he was paid less than a member of a different race was paid for work requiring substantially the same responsibility." _Pittman v. Hattiesburg Municipal Separate School District, 644 F.2d 1071, 1074 (5th Cir.1981)_. Porter makes several allegations against M & M regarding wage discrimination. First, Porter alleges that he was paid less than similarly situated white salespersons. Second, he alleges that pay discrimination occurred when M & M assigned his potential clients to white salespersons preventing him from making quota and commission.

Plaintiff cannot establish a _prima facie_ case of wage discrimination based on disparate starting salaries because he cannot show that his wage of $2,000 per month constituted unequal wages for equal work. Porter alleges that he was paid less than white salespersons despite his superior work experience.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 736753 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

However, Porter makes this assertion without any knowledge of the other salespersons' qualifications. In fact, M & M paid Porter approximately the same starting salary that it paid other salespersons hired in the three-month period before and after Porter was hired by M & M. During that time period, from December 1996 to June 1997, M & M hired 16 salespersons-10 white, 5 African-American, and 1 Hispanic. The starting salaries ranged from $1,750 to $3,300. Mr. Porter received $2,000 per month as did five white salespersons. The salesperson making $3,300 was black, as was one of the salespersons making $2,500, the second highest starting salary. (Def.'s Sec. Suppl. Mem. Supp. Mot. Summ. J., Ex. 2.) That some white employees made more and some made less than plaintiff does not establish wage discrimination. *See Warren,* 1997 WL 47780 at *4.

*5 In his complaint, Porter alleged that M & M transferred new business to white employees for the purpose of lowering commissions to blacks. In his response to the Motion for Summary Judgment, Porter points to no record evidence to support this claim. The Court's own review of the Porter's deposition reveals that he testified about one incident when a white salesperson in a different M & M office established an account with a client, after Porter had identified that client as a potential customer. Porter had contacted the potential client and then was out sick for 2 or 3 days. Porter stated that M & M had a computer system specifically designed to prevent a second M & M salesperson from contacting clients that a first M & M salesperson had identified as a potential client. Porter testified that when he informed his supervisors that he lost this business to the other salesperson, they could not understand how this happened and told him that they would fix the problem, which never happened. Additionally, his supervisors told him not to contact the client, who by this time had satisfactorily established an account through the white salesperson. Porter asserted his belief that since M & M allowed him to lose this potential client, he was unable to make quota. He also asserted that he lost commissions on the account.

That one incident is insufficient evidence to support a *prima facie* case of discrimination. Porter produces no evidence that he received disparate treatment, *i.e.,* that if a black salesperson had closed a sale with a white salesperson's potential client, the business would have been credited to the white salesperson. Further, Porter fails to produce any evidence showing that he made less in commissions than similarly situated white salespersons because of this incident. There is no evidence that the client had retained

Porter when the other salesperson contacted the client. The client was only identified as a potential customer. Indeed, the effect of this incident on Porter is purely speculative. Further, there is no admissible evidence of the actual amount of business the client has produced. Porter instead relies upon a conclusory allegation that M & M has a discriminatory commission system without producing any evidence that this system exists. *See Swanson v. Gen. Serv. Admin.,* 110 F.3d 1180, 1186 (5th Cir.1997) (noting that conclusory statements concerning racial discrimination are too speculative to create a jury question) (citations omitted). Accordingly, Porter fails to satisfy the third and fourth elements of his *prima facie* case. *See Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 405-06 (upholding a motion for summary judgment where plaintiff's evidence of racial discrimination was based on one or two isolated incidents). The Court grants summary judgment with respect to Porter's Title VII claims regarding disparate pay.

C. Failure to Promote-manager trainee positions

Porter alleges that M & M only hired whites for non-posted, high-paying manager trainee positions, which had starting salaries ranging from $3,500 to $7,000 per month.

*6 In a failure to promote claim under Title VII, a plaintiff must show that: (1) he was within a protected class; (2) he applied and was qualified for the position sought; (3) he was not promoted; and (4) the position he sought was filled by someone outside the protected class. *See Burdine,* 450 U.S. at 252-53, 101 S.Ct. at 1094 (1981); *Grimes,* 102 F.3d at 140 (5th Cir.1996).

While Porter is a member of the protected class, it is unclear whether he satisfies any of the other elements. Regarding prong two, Porter alleges that M & M never disclosed what the qualifications were for the manager trainee positions. The Court will assume without deciding that Porter was qualified for the position.

Porter did not submit any evidence that he applied for a position for which he was qualified and was rejected, and that the position was later filled by a white employee. However, M & M did not post openings for manager trainee positions, although it denies that this practice was designed to prevent blacks from applying for the positions. (Def.'s Supp. Mem. Supp. Mot. Summ. J., K. Robinson, Ex. 3A.)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 736753 (E.D.La.)
(Cite as: Not Reported in F.Supp.2d)

Courts have found that informal, secretive and subjective hiring or promotion decision processes tend to facilitate the consideration of impermissible criteria, such as race. *See Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, (11th Cir.1984) ("We have recognized that such subjective procedures can lead to racial discrimination, both because important information may be available only to whites and because such procedures place no check on individual biases."); *Payne v. Travenol Labs., Inc.,* 673 F.2d 798, 826-27 (5th Cir.1982); *Rowe v. General Motors Corp.,* 457 F.2d 348, 358-59 (5th Cir.1972). It would therefore be unfair to require plaintiff to show that he applied for a job position that he did not know was open. In addition, that would allow employers the opportunity to avoid detection for Title VII violations by simply not making job opportunities known to minorities.

Accordingly, in the case of unposted positions, plaintiff need not show that he applied for and was rejected for a particular position to establish his *prima facie* case. Nevertheless, the employee still must establish that the company had some reason or duty to consider him for the post. *See Jones v. Flagship Int'l,* 793 F.2d 714, 724 (5th Cir.1986), citing *Carmichael,* 738 F.2d at 1133. In *Jones,* the Fifth Circuit upheld a grant of summary judgment on a failure to promote claim when the plaintiff produced no evidence that her employer had a duty or legitimate reason to consider her for another position within the company. *Id.*

Similarly, Porter has not established that M & M had a duty to consider him for the manager trainee position or for any promotion. Plaintiff did not present any evidence that he expressed interest to M & M in being promoted to manager trainee, that he expressed any interest in being promoted within the company at all, or that M & M knew that Porter had a desire to be promoted to manager trainee. Plaintiff, therefore fails to establish a *prima facie* case.

\*7 More significantly, plaintiff has produced no evidence that M & M had a policy of only hiring whites for manager trainee positions. When M & M was asked in discovery to admit that only whites were hired for these positions, it denied that allegation. (Def.'s Supp. Mem. Supp. Mot. Summ. J., K. Robinson, Ex. 3A.) Porter has not come forward with any contrary evidence, and as such, there is no evidence to create an issue of fact on the failure to promote claim. The Court therefore grants defendant's motion for summary judgment on this claim.

### C. Hostile Work Environment

Porter alleges that he was subjected to racial harassment while employed at M & M. In his deposition, Porter said that he heard a white salesperson call another white salesperson "O.J." and that Porter saw him give the other salesperson "pork rinds and milk sauce, sauerkraut." (Def.'s Mem. Supp. Mot. Summ. J., Ex. 2 at 92.) That is the only evidence that Porter presents supporting his allegation of a hostile work environment.

Racial harassment is only actionable under Title VII if it is "so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment." ' *Faragher v. Boca Raton,* 524 U.S. 775, 786, 118 S.Ct. 2275, 2283 (1998) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2404 (1986) (some internal quotation marks omitted)). *Oncale v. Sundowner Offshore Services, Inc.* 523 U.S. 75, 81, 118 S.Ct. 998 (1998) (Title VII "forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment.") Workplace conduct is not measured in isolation; instead, "whether an environment is sufficiently hostile or abusive" must be judged "by looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." ' *Faragher,* 524 U.S. at 787-88, 118 S.Ct. at 2283 (quoting *Harris v. Forklift Systems,* Inc. 510 U.S. 17, 23, 114 S.Ct. 367, 371 (1993)). Hence, the Supreme Court has made it clear that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment." ' *Faragher,* 524 U.S. at 788, 118 S.Ct. 2275 (citation and quotation marks omitted).

This single incident, while inappropriate and insensitive, does not violate Title VII's standard. *See Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir.1971) ( [M]ere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not sufficiently alter terms and conditions of employment to violate Title VII"). At worst, the exchange between the two white employees was an "isolated inciden[t]" that cannot be considered as "extremely serious" as Title VII requires. *Faragher,* 524 U.S. at 788, 188 S.Ct. at 2283.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                      Page 6
Not Reported in F.Supp.2d, 2001 WL 736753 (E.D.La.)
**(Cite as: Not Reported in F.Supp.2d)**


III. Conclusion

**\*8** For the foregoing reasons, the Court grants
defendant's motion for summary judgment on Porter's
claims of racial discrimination in employment in
violation of <u>Title VII, § 1981</u>, and <u>La.Rev.Stat.
23:331</u>.

E.D.La.,2001.
Porter v. Milliken & Michaels, Inc.
Not Reported in F.Supp.2d, 2001 WL 736753
(E.D.La.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                                        Page 1
Not Reported in F.Supp., 1997 WL 47780 (E.D.La.), 74 Fair Empl.Prac.Cas. (BNA) 1454
(Cite as: Not Reported in F.Supp.)

**H**
Briefs and Other Related Documents

United States District Court, E.D. Louisiana.
Lisa WARREN,
v.
BLOCKBUSTER MUSIC, A Division of
Blockbuster Entertainment Corp.
**No. Civ. A. 96-1018.**

Feb. 6, 1997.

*ORDER AND REASONS*

BERRIGAN, District Judge.
**\*1** This matter comes before the court on motion for summary judgment filed by the defendant, Blockbuster Music ("Blockbuster"). Having considered the record, the memoranda of counsel and the law, the Court has determined that the summary judgment should be granted.

The plaintiff filed this employment discrimination action against her former employer, Blockbuster. She claims that she was unlawfully terminated and paid unequal wages on the basis of her race and sex in violation of La. Rev. Stat. 23:1006 and La. Civ. Code art. 2315. The defendant maintains that the plaintiff was hired as temporary/seasonal worker to assist with the increased volume of holiday business, and was dismissed due to a decline in business following the holiday season.

On November 21, 1993, the plaintiff was hired to work as a Customer Service Representative ("CSR") at the Houma location by store manager, Sid Babin ("Babin"). She resigned on May 27, 1995 to obtain a higher paying job.

On November 13, 1995, plaintiff was again hired by Babin to work as a CSR at a rate of $4.75 per hour. During Warren's interview, Babin admits making the following statement: "I don't know if I can handle three black girls working for me at the same time". Babin claims that the statement was merely a reference to the employee's light-hearted interaction between themselves, rather than their race and he attached no discriminatory meaning to the statement. Babin received a final disciplinary warning for his statement to plaintiff and was told that any further

problems would result in his termination.[FN1]

> FN1. At this time, two other black females worked at the Houma store, both of whom Babin hired.

It is the duty of the store manager to decide when a reduction of temporary/seasonal CSR's is necessary. Following the 1995 holiday season, Babin terminated white female temporary/seasonal CSR, Priscilla Toups on December 29, 1995. Plaintiff was then terminated on January 4, 1996 by Babin. At the time of her discharge, Plaintiff did not tell Babin that she was not a temporary/seasonal employee nor did she complain of discriminatory treatment of any kind.

After plaintiff's termination, NAACP representative Jerome Boykin visited the Houma Blockbuster store at Plaintiff's request and spoke to Babin. The visit from Boykin was the first time Babin learned that Plaintiff felt she had been discriminated against. On January 11, 1996, at Babin's request, Blockbuster Regional Human Resources Representative Mark Henderson commenced an investigation of plaintiff's allegations, including interviews with both Babin and Plaintiff. At the conclusion of his investigation, Henderson determined that a possible miscommunication had occurred between Babin and plaintiff regarding her employment status (i.e., regular or temporary/seasonal). Henderson then contacted plaintiff on January 18, 1996, and unconditionally offered to reinstate her at a regular CSR position with Blockbuster, either at the Houma store or elsewhere. Plaintiff declined Blockbuster's offer of unconditional reinstatement.

**\*2** Plaintiff alleges that when Babin hired her the second time, she was told she would return at regular or permanent status. Defendant claims that plaintiff's employment status was temporary/seasonal and subject to termination at the end of the Christmas season.

After the holiday's, CSR's are terminated on a gradual basis by the store manager on the basis of each employee's performance and store sales volume. Employee performance includes, but is not limited to, schedule availability, customer service skills, and attendance. Termination decisions are not based on seniority.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                              Page 2
Not Reported in F.Supp., 1997 WL 47780 (E.D.La.), 74 Fair Empl.Prac.Cas. (BNA) 1454
**(Cite as: Not Reported in F.Supp.)**

According to the defendant, Babin began to reduce his sales force at the end of the holiday season in accordance with company policy. Two of the seasonal employees (Shane Theriot and Leslie Bourg) had already terminated their employment. Babin terminated white female seasonal employee Priscilla Toups on December 29, 1995. He terminated plaintiff during the following week, on January 4, 1996, based on his belief that she was a seasonal employee and his assessment of her availability. Of the six remaining CSR's, four left voluntarily and two are presently employed at the Houma store. Defendant claims that Plaintiff's termination on January 4, 1996, was pursuant to this policy and was not motivated by racial animus.

Plaintiff disputes the defendants reasons why Warren's employment was terminated. She contends that defendants' reasons are a pretext for discrimination.

Also in dispute is whether plaintiff was paid unequal wages for performing the same work as white workers solely due to her race and gender. Defendant claims its company records reveal that plaintiff received a similar, if not higher, rate as compared to white CSR's. According to Blockbuster company records, during the relevant period of January 1, 1995 through January 31, 1996, the average hourly rate of black female CSR's was $4.78 per hour; white males, $4.65 per hour; white females, $4.55 per hour. Plaintiff was paid an hourly rate of $4.75 per hour.

Plaintiff claims that taking the average wages paid to black females versus white males and females results in a "distortion of the true facts". Plaintiff points out that two white temporary/seasonal CSR's (Richard Harris and Larry Mixon) were hired during the same period as Plaintiff and had far less experience than either plaintiff or Kentrica Scott (black female). Despite this fact, Harris and Mixon received a rate of pay of $5.00 per hour as compared to $4.75 per hour for plaintiff and Scott.

Lastly, defendant contends that plaintiff has forfeited her claim for back pay because her refusal to accept Blockbuster's offer of unconditional reinstatement as a regular CSR was unreasonable. Therefore, plaintiff's back pay damages should be limited from the date of her discharge (January 4, 1996) through the offer of reinstatement (January 18, 1996).

Plaintiff urges that her refusal of defendant's offer of unconditional reinstatement was not unreasonable for several reasons. First, plaintiff was the subject of Babin's racial comment to the effect that wasn't sure he could handle three black women working for him at one time. Also, during the course of her employment, Babin favored white employee CSR's over black female employees by assigning white CSR's more hours and granting requests of time off.[FN2] Babin would also assign plaintiff to distasteful job duties, such as cleaning up the vomit of a customer[FN3] and cleaning the store when it was not her turn.[FN4] Babin would complain when black music was played for black customers.[FN5] He also favored white customers with regard to the store "return, exchange, and sale policies"; followed black customers around the store, suspecting them of shoplifting; and refused to hire any black male CSR's.[FN6] Thus, adds plaintiff, the work environment at Blockbuster was not a friendly work environment for a black female.

FN2. Warren depo., pp. 48 and 73.

FN3. Warren depo., pp. 38 and 46.

FN4. Warren depo., p. 46.

FN5. Warren depo., p. 39.

FN6. Boykin depo., pp. 19-23.

*SUMMARY JUDGMENT*

**\*3** Summary judgment is appropriate where the record indicates no material facts in dispute and that the moving party is entitled to judgment as a matter of law. FRCP 56(c). No genuine issue of fact exists if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Matsushita Elec. Indus. Co, v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).* A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).* The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See *id.* Therefore, "[i]f the evidence is merely colorable, or is not significantly probative", summary judgment is appropriate. *Id.* at 249.

Additionally, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v.*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 3
Not Reported in F.Supp., 1997 WL 47780 (E.D.La.), 74 Fair Empl.Prac.Cas. (BNA) 1454
(Cite as: Not Reported in F.Supp.)

_Catrett, 477 U.S. 317, 322 (1986)_. If the moving party can demonstrate the absence of an essential element of its opponent's case, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" _Id._ At 324.

### Race and Gender Discrimination

Due to the similarities between Title VII of the Civil Rights Act, 42 U.S.C. § 2000e _et seq._, and La. R.S. 23:1006, Louisiana courts follow federal anti-discrimination jurisprudence when deciding cases under 23:1006. _Wyerick v. Bayou Steel Corp., 887 F.2d 1271, 1274 (5th Cir. 1989)_; _Lebeaux v. Newman Ford, Inc., 680 So.2d 1291, 1295 (La. Ct. App. 1996)_.

The Supreme Court has established an evidentiary pattern of shifting burdens in employment discrimination actions. First, the plaintiff must establish a prima facie case of employment discrimination by a preponderance of the evidence. The burden then shifts to the defendant to produce a legitimate, nondiscriminatory reason for its actions. In this regard, Courts have stated that the defendant's burden is "exceedingly light." _Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 992-993 (5th Cir. 1996)_(en banc).

The burden then returns to the plaintiff to prove that the reason was a pretext for discrimination and that the real reason was to discriminate. _McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)_; _Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981)_. In speaking to this issue, the Supreme Court has stated that a "reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." _St. Mary's Honor Center v. Hicks, 509 U.S. 503, 113 S.Ct. 2742, 2752 (1993)_, citing _Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248_. In this regard, plaintiff may employ either direct or circumstantial evidence of intentional discrimination to prove pretext. _Grimes v. Texas Dept. of Mental Health, 102 F.3d 137, 148 (5th Cir. 1996)_. At all times, the plaintiff retains the burden of persuading the fact finder that impermissible discrimination motivated the adverse employment decision. _Stults v. Conoco, Inc. 76 F.3d 651, 657 (5th Cir. 1996)_.

*4 The Fifth Circuit recently spoke en banc regarding the burden of proof in Title VII actions. Essentially, the burden of proof in wage and discharge actions are the same. The plaintiff establishes a prima facie case when she shows that: (1) she is a member of a protected class; (2) she was qualified for the position; and (3) she was discharged or paid a wage differential based upon race or sex and there was the performance of equal work for unequal pay. _Rhodes, 75 F.3d at 993_ and _Handy v. New Orleans Hilton Hotel, 532 F.Supp. 68, 71-72 (E.D.La. 1982)_.

### PLAINTIFF'S CLAIM OF WAGE DISCRIMINATION

Plaintiff cannot establish a prima facie case of wage discrimination because she cannot prove that her wage of $4.75 per hour constitutes unequal wages for equal work. Plaintiff asserts that because she had prior experience at Blockbuster, she should have been paid more than Harris and Mixon, who were paid $5.00 per hour and had no prior experience. However, plaintiff makes her assertions without any knowledge of their qualifications.[FN7] It stands uncontroverted that Harris and Mixon had prior relevant experience and were paid more based on that fact.[FN8] Court's recognize an employer's right to assign salaries on the basis of merit and do not question those decisions absent some indication of unlawful discrimination. _EEOC v. Louisiana Network, 61 Fair Empl. Prac. Cas. 31, 44 (M.D.La. 1992)_.[FN9]

FN7. For example, in her deposition plaintiff was asked, "Do you know why people would be hired at different salaries, do you know of that being done?" Plaintiff responded, "No sir." Continuing, "Of any of the people that you named ... do you know what their qualifications were before they were hired by Blockbuster?" Again, "No sir." Warren depo., p.71.

FN8. Mixon had prior experience as a manager of a Pocket Change store and, according to Babin, this was the controlling factor when he assigned Mixon's wages. Babin depo., pp. 143-145. Similarly, Harris' prior experience as a marketing representative for a local radio station was the controlling factor in assigning his wages. Id. at 133-135. Black assistant manager Matesa Marshall testified during her deposition that she agreed with Babin in this regard. Marshall depo., pp. 53-55.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1997 WL 47780 (E.D.La.), 74 Fair Empl.Prac.Cas. (BNA) 1454
(Cite as: Not Reported in F.Supp.)

FN9. See also *Handy v. New Orleans Hilton Hotel,* 532 F.Supp. 68, 70-72 (E.D.La. 1982).

Defendant's company records also show that, on average, black female CSR's were paid more than white male or white female CSR's. Further, white employees both made more and less than did plaintiff.[FN10] The present case is indistinguishable from *Harris* where it was held that the plaintiff failed to establish a prima facie case of wage discrimination based on similar evidence. *Harris v. Home savings Ass'n.,* 730 F.Supp. 298 (W.D.Mo. 1989). In *Harris,* white employees both made more and less than did the plaintiff. The Court ruled that where white employees received both higher and lower wages than did plaintiff, the circumstances do not establish a prima facie case of sex or race discrimination in salary levels. *Id.* at 305-306. Hence, as a matter of law, the simple fact that white employees received a higher salary than did plaintiff does not establish wage discrimination.

FN10. Black female CSR's earned $4.78 per hour; white males $4.65 per hour; and white females $4.55 per hour. The record also reveals that the plaintiff made more per hour than five of ten white males, and the same as two of ten white males.

Plaintiff has failed to carry her burden of establishing that she received a lower salary on account of her race and sex. She has only naked allegations to support her claim of wage discrimination, which is insufficient. Rather, as plaintiff has failed to do here, she must set forth specific facts showing the existence of a genuine issue for trial. *Celotex,* 477 U.S. at 322-323.

*PLAINTIFF'S CLAIM OF DISCRIMINATORY DISCHARGE*

Similarly, plaintiff cannot establish a prima facie case of discriminatory discharge. Plaintiff offers only her own subjective belief that she was discharged when no one else was, and discharged due to her race.[FN11] The Fifth Circuit has repeatedly held that a subjective belief of discrimination cannot form the basis of judicial relief. *Elliot v. Group Medical and Surgical Service,* 714 F.2d 556, 567 (5th Cir.), reh'g. denied, 721 F.2d 819 (5th Cir. 1983), cert. denied, 467 U.S. 1215 (1984); *Simmons v. McGuffey Nursing Home,*

619 F.2d 369, 371 (5th Cir. 1980).

FN11. Warren depo., p. 59

*5 One piece of evidence alone establishes that plaintiff was terminated for non-discriminatory reasons. Defendant's submitted plaintiff's Employee Profile. In the box for employment status, "part-time temporary"[FN12] is circled and plaintiff's signature, as well as Babin's, appear at the bottom of the page.

FN12. The terms part-time temporary and temporary/seasonal are used interchangeably by Blockbuster. Babin depo., p. 124.

In response, plaintiff offers only her subjective belief that Babin was hiring her at regular or permanent status. Plaintiff asserts that Babin told her sometime after her reemployment that she would be required to undergo drug screening in 1996.[FN13] However, plaintiff misconstrues the statement to mean that at the time the statement was made, her status was regular or permanent. However, a simple reading of Blockbuster policy clears any ambiguities. Blockbuster policy clearly states that the normally required drug test for all new hires was being waived for seasonal staff for a short period. The policy continues, "Seasonal staff hired during the waiver period who remain employed with Blockbuster after January 10, 1996, must be terminated, given the drug test and then rehired contingent upon a negative test result."[FN14] Taken in context, Babin's reference to a drug test does not support plaintiff's contention. Instead, the import was if plaintiff's temporary status was to be converted to regular status, she would first have to pass a drug test. The record shows no evidence of the plaintiff ever having taken a drug test prior to or subsequent to her reemployment.

FN13. The implication is that plaintiff was hired as a regular or permanent employee because Blockbuster policy requires all new employees to undergo drug testing prior to employment.

FN14. Record Document 15, exhibit 2 (emphasis added).

As for Babin's comment to plaintiff,[FN15] the remark is too remote in time to support a finding of discriminatory discharge. The Fifth Circuit recently held that to serve as a sufficient evidence of [race or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                 Page 5
Not Reported in F.Supp., 1997 WL 47780 (E.D.La.), 74 Fair Empl.Prac.Cas. (BNA) 1454
(Cite as: Not Reported in F.Supp.)

sex] discrimination, the comments must be: (1) [race or sex] related; (2) proximate in time to the termination; (3) made by an individual with authority over employment decisions; (4) and related to the employment decision at issue. *Brown v. CSI Logic, Inc.,* 82 F.3d 651, 655 (5th Cir. 1996). Here, Babin's comment occurred *prior* to the plaintiff's reemployment, thereby discounting plaintiff's assertion that the comment was casually related to her discharge. Noteworthy too is the fact that Babin did in fact hire the plaintiff even after making the remark, indicating further it did not enter into his decision making process.

> FN15. "I don't know if I can handle three black girls working for me at the same time."

Moreover, the Supreme Court has held that, "Remarks at work that are based on [[[race or sex] stereotypes do not inevitably prove that [race or sex] played a part in a particular employment decision. The plaintiff must show that the employer actually relied on her [race or sex] in making its decision." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 251 (1989). In the instant case, plaintiff concedes that Babin made no derogatory comments to her during her employment, nor did Babin indicate to plaintiff that her termination was based on her race or sex.[FN16] Hence, plaintiff is unable to show the required connection between the remark and the decision to terminate her.

> FN16. Warren depo., pp. 33 and 70.

**\*6** Even assuming, arguendo, that a misunderstanding regarding plaintiff's employment status occurred, plaintiff's proof that she was terminated based upon her race or sex is unsupported by the facts. Plaintiff offers her erroneous belief that she "was the only person that he laid off, or he terminated, [she] was the only person."[FN17] Plainly, this is not true. The undisputed facts show that white female Priscilla Toups was terminated prior to plaintiff, on December 29, 1995. In light of this, the Court does not believe plaintiff's evidence is sufficient to create a dispute as to a material issues of fact.

> FN17. Warren depo. at pp. 37, 39, and 68.

Plaintiff's other assertions of discrimination are simply not borne out by the record. For instance, among numerous allegations, plaintiff claims that Babin would complain when black music was played.[FN18] She also told Boykin that Babin favored white customers with regard to Blockbuster return and exchange policies, and exclusively follow black customers around the store suspecting them of shoplifting.[FN19]

> FN18. Warren depo., p. 29.

> FN19. Boykin depo., pp. 19-23. All else aside, these statements by Boykin are insufficient summary judgment evidence because they are not based on his having personal knowledge of their occurring; Warren told him these things occurred. Hence, they are hearsay and violate Fed R. Civ Pro. 56(e).

Interestingly, Matesa Marshall's deposition, submitted by plaintiff in support of her opposition to summary judgment, refutes these and every other assertion of discrimination by Babin.[FN20] The Court has painstakingly read every document and finds that there is no material issue of fact in dispute.

> FN20. Marshall depo., specifically pp. 15-20 and 43-44, and entirety for others.

*PLAINTIFF'S CLAIM OF BACK PAY*

Because the Court finds plaintiff's claim for backpay factually indistinguishable from *Figgs,* she is barred from receiving any back pay. *Figgs v. Quick Fill Corp.,* 766 F.2d 901 (1985). In *Figgs,* the plaintiff was hired by defendant on July 18th and discharged after one day of employment. On August 17th, defendant made an offer of unconditional reemployment to plaintiff which she rejected. *Id.* at 902. Figgs did so because she saw no reason why [she] couldn't work there from the beginning. *Id.* at 903.

The Fifth Circuit Court of Appeals affirmed the district court's finding that a bona fide, unconditional offer of reinstatement was made by the defendant, thereby tolling the accrual of back-pay liability under section 706(g) of Title VII, 42 U.S.C. 2000e-5g. Further, Figgs, was not entitled to reinstatement. *Id.* at 901. In reaching its decision, the *Figgs* court followed *Ford Motor Company v. EEOC,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721. *Ford Motor*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 6
Not Reported in F.Supp., 1997 WL 47780 (E.D.La.), 74 Fair Empl.Prac.Cas. (BNA) 1454
**(Cite as: Not Reported in F.Supp.)**

*Company* stands for the proposition that a claimant has a statutory obligation to mitigate damages, and that "absent exceptional circumstances, the rejection of an employer's unconditional offer ends the accrual of potential back-pay liability." *Id.* at 102 S.Ct. 3070.

Here, plaintiff's refusal of Blockbuster's unconditional offer of reinstatement was plainly unreasonable and tolls the liability of back-pay. Plaintiff's meager proof in this regard is her self-serving statement that Blockbuster was not a friendly work environment for a black female.[FN21] After a thorough reading of the record, this Court finds that the plaintiff's claims are unsupported.

> FN21. Interestingly, on October 25, 1994, plaintiff stated in the employee comments section of her Performance Appraisal that, "I think my boss 'Sid' is a very easy to work with boss, he works very hard at what he does and keeps me motivated to try to do my best." Attachment to Babin depo.

### PLAINTIFF'S CLAIM UNDER *ARTICLE 2315*

*7 In defendant's motion for summary judgment, defendant fails to address any claim made under La. Civ. Code art. 2315, as set forth in the Complaint. Hence, summary judgment is inappropriate on this claim.

Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is hereby GRANTED as to plaintiff's claim of employment discrimination. The plaintiff's claim under La. Civ. Code art. 2315 remains.

E.D.La.,1997.
Warren v. Blockbuster Music
Not Reported in F.Supp., 1997 WL 47780 (E.D.La.), 74 Fair Empl.Prac.Cas. (BNA) 1454

Briefs and Other Related Documents (Back to top)

• 2:96CV01018 (Docket) (Mar. 21, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

168 Fed.Appx. 917

168 Fed.Appx. 917, 2006 WL 452071 (C.A.11 (Ga.))
**(Cite as: 168 Fed.Appx. 917)**

Page 1

**Briefs and Other Related Documents**
This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Eleventh Circuit Rule 36-2. (FIND CTA11 Rule 36-2.)

United States Court of Appeals,Eleventh Circuit.
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION, Plaintiff-Appellant,
April Lepera, Intervenor-Plaintiff-Appellant,
v.
CAGLE'S, INC.,
Defendant-Intervenor-Defendant-Appellee.
**No. 05-11213.**

Feb. 24, 2006.

**Background:** Former employee and Equal Employment Opportunity Commission (EEOC) brought Title VII sexual harassment and retaliation claims against employer, which terminated employee 16 days after she made sexual harassment complaint against her supervisor. The United States District Court for the Middle District of Georgia entered summary judgment in favor of employer. Employee and EEOC appealed.

**Holdings:** The Court of Appeals held that:

1(1) subjective fears of employee, who said she feared retaliation if she reported sexual harassment because former employees had told her that they believed they were terminated for reporting racial harassment, did not excuse employee's failure to report harassment in compliance with employer's policy, and thus, employer would not be held liable for supervisor's alleged harassment, and

2(2) although employee was terminated only 16 days after making harassment complaint, employer's justification for her termination, which was that she was fired for poor job performance, was

non-retaliatory and supported by the record.

Affirmed.

West Headnotes

**[1] Civil Rights 78 ⚖1189**

78 Civil Rights
    78II Employment Practices
        78k1181 Sexual Harassment; Work Environment
            78k1189 k. Knowledge or Notice; Preventive or Remedial Measures. Most Cited Cases
Subjective fears of employee, who said she feared retaliation if she reported sexual harassment because former employees had told her that they believed they were terminated for reporting racial harassment, did not excuse employee's failure to report her supervisor's alleged sexual harassment in compliance with employer's reporting policy; thus, employer would not be held liable under Title VII for supervisor's alleged sexual harassment, where employer acted swiftly to force the supervisor to resign once employer was informed, which suggested that employee could have been spared much of the trauma suffered at the hands of her supervisor if she had followed the anti-harassment policy. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

**[2] Civil Rights 78 ⚖1247**

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights
            78k1247 k. Discharge or Layoff. Most Cited Cases

**Civil Rights 78 ⚖1252**

78 Civil Rights

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 Fed.Appx. 917                                                                    Page 2

168 Fed.Appx. 917, 2006 WL 452071 (C.A.11 (Ga.))
(Cite as: 168 Fed.Appx. 917)

78II Employment Practices
    78k1241 Retaliation for Exercise of Rights
        78k1252 k. Causal Connection; Temporal Proximity. Most Cited Cases
Although employee was terminated only 16 days after making sexual harassment complaint and that close temporal proximity established a prima facie case of retaliation in violation of Title VII, employer's justification for her termination, which was that she was fired for poor job performance that was discovered during the investigation followed as a result of her harassment complaint, was non-retaliatory and supported by the record. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

*918 Gail S. Coleman, Washington, DC, for Plaintiff-Appellant/Intervenor-Plaintiff-Appellant.
Charles E. Cox, Jr., Macon, GA, for Plaintiff-Appellant.
James L. Stine, Elizabeth K. Dorminey, Wimberly, Lawson, Steckel, Nelson & Schneider, P.C., Atlanta, GA, for Defendant-Intervenor-Defendant-Appellee.

Appeals from the United States District Court for the Middle District of Georgia. D.C. Docket No. 03-00219-CV-WDO-05.

Before BLACK, HULL and FARRIS,[FN*] Circuit Judges.

    FN* Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

PER CURIAM:
**1 [1] Plaintiffs Equal Employment Opportunity Commission and April Lepera appeal the district court's decision granting summary judgment to defendant Cagle's, Inc. on their Title VII sexual harassment and retaliation claims. We review this summary judgment decision de novo. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). We affirm.

If the allegations are true, Ms. Lepera's supervisor's conduct constituted sexual harassment. His vulgar commentary and disturbing physical violations were both severe and pervasive. *See Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 508-509 (11th Cir.2000) ("When determining whether harassment is objectively severe and pervasive, courts consider the frequency of the conduct, the severity of the conduct, whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's job performance." (internal quotations and citation omitted)). All the more outrageous was that these acts were perpetrated by the head of Cagle's human resources department at its Perry, Georgia plant.

Employer liability for a supervisor's sexual harassment is a two-way street. *See Madray v. Publix Supermarkets, Inc.*, 208 F.3d 1290, 1302 (11th Cir.2000) ("workplace discrimination cannot be corrected without the cooperation of the victims" (internal alteration and citation omitted)). In general, under the *Faragher/Ellerth* defense an employer may be relieved of its vicarious liability if (1) it disseminated an adequate anti-harassment policy and took reasonably prompt action "designed to stop the harassment, correct its effects on the employee, and ensure that the harassment does not recur," and (2) the victimized employee failed to report her harassment in compliance with the reporting policy. *See Walton v. Johnson & Johnson Servs., Inc.*, 347 F.3d 1272, 1286, 1288-89 (11th Cir.2003) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)); *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1313-14 (11th Cir.2001) . "[I]n some cases, the proof will show that the employee's non-compliance was reasonable under the circumstances and, in these cases, the defendant cannot satisfy the second element of the affirmative defense." *Frederick*, 246 F.3d at 1314.

*919 The record indicates that Cagle's did have an adequate policy and, once informed of the harassment, it immediately suspended Ms. Lepera's supervisor and forced him to permanently resign within days. Although two former employees told her they believed they were terminated for reporting racial harassment, and that caused her to fear retaliation if she made a report, it was Ms. Lepera's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

168 Fed.Appx. 917

168 Fed.Appx. 917, 2006 WL 452071 (C.A.11 (Ga.))
**(Cite as: 168 Fed.Appx. 917)**

burden to allege sufficient facts to justify consideration of her allegations. She failed to do so. *See Walton,* 347 F.3d at 1290-91 ("... absent a credible threat of retaliation ... subjective fears of reprisal do not excuse [a] failure to report ... alleged harassment." (internal citations omitted)). Cagle's swift response suggests that Ms. Lepera could have been spared much of the trauma suffered at the hands of her supervisor had she followed the anti-harassment policy. *See id.* at 1290.

**\*\*2** [2] Ms. Lepera was terminated sixteen days after making her sexual harassment complaint. Retaliation claims are evaluated under the *McDonnell Douglas* burden shifting framework. *Brungart v. BellSouth Telecomms., Inc.,* 231 F.3d 791, 798 (11th Cir.2000). The close temporal proximity between Ms. Lepera's complaint and termination establishes a prima facie case of retaliation. *See id.; Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1337 (11th Cir.1999). Cagle's asserts that Ms. Lepera was fired for poor job performance, which was discovered during an investigation of the Perry plant's human resources department initiated as a result of her harassment complaint. The record supports this non-retaliatory justification for her termination.

AFFIRMED

C.A.11 (Ga.),2006.
Lepera v. Cagle's, Inc.
168 Fed.Appx. 917, 2006 WL 452071 (C.A.11 (Ga.))

Briefs and Other Related Documents (Back to top)

• 05-11213 (Docket) (Mar. 7, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.