IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DIANE MURPHY,

      Plaintiff,

v.

                                  NO.  1:05cv443-W
                                  Demand for Jury Trial

ADVANCE AMERICA CASH
ADVANCE CENTERS OF ALABAMA,

      Defendant.

---

## DECLARATION OF JOHN KNOWLES

I, John Knowles, declare and state as follows:

1.     I am a competent adult with personal knowledge of the matters contained herein.

2.     I am currently employed by Advance America, Cash Advance Centers of Alabama, Inc. ("Advance America") as a Divisional Director of Operations ("DDO").

3.     During Diane Murphy's employment with Advance America, I was the DDO responsible for Division 7, the division in which Murphy was employed by Advance America.

4.     Diane Murphy began her employment with Advance America on March 23, 2000 as an Assistant Manager in the Enterprise branch. The Branch Manager of the Enterprise branch at the time was Hope French.

5.     In or about May 2001, Diane Murphy was having professional issues with Hope French, so Regional Director of Operations ("RDO") Jennifer Rodriguez made the decision that the two needed to be separated for the good of the Company. Since Hope French lived in Florida, the decision was made to transfer French to a branch in Florida nearer her home and leave Ms. Murphy

**EXHIBIT**

**2**

in Enterprise, where she lived.

6.    Since I was not convinced that Diane Murphy was qualified to become the Branch Manager of the Enterprise branch at that stage of her employment with Advance America, I decided to transfer the Branch Manager of the Troy branch, Edward Finnegan, to the Enterprise branch.

7.    Edward Finnegan was appointed Branch Manager of the Enterprise branch on May 28, 2001.

8.    Prior to transferring Finnegan to the Enterprise branch, I met with Plaintiff for purposes of explaining to her why she did not yet have the qualifications necessary to become a Branch Manager.

9.    During our conversation mentioned above, I told Plaintiff that, if she later improved and became qualified, she would be considered for promotion with her peers to any available Branch Manager position – not a specific location.

10.    Edward Finnegan lives in Enterprise, Alabama and had many years of management and collections experience prior to becoming employed by Advance America. At the time Finnegan was transferred to the Enterprise Branch, he had more management and collection experience than Diane Murphy. Finnegan's superior qualifications were a factor in my decision to transfer Finnegan to the Enterprise Branch instead of promoting Plaintiff. Attached hereto as Exhibit A is a true and correct copy of Edward Finnegan's employment application with Advance America which is maintained in Finnegan's personnel file in the regular course of Advance America's business.

11.    Deborah Mercer was promoted to Branch Manager of the Ozark Branch on or about September 24, 2001.

12.    Diane Murphy was not selected for the Ozark Branch Manager position because,

2

when I informed her that the Ozark position was available, Murphy told me that she did not want me to interview her for the position; consequently, I did not interview Murphy or consider her for the position. Even if Murphy had interviewed with me for the position, I would not have selected her because she had not yet proven to me that she was capable of running a Branch.

13.    Prior to being hired by Advance America, Deborah Mercer had approximately twenty-five (25) years of management experience. Attached hereto collectively as Exhibit B are true and correct copies of Deborah Mercer's employment application with Advance America and resume which are maintained in Mercer's personnel file in the regular course of Advance America's business.

14.    During her employment with Advance America, Deborah Mercer was a team player who was well respected by her superiors, peers and subordinates. She was hired as a CSR and quickly moved to the Assistant Manager position at Advance America's Dothan branch. At the Dothan branch, Mercer was instrumental in helping move the branch from a sub-par operation to one of the best in the region. She did this by setting up a marketing program that produced over 300 new customers in a one-year period.

15.    On or about September 30, 2002, Jennifer Baker was appointed Branch Manager of the Dothan store.

16.    Prior to selecting Jennifer Baker for the Dothan Branch Manager position, I asked Diane Murphy if she wanted to be considered and interviewed for the position, but she declined. Consequently, I did not interview or consider Murphy for the Dothan Branch Manger position.

17.    Prior to the time the Dothan Branch Manager position was filled, I offered Diane Murphy the Branch Manager position at Advance America's Andalusia Branch. Murphy declined

3

the offer.

18.     The Andalusia Branch is approximately 40 miles from the Enterprise Branch, where Plaintiff was then working.

19.     Prior to the time the Dothan Branch Manager position was filled, I also offered Diane Murphy the Branch Manager position at Advance America's Opp Branch. Murphy told me that she did not want to be considered for the Branch Manager position at the Opp Branch.

20.     The Opp branch is approximately 20 miles from the Enterprise Branch, where Diane Murphy was then working.

21      I promoted Diane Murphy to the Ozark Branch Manager position on November 25, 2002.

22.     Upon being promoted to Branch Manager of the Ozark branch, Murphy received a raise from $8.63/hr to $11.06/hr. Attached hereto as Exhibit C is a Status Change from regarding the promotion which is maintained in Murphy's personnel file in the regular course of Advance America's business.

23.     As a Branch Manager, Diane Murphy was paid a salary commensurate with her qualifications and experience and commensurate with the size of the Ozark store.

24.     When setting the salary of a Branch Manager, I consider the manager's qualifications and experience and the size of the branch to which the Branch Manager is being assigned.

25.     Attached hereto collectively as Exhibit D is a spreadsheet which sets forth the races and then-current salaries of the Branch Managers employed in Division 7 at the time Diane Murphy: 1) was promoted to Branch Manager of the Ozark store; 2) was transferred to Floating Branch Manager; and 3) was transferred to the Enterprise branch as Branch Manager.

4

26.    The Caucasian Branch Managers in Division 7 who had a higher salary than Plaintiff, at the time Plaintiff was promoted to Branch Manager, managed a larger store and/or had better qualifications and experience than Murphy. For instance, Deborah Mercer (then Hughes) had over 25 years of prior management experience and managed a larger store (Eufaula #1635) with almost twice the budgeted revenue ($25,406) of the Ozark store ($13,325). Likewise, Eunice Bartholomew managed a store (Dothan #1610) with over three (3) times the budgeted revenue ($45,703) of the Ozark store.

27.    As confirmed by the document attached hereto as Exhibit D, Rhonda J. Herring, a Caucasian Branch Manager of Center #1664 in Dothan was being paid a salary ($9.55/hr) which was lower than Diane Murphy's salary at the time Murphy was promoted to Branch Manager.

28.    In August 2003, Diane Murphy received a pay increase from $11.06/hr to $11.27/hr.

29.    In June 2004, Plaintiff was transferred to Floating Branch Manager. Murphy received the same salary and benefits after the transfer, and she retained the same basic duties after the transfer. Attached hereto as Exhibit E a Status Change form regarding the transfer which is maintained in Murphy's personnel file in the regular course of Advance America's business.

30.    As confirmed by the document attached hereto as Exhibit D, at the time Diane Murphy was transferred to Floating Branch Manager, her salary was higher than at least six (6) Caucasian Branch Managers in Division 7 (Dorothy May, Arlene Cook, Jennifer Sheffield, Angel Thornton, Christine Jackson, and Paula Thomas).

31.    In August 2004, Diane Murphy received a pay increase from $11.27/hr to $11.61/hr.

32.    In October 2004, Plaintiff was transferred to the Enterprise branch due to a corporate reorganization. Regional Director of Operations, Brenda Stewart, an African American, approved

my decision to transfer Plaintiff to the Enterprise branch as part of that corporate reorganization. Attached hereto as Exhibit F is a Status Change form regarding the transfer which is maintained in Murphy's personnel file in the regular course of Advance America's business.

33.     Diane Murphy received the same salary and benefits after her transfer to the Enterprise branch, and she retained the same basic duties after the transfer.

34.     As confirmed by the document attached hereto as Exhibit D, at the time Diane Murphy was transferred to the Enterprise branch, her salary was higher than at least six (6) Caucasian Branch Managers in Division 7 (Dorothy May, Angel Thornton, Jennifer Drewell, Jennifer Sheffield, Christine Jackson, and Helen Davis).

35.     Upon Diane Murphy's transfer to the Enterprise branch, I directed Murphy to come up with a marketing plan for the branch.

36.     On November 2, 2004, I conducted an audit of the Enterprise branch which revealed that Murphy had not implemented a marketing plan.

37.     On December 16, 2004, I conducted another audit of the Enterprise branch. Attached hereto as Exhibit G is a true and correct copy of the December 16, 20004 Audit report, which is maintained in Advance America's business records in the course of Advance America's business.

38.     The December 16, 2004 audit revealed that Diane Murphy had not implemented a marketing plan as I had previously instructed her to do.

39.     In December 2004, I made the decision to terminate Diane Murphy's employment because she violated the Fair Debt Collection Practices, she failed to implement a branch marketing plan as I had directed her to do, and she failed to comply with the Company's Collection Policy. Attached hereto as Exhibit H is a true and correct copy of Murphy's Termination Report, which is

maintained in Murphy's personnel file in the course of Advance America's business.

40.    I made the decision to terminate Plaintiff's employment after consulting with and receiving the approval of RDO Brenda Stewart.

41.    Advance America has an Anti-Harassment Policy with procedures for its employees to report harassment, and Diane Murphy was aware of the policy. Attached hereto as Exhibit I are true and correct copies of three (3) Acknowledgment and Proof of Acceptance of the Anti-Harassment policy forms that Murphy signed, two (2) of which I signed as a witness. Attached hereto as Exhibit J is a true and correct copy of Advance America's Anti-Harassment policy.

42.    The Advance America documents and policies attached as exhibits to this Declaration and as exhibits to Diane Murphy's deposition were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; were kept in the course of Advance America's regularly conducted business activity; and were made by the regularly conducted business activity as a regular practice.

FURTHER, the Declarant Saith Not.  I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _6/30/06_

John Knowles

# EXHIBIT A



# ADVANCE AMERICA®
## C A S H   A D V A N C E   C E N T E R S

Employment Application

An Equal Opportunity Employer

Name: Edward S. Finnegan

Position Applying For (Be Specific): CSR or management

Date: 3/27/01 *This application will remain active for 90 days from the date of application.*

8003                                                    REV. 1099

D000376
Murphy v. Advance America

## HIRING PROCESS

Dear Advance America Applicant:

Thank you for considering Advance America, Cash Advance Centers, Inc. ("AA"). AA is committed to hiring the best qualified person for each position. To ensure that we make a hiring decision that is right for us and you, we use different selection tools and consider a great amount of information. As you go through the employee selection process, you may come in contact with some of all of the following selection tools.

1.    **Employment Application** – Complete all sections. Do not include a resume as a substitute for incomplete information. Sign and date the application. The employment application allows AA to determine your qualifications and experience. By signing the application, you authorize AA to verify the information on the application.

2.    **Employment Interviews** – Personal interviews may be conducted with you in order to provide more detailed information regarding your background and qualifications.

3.    **Reference Checks** – Former employers and other references are verified prior to an offer of employment.

4.    **Records Checks** – Records Checks may include verification and information checks with the Social Security Administration, criminal courts, state and county repositories of criminal records, credit reporting agencies, and Department of Motor Vehicles.

5.    **Employment Eligibility Verification** – This form is required by the U.S. Department of Justice and the Immigration and Naturalization Service. Federal Law requires that a new employee must supply documents that prove identity and employment eligibility.

We realize that this is a lengthy process, but it is necessary to help determine if you are right for us and if we are right for you. We appreciate your patience while completing this process, and we appreciate your interest in AA.


Billy Webster
President & CEO


Jamie Fulmer
Director of Employee Relations

D000377
Murphy v. Advance America

**PLEASE PRINT - USE INK**

| (LAST NAME) | (FIRST NAME) | (MIDDLE NAME) | Social Security Number |
|---|---|---|---|
| Finnegan | Edward | Sean | |

| Street Address | City | State | Zip | Phone Number |
|---|---|---|---|---|
| | | | | |

| Have you worked for AA before? No | | Do you have relatives working for AA? No |
|---|---|---|
| Location: | Dates: | Location: |

| HIGH SCHOOL | School Claymont High School | Degree Received? Diploma |
|---|---|---|
| | Address 244 Green St Claymont De 19703 | |
| | Circle Last Year Completed  8 9 10 11 (12) | Course of Study, Major College Prep |

| COLLEGE | School Delaware College | Degree Received? No |
|---|---|---|
| | Address 140 Market St. Wilmington. DE | |
| | Circle Last Year Completed  FRESH. (SOPH) JR. SR. | Course of Study, Major Business Administration | Years Attended: From 1984 To 1986 |

| TECHNICAL, BUSINESS, or GRADUATE | School | Degree Received? |
|---|---|---|
| | Address | |
| | Circle Last Year Completed  FRESH. SOPH. JR. SR. | Course of Study, Major | Years Attended: From To |

## EMPLOYMENT HISTORY
### START WITH YOUR CURRENT OR LAST EMPLOYER - INCLUDE MONTH AND YEAR IN DATES
#### (If you have provided a resume you must still fill out the section below.)

**Present (Last) Employment.** May we contact your present employer? ☒ Yes X No
Company Name Vanguard Services Inc
Street 1530 CW Main St. City & State Dothan AL 36301
Phone # 334-794-2757 Job Title Senior Collection Representative/Collection
Date of Employment: From 6/14/96 To Present / # Hrs/Wk 40+ /week   Manager
Current Salary 18,7000.00 Salary Requirements Open Pay Cycle: HR (WK) BW MO YR   Phu
Supervisor's Name Cada Carter Phone
Duties & Responsibilities Collection of All Past Due Accounts 0-30-60-90-90-170
120+ Days. All accounts are Return cks + Skip Tracing + Outside Collections
Reason for leaving? Seek opportunity for a better advancement with growing company

**Next Previous Employment:**
Company Name RIM
Street 2015 Alexander Dr. City & State Dothan AL 36304
Phone # 334-671-1696 Job Title Collection Representative
Date of Employment: From 4/2/96 To 6/10/96 # Hrs/Wk 40 wk.
Ending Salary 16,380.00 Pay Cycle: HR WK (BW) MO YR
Supervisor's Name Ivy Grant Phone 334-671-1696
Duties & Responsibilities Collection + Skip Tracing on Medical Accounts.
Via Telephone.
Reason for leaving? Seek Position at Vanguard and get back into Check Collections.

**Next Previous Employment:**
Company Name Healthcare Systems of Montgomery
Street 1311 E. South Blvd City & State Montgomery, AL
Phone # (334) 286-8039 Job Title Collections Manager
Date of Employment: From 4/13/94 To 1/10/96 # Hrs/Wk 40+ /wk
Ending Salary 16,800.00 Pay Cycle: HR WK BW MO YR
Supervisor's Name Jeff Parnell Phone 334-286-8029
Duties & Responsibilities Manage office (collection office) prepared weekly budget
collected all 120 Day accounts, acted as a liason on legals (court & Bankrupcy).
Reason for leaving? The Travel. I travel back & forth for 2 years. seeked employ
near home.

| 4. What date are you available for work?<br>4/2/01 | Do you have reliable transportation to and from work?<br>☑ Yes ☐ No |
|---|---|
| Do you have a valid driver's license?<br>AL ☑ Yes ☐ No | Are you available to work:<br>☑ Full Time ☐ Part Time ☐ Temporary |

You must be 18 years of age to work for AA. Are you at least 18 years of age? ☑ Yes ☐ No

Have you ever been convicted of any criminal activities outside of minor traffic violations?
☐ Yes ☑ No    If Yes, Explain:

*A "Yes" answer is not an automatic preclusion from employment.

| Are you legally eligible to work in the US? ☑ Yes ☐ No | Can you perform the essential functions of the job with or without reasonable accommodation: ☑ Yes ☐ No |
|---|---|

How did you learn about us?
☐ Newspaper Ad – Name of paper or media: _____  ☐ Employment Agency  ☐ Current Employee  ☐ Walk-In
☐ State Employment Agency  ☐ College Recruit  ☑ Other (Specify): John Knowles - Divisional Director of

**References**
Give the names of four people with whom you worked or reported to (not listed on work history)

| Name | Address | Phone Number | Association |
|---|---|---|---|
| 1. John Knowles | 3113 Ross Clark Cir | (334) 673-8750 | worked with mr. Knowles when I was a credit manager He |
| 2. Susan Rae | 886 Baldwin Ave | (850) 893-2328 | store manager at Heily Mens was my credit manager |
| 3. William Wilkes | 3390 Ross Clark Cir | (334) 794-4305 | Store manager at Heily Mens in Dothan worked at last year |
| 4. Richard | 3390 Ross Clark Cir | (334) 794-4305 | Credit Manager whom I reported to |

In Case of Emergency Notify: Gerard Finnegan
_____
Name                          Address                          Phone Number

1.  I certify that the facts contained in this application are true and complete to the best of my knowledge and understand that AA reserves the right to use this information in a background investigation which is required of all potential employees. I also understand that any misrepresentation or omission of material facts in my application may be justification for refusal or, if employed, termination of employment from AA.

2.  I authorize investigation of all statements contained herein and the references listed above to give AA any and all information concerning my previous employment and any pertinent information they may have, personal or otherwise, and release all parties from all liability for any damage that may result from furnishing same to you. I further understand that a routine inquiry will be made which will provide information concerning character, general reputation, and personal characteristics and that upon written request additional information as to the nature and scope of the report, if any is made, will be provided.

3.  I understand and agree that:

   A.  AA has a drug-free workplace policy, and that a substance screening may be required after an offer of employment is made. The commencement and continuation of employment may be contingent upon successful completion of the substance screening. The result will be held in confidence by AA and the Human Resources Department except where a release is required by law.

   B.  At the start of my employment I may be expected to sign an Employee Non-Compete Agreement. This agreement protects any previous employer or other third party from a disclosure of business information that may be acquired illegally or with restrictions as to secrecy. Additionally, the agreement prohibits an employee from unfairly competing with AA during the course of employment or after employment with AA.

4.  I understand that all benefits offered by AA to its employees can be modified, abolished or expanded at any time, at the discretion of AA.

5.  I understand that all policies published or communicated by AA may be modified, abolished or expanded at any time, at the discretion of AA.

6.  I understand and acknowledge that, should I become employed by AA, my employment with AA will be of an "AT WILL" nature, which means that I may terminate, or AA may terminate, employment at any time, with or without any reason and with or without notice. I understand that the "AT WILL" nature of the employment may not be changed by written document or by conduct unless such change is specifically acknowledged in writing by an authorized executive officer of AA.

7.  I understand it is this company's policy not to discriminate on the basis of any protected category including but not limited to race, sex, religion, color, national origin, citizenship, age, disability, pregnancy, handicap or veteran's status.

8.  I represent and warrant that I have read and fully understand the foregoing, and that I seek employment with AA in accordance with the statements above.

3/27/01
_____          _____
Date                          Signature

**EXHIBIT B**



**An Equal Opportunity Employer**

Name: _Deborah Mercer_

Position Applying For (Be Specific) _CSR_

Date: _10/08/00_ *This application will remain active for 90 days from the date of application*

8003

Rev. 4/98

D000407
Murphy v. Advance America

## HIRING PROCESS

Dear Advance America Applicant:

Thank you for considering Advance America, Cash Advance Centers, Inc. (AA) as an employer. AA is committed to hiring the best person for each position. To ensure that we make a hiring decision that is right for us and you, we use different selection tools and consider a great amount of information. As you go through the employee selection process, you may come in contact with some or all of the following selection tools.

1.  **Employment Application** – Complete all sections which pertain to you. Do not include a resume as substitute for incomplete information. Sign and date the application. The employment application allows AA to determine your qualifications and experience. By signing the application, you authorize AA to verify the information on the application.

2.  **Employment Interviews** – Several personal interviews may be conducted with you in order to provide more detailed information regarding you background and qualifications.

3.  **Reference Checks** – Former employers and other references are verified prior to an offer of employment.

4.  **Records Checks** – Verification and information checks with the Social Security Administration, criminal courts, state and county repositories of criminal records, credit bureau, and Department of Motor Vehicles may be undertaken.

5.  **Employment Eligibility Verification** – This form is required by the U.S. Department of Justice and the Immigration and Naturalization Service. Federal Law requires that a new employee must supply documents that prove identity and employment eligibility (e.g. Driver's License and Social Security Card or Birth Certificate)* within 3 business days of hire. Because of the importance of this requirement, we must include it as a condition of employment.

We realize that this is a lengthy process but it is necessary to help determine if you are right for us and if we are right for you. We appreciate your patience while completing this process and we appreciate your interest in AA.

*Billy Webster*
Billy Webster
President & CEO

*Jamie Fulmer*
Jamie Fulmer
Human Resources Coordinator

*Other documents may be used to meet this requirement. Please request information from any Human Resources representative.

D000408
Murphy v. Advance America

## EMPLOYMENT HISTORY

Provide the following information from your past and current employers, assignments or volunteer activities, starting with the most recent (use additional sheets if necessary).

**Present (Last) Employment.** May we contact your present employer? ☐ Yes ☐ No

Company Name _Inside Accents_
Street _3507 Montgomery Hiway_ City & State _Dothan, Al._
Phone# _334 - 678-4974_ Job Title _Asst. Manager & Floral Designer_
Data of Employment: From _03_ / _07_ / _98_ To _Present_ # Hrs/Wk _35_
Current Salary: _$8.65_ Salary Requirements _____ Pay Cycle: HR (WK) BW MO YR
Supervisor's Name _Bill Register_ Phone _____
Duties & Responsibilities _____

Reason for leaving? _Better opportunities_

**Next Previous Employment.**

Company Name _Twitchell Dyco_
Street _2000 Clark Circle_ City & State _Dothan, Al._
Phone# _334 - 792-0003_ Job Title _Quality Control Inspector_
Data of Employment: From _07_ / _96_ To _04_ / _30_ / _99_ # Hrs/Wk _40_
Current Salary: _$8.25_ Salary Requirements _____ Pay Cycle: HR (WK) BW MO YR
Supervisor's Name _Betty Cunningham_ Phone _____
Duties & Responsibilities _Check product in production line, to assure that it_
_meets quality standards._
Reason for leaving? _Working Conditions._

**Next Previous Employment.**

Company Name _Teledyne Brown Engineering_
Street _Hiway 52 West._ City & State _Slocomb, Al._
Phone# _____ Job Title _Line Supervisor_
Data of Employment: From _11_ / _01_ / _94_ To _12_ / _95_ # Hrs/Wk _40_
Current Salary: _$11.50_ Salary Requirements _____ Pay Cycle: HR (WK) BW MO YR
Supervisor's Name _____ Phone _____
Duties & Responsibilities _Over see department, for safety, quality & production_

Reason for leaving? _Plant Closed._

## PERSONAL REFERENCES (not former employers or relatives)

| | Name and Occupation | Address | Phone |
|---|---|---|---|
| 1 | Eunice Bartholomew Branch Manager for AA | Dothan, Al. | 794-1755 |
| 2 | Joyce Whitehead Day Care Operator | Ozark, Al. | 774-7366 |
| 3 | Barbara Andrews Sewing Machine Operator | Ozark, Al. | 774-5464 |

D000409
Murphy v. Advance America

## EDUCATION/TRAINING

| Name of School | Course of Study, Major | Years Attended | Degree Received |
|---|---|---|---|
| High School: *Houston Co. High & Albany Tech.* City & *Albany* State *Ga.* | *General* | From To *1972* | *GED* |
| College: City & State | | From To | |
| Technical/Business: City & State | | From To | |
| Graduate: City & State | | From To | |
| Other Training/Schools (include military training if appropriate) City & State | | From To | |

SKILLS: List all skills in which you are proficient and that are relevant to the position for which you are applying. List academic honors, memberships in Academic/Professional/Trade Organizations or participation in any offices held in outside activities or community organizations which you feel are significant. (Omit all information indicative of age, sex, race, religion, national origin, disability, color, creed, ancestry, marital status.)

*25 years in management, am able to work well one on one or group with people, I have a very good understanding of retail and the importance of productivity.*

What would you list as your strong points? *Honest, dependable and hard working.*

What would you list as your weak points? *Some times too honest.*

D000410
Murphy v. Advance America

## PERSONAL INFORMATION (*Please Print*)

The questions on this application are designed to collect information from you so AA can make an informed and objective decision about your application for employment. Please answer the questions as completely as possible. Continue answers on a separate page if more space is needed.

Name: _DEBORAH_____ _CALHOUN_____ _MERCER_____
First                              Middle                              Last

Social Security Number: _____ . _____ _____ Current Phone ( _____ ) _____

Present Address: _____
Street                                              City, State, Zip Code

How long at this address? _16 mo._

Previous Address: _____
Street                                              City, State, Zip Code

Mobile/Beeper/Other Phone: _____

Source of Referral:    ☐ Newspaper Ad   ☒ Current Employee   ☐ Employment Agency
                       ☐ College Recruit   ☐ State Employment Agency
                       ☐ Other (Specify) _____

Have you ever been employed by AA?   ☐ Yes   ☒ No
If so,  Date _____ / _____ / _____   Location _____

Have you ever applied to AA before?   ☐ Yes   ☒ No
If so,  Date _____ / _____ / _____   Location _____

Are you over the age of 18? ☒ Yes   ☐ No.  If not, state your age _____

Are you legally eligible for employment in the United States? ☒ Yes   ☐ No

Date Available for work: _NEG._

Type of employment desired: ☒ Full Time   ☐ Part Time

Will you work overtime if required?   ☒ Yes   ☐ No

Have you ever been convicted of a felony or any other crime involving dishonesty, theft or breach of trust?  (Only job related convictions will be considered.) ☐ Yes   ☒ No

If yes, please explain (include dates and location)
_____
_____

Have you been refused bonding? ☐ Yes   ☒ No

If yes, please explain _____
_____

D000411
Murphy v. Advance America

## AGREEMENT

1.  I certify that all information included in this application is accurate to the best of my knowledge and understand that AA reserves the right to use this information in a background investigation which is required of all employees. I also understand that any misrepresentation or omission of material facts in my application may be justification for refusal or, or if employed, termination of employment from AA

2.  I authorize all persons, schools, companies, corporations, credit bureaus, and law enforcement agencies to supply any information concerning my background and release them from any liability and responsibility arising from their doing so. I further understand that a routine inquiry may be made which will provide information concerning character, general reputation, personal characteristics, and mode of living and that upon written request additional information as to the nature and scope of the report, if any is made, will be provided.

3.  I understand and agree that:

    A.  AA has a drug-free workplace policy, and that a substance screening may be required after an offer of employment is made and the commencement of employment may be contingent upon successful completion of the substance screening. The result will be held in strict confidence by AA and the Human Resources Department except where release is required by law.

    B.  At initial employment I may be expected to sign an employee Non-Compete Agreement. This agreement protects any previous employer or other third party from disclosure of business information that may have been acquired illegally or with restrictions as to secrecy. Additionally, the agreements prohibit an employee from unfairly competing with AA during the course of employment or after termination of employment.

4.  I understand that this employment application and any other company documents published for employees or job applications are not contracts of employment and that if I am hired, I will be an at-will employee and I may voluntarily leave employment or I may be terminated by my employer, at any time for any reason. I understand that any oral or written statements to the contrary are hereby expressly disavowed by AA and are not to be relied upon by me.

5.  I understand that all benefits offered by AA to its employees can be modified or decreased at any time, at the company's sole discretion.

6.  I understand that any policy items that appear in any policy manuals, at the discretion of the company may be withdrawn, revised or replaced at any time.

I understand it is this company's policy not to refuse to hire a qualified individual with a disability because of that person's need for a reasonable accommodation as required by the ADA.

I represent and warrant that I have read and fully understand the foregoing and seek employment.

Applicant's Signature _Deborah Mercer_      Date _10 / 08 / 2000_

D000412
Murphy v. Advance America

# DEBORAH MERCER

---

## SUMMARY

23 Years of supervisory experience in manufacturing, with a demonstrated ability in workflow control and efficiency. Recognized as conscientious, hard working, and one who takes pride in quality work fostering a positive environment.

## PROFESSIONAL EXPERIENCE

**INSIDE ACCENTS**, DOTHAN, AL,                                1997-PRESENT
**CO/ASST. MANAGER/ FLORAL DESIGNER**

* Floral Designer - 2 1/2 years.
  Responsible for meeting store needs of product in addition to filling special orders.

* Key Holder - 1 1/2 years.
* Responsible for inventory. opening and closing of shifts. Accounting for register and safe money.
* Going to market to purchase merchandise, as well as ordering from sales reps throughout the year.
* Co/Assistant Manager - 6 Months.
* Assign workers to jobs ( work flow).
* Interview personnel, as well as all other responsibilities listed above.

**TWITCHELL - TYCO**                                           1996-1997
**Quality Control (Extrusion Dept.)**

* Quality Control inspector for extrusion department.
* Check yarn on machines to assure that yarn meets specs.

**TELEDYNE BROWN ENGINEERING** - Slocomb, Alabama    1994-1995
*Line supervisor*
Line supervisor of up to 35 machine operators.

* Responsible for implementing new company procedures and hiring all new employees.
* Obtained 98% overall net efficiency within 6 months of operation.
* Responsible for second shift operation with no supervision from management.
* Evaluated by supervisor with an overall superior record.

**CHAMPION PRODUCTS, INC.** - Slocomb, Alabama          1990-1994

D000413
Murphy v. Advance America

*Line supervisor*
Line supervisor of up to 110 machine operators.

* Ensured orders were entered according to production schedules and sequence as well as completed on time.
* Trained operators in the proper use of machines and correct working methods, emphasizing ergonomically correct movements.
* Led operation in eliminating excess costs faster than established time-lines when starting new procedures.
* Authorized to hire, counsel, and coach operators on their production and attendance.
* Supervised first line that achieved at least 100% net efficiency.

## RESUME

Page 2

**ANSELL INC. – Dothan, Alabama**                                    1990
Operator - Testing Machines

**JUDY BOND LADIES APPAREL - Columbia and Ozark, Alabama**    1978-1989
*Production Supervisor*

* Responsible for processing and scheduling of received orders.
* Monitored quality problems on line.
* Trained and monitored progress of operators on all jobs.
* Over eleven year tenure supervised every line in facility with a commendation from management.
* Supervised two lines while change in style and products was a continuos process.

## EDUCATION/TRAINING

**GED Diploma**

Supervisory Training, Albany, Georgia                          1991

Supervisory Training, Dothan, Alabama                         1983

D000414
Murphy v. Advance America

# EXHIBIT C



D000037
Murphy v. Advance America

# EXHIBIT D

| Center # | Date | Title | Name | Hire Date | Status | Term Date | Sex | Ethnic Group | Annual Rate | Hourly Rate |
|---|---|---|---|---|---|---|---|---|---|---|
| 1610 | 11/25/02 | Manager | Bartholomew, Eunice | 11/30/1999 | T | 9/13/2004 | F | White | 24,999.78 | 12.25 |
| 1610 | 06/07/04 | Manager | Bartholomew, Eunice | | | | | | | |
| 1610 | 10/14/04 | Manager | | | | | | | 25,499.76 | |
| | | | | | | | | | | |
| 1622 | 11/25/02 | | | | | | | | | |
| 1622 | 06/07/04 | | | | | | | | | |
| 1622 | 10/14/04 | Manager | Dianne Murphy | 3/23/2000 | T | 12/29/2004 | F | Black | 24,148.80 | $11.61 |
| | | | | | | | | | | |
| 1624 | 11/25/02 | | no record | | | | | | | |
| 1624 | 06/07/04 | Manager | Dorothy M. May | 9/9/2002 | A | | F | White | 21,008.00 | $10.10 |
| 1624 | 10/14/04 | Manager | Dorothy M. May | | | | | | 21,632.00 | $10.40 |
| | | | | | | | | | | |
| 1635 | 11/25/02 | Manager | Deborah Hughes | 10/28/2000 | T | 1/13/2006 | F | White | 24,564.00 | $11.81 |
| 1635 | 06/07/04 | Manager | Arlene Cook | 3/18/2003 | A | | F | White | 23,183.94 | $11.15 |
| 1635 | 10/14/04 | Manager | Arlene Cook | | | | | | 24,375.00 | $11.71 |
| | | | | | | | | | | |
| 1653 | 11/25/02 | Manager | Dianne Murphy | 3/23/2000 | T | 12/29/2004 | F | Black | 23,004.80 | 11.06 |
| 1653 | 06/07/04 | Manager | | | | | | | | |
| 1653 | 10/14/04 | | Angel Thornton | 8/11/2003 | T | 1/18/2005 | F | White | 23,171.20 | $11.14 |
| | | | | | | | | | | |
| 1655 | 11/25/02 | | no record | | | | | | | |
| 1655 | 06/07/04 | | no record | | | | | | | |
| 1655 | 10/14/04 | Manager | Jennifer D. Drewell | 8/30/2004 | A | | F | White | 24,024.00 | $11.55 |
| | | | | | | | | | | |
| 1664 | 11/25/02 | Manager | Rhonda J. Herring | 5/7/2001 | T | 12/16/2003 | F | White | 19,864.00 | $9.55 |
| 1664 | 06/07/04 | Manager | Jennifer Sheffield | 10/28/2002 | T | 5/27/2005 | F | White | 23,004.80 | $11.06 |
| 1664 | 10/14/04 | Manager | Jennifer Sheffield | | | | | | 23,691.20 | $11.39 |
| | | | | | | | | | | |
| 1674 | 11/25/02 | | not open | | | | | | | |
| 1674 | 06/07/04 | | not open | | | | | | | |
| 1674 | 10/14/04 | Manager | Shirley Delois Speed | 5/19/2003 | T | 6/6/2005 | F | Black | 24,003.20 | $11.54 |
| | | | | | | | | | | |
| 1676 | 11/25/02 | | not open | | | | | | | |
| 1676 | 06/07/04 | Manager | Laura Booker | 10/27/2003 | T | 7/16/2004 | F | Black | 22,505.60 | $10.82 |
| 1676 | 10/14/04 | Manager | Ramona Wilson | 6/7/2004 | A | | F | Black | 22,672.00 | $10.90 |
| | | | | | | | | | | |
| 1687 | 11/25/02 | | not open | | | | | | | |
| 1687 | 06/07/04 | Manager | Linda Clanton | 2/3/2004 | T | 6/29/2005 | F | Black | 23,004.80 | $11.06 |
| 1687 | 10/14/04 | Manager | Linda Clanton | | | | | | 23,400.00 | $11.25 |
| | | | | | | | | | | |
| 1697 | 11/25/02 | | not open | | | | | | | |

| ID | Date | Title | Name | Date | | Date | | Race | Salary | Rate |
|----|------|-------|------|------|---|------|---|------|--------|------|
| 1697 | 06/07/04 | Manager | Angel Thornton | 8/11/2003 | T | 1/18/2005 | F | White | 22,505.60 | $10.82 |
| 1697 | 10/14/04 | | | | | | | | | |
| 3802 | 11/25/02 | | not open | | | | | | | |
| 3802 | 06/07/04 | Manager | Christine E. Jackson | 8/19/2002 | A | | F | White | 23,004.80 | $11.06 |
| 3802 | 10/14/04 | Manager | Christine E. Jackson | | | | | | 23,691.20 | $11.39 |
| 3813 | 11/25/02 | | not open | | | | | | | |
| 3813 | 06/07/04 | Manager | Paula Thomas | 1/6/2003 | A | 8/27/2004 | F | White | 23,004.80 | $11.06 |
| 3813 | 10/14/04 | | Helen G. Davis | 8/9/2004 | T | 6/28/2005 | F | White | 24,003.20 | $11.54 |
| 3814 | 11/25/02 | | not open | | | | | | | |
| 3814 | 06/07/04 | Manager | Debra M. Kilcrease | 2/24/2004 | T | 10/11/2004 | F | White | 23,504.00 | $11.30 |
| 3814 | 10/14/04 | Manager | William R. Hines | 8/30/2004 | T | 9/8/2005 | F | Black | 25,001.60 | $12.02 |

# EXHIBIT E

# ADVANCE AMERICA
CASH ADVANCE CENTERS

## Status Change Form

| Brand: | AA |
|---|---|
| Region: | 8 |
| Division: | 7 |
| Location: | 1653 |
| State | AL |

**A** | Effective Date of this Status: 6/7/2004

**Employee Name:** Last MURPHY    First DIANNE    Initial

**Social Security Number:** 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

**B** | **Street Address:**

**New Address:**    **Gender:** Select One

**City, State, ZIP:**    **Marital Status:** Select One

**Home Phone:**    **Birth Date:**    **Race:** Select One

**Emergency Contact:** (name and address)    **Phone Number:**    **Relationship:**

**C** | **Employee Classification:** Full Time (30 hrs / wk or more)    **Position / Title:** Branch Manager Floating

**D** | **Effective Date:**    **Current Rate of Pay:** Select One    **New Rate of Pay:** Select One    **Change Type:** Transfer

**Performance Evaluation Score:**    **Old Location:** 1653    **New Location:** 98087

**E** | **Reason for Leave of Absence:**    **Leave Effective Date:**    **Leave Return Date:**

**Medical Leave:** Select One

**F** | **Supervisor Approval:**    Date:    **RDO / Director or VP Approval:**    Date:

**DDO / Director or VP Approval:** John Knowles DDO 6/14/04    Date:    **HR Signature:** —    Date:

Signed, Completed Copy MUST be Faxed to Your Designated HR Representative    4/03

D000188
Murphy v. Advance America

# EXHIBIT F



## ADVANCE AMERICA
### CASH ADVANCE CENTERS

**Status Change Form**

Brand: AA
Region: 8
Division: 7
Location: 98087
State AL

**A**

| Effective Date of this Status | 10/4/2004 | | |
|---|---|---|---|
| Employee Name: | Last MURPHY | First DIANNE | Initial |

Social Security Number: 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

**B**

Street Address: | New Address: Select One | Gender: Select One

City, State, ZIP: | Marital Status: Select One

Home Phone: | Birth Date: | Race: Select One

Emergency Contact: (name and address) | Phone Number: | Relationship:

**C**

Employee Classification: Full Time (30 hrs / wk or more)

Position / Title: Branch Manager

**D**

| Effective Date: | Current Rate of Pay: Select One | New Rate of Pay: Select One | Change Type: Transfer |
|---|---|---|---|
| Performance Evaluation Score: | | Old Location: 98087 | New Location: 1622 |

**E**

Reason for Leave of Absence: | Leave Effective Date: | Leave Return Date:

Medical Leave: Select One

**F**

Supervisor Approval: _____ Date: | RDO / Director or VP Approval: | Date:

DDO / Director or VP Approval: John Knowles DDO 6/14/04 Date: | HR Signature: | Date:

Signed, Completed Copy MUST be Faxed to Your Designated HR Representative — 4/03

ENTERED

D000187
Murphy v. Advance America

# EXHIBIT G

G

# ADVANCE AMERICA/NATIONAL CASH ADVANCE

## Traditional States DDO AUDIT

*To Maintain Form Integrity, Rename This File Before Saving It.*

| | |
|---|---|
| Review Date: | 12/16/2004 |
| Location Number: | 1622 |
| Site Location: | ENTERPRISE |
| Name of Person Conducting Audit: | JOHN KNOWLES |
| State Of: | AL |

| | |
|---|---|
| Location Manager: | DIANE MURPHY |
| Divisional Director: | JOHN KNOWLES |
| Regional Director: | BRENDA STEWART |
| Title of Person Conducting Audit: | DDO |

| | |
|---|---|
| Current Held Checks: | 258 |
| Maximum Held Checks: | 328 |
| MTD Held Checks +/-: | 17 |
| PCO $ Current Month: | $1,823 |
| PCO $ Next Month: | $2,640 |

| | |
|---|---|
| MTD Buy Back Percentage: | 99.2% |
| Overdue Percentage: | 5.4% |
| NSF Percentage: | 10.9% |
| YTD Charge Off Percentage: | 18.5% |

### Previous 2 Internal Audit Results

| Date | Score | Pass | Fail | Location Manager |
|---|---|---|---|---|
| 8/19/2004 | PASS | | | ED FINNEGAN |
| | | | | |

### Previous 2 DDO Audit Results

| Date | Points Earned | Possible Points | Location Manager |
|---|---|---|---|
| 1/12/2004 | 416 | 470 | DIANE MURPHY |
| 9/21/2004 | 428 | 464 | DIANE MURPHY |

*Each question in the DDO Audit is assigned a point value. Please refer to the assigned point values listed below.*

| | | | |
|---|---|---|---|
| Company Violation | 1 point | Potential Federal Law Implication | 4 points |
| Best Practices Violation | 2 points | Evidence of Manipulation | 5 points |
| Potential State Law Implication | 3 points | Failure to Meet Numeric Goals | 5 points |
| Cash Control/Security Violation | 3 points | Evidence of Gross Violation | 10 points |

NOTE: A signed copy of this DDO Audit must be left at location upon completion.

Rev. 9/2/2004

Page 1

D000228
Murphy v. Advance America

## SECTION A - DAILY OPERATIONS

**1. Team Member and Location Appearance**

a) Does each Team Member's appearance reflect the standard set forth in the Team Member Handbook?

*Review the physical appearance of the Location for the following:*

| | Assigned Point Value | Points Earned |
|---|---|---|
| b) Is the carpet clean? | 1 | 1 |
| c) Are windows and ledges clean? | 1 | 1 |
| d) Are counters/desk areas dusted and clutter free? | 1 | 1 |
| e) Is back area neat and clean including microwave and refrigerator? | 1 | 1 |
| f) Are the interior and exterior lights functioning? | 1 | 1 |
| g) Is the exterior sign timer set and lights illuminated when appropriate? | 1 | 1 |
| h) Are ceiling tiles clean and uniform? | 1 | 1 |
| i) Are Team Members' personal items out of view from the customers? | 1 | 1 |
| j) Is restroom(s) neat and clean? | 1 | 1 |
| k) Are air filters changed according to maintenance plan? | 1 | 1 |

**2. Signs and Notices**

| | Assigned Point Value | Points Earned |
|---|---|---|
| a) Is the Fee Schedule visible, accurate and in good condition? | 3 | 3 |
| b) Is the Returned Check Fee sign visible, accurate and accessible? | 3 | 3 |
| c) Are applicable State/Local licenses present, visible, and current? | 3 | 3 |
| d) If "other" signage is present, has it been approved by the Regulatory Department and/or the appropriate Bank? | 4 | 4 |
| e) Are Federal, State, local labor law posters correct/displayed where Team Members can easily view them? | 4 | 4 |
| f) Is the Customer Consent Sign conspicuously posted? | 4 | 4 |
| g) Are our Creed and CFSA posters neat, clean, not faded, and displayed? | 1 | 1 |
| h) Are Privacy Notices accessible to the customer? | 1 | 1 |
| i) Are window graphics approved, not faded, replaced if needed, and accurate? | 4 | 4 |
| j) Is Stars Hotline poster evident and displayed where Team Members can easily view it? | 1 | 1 |

**Comments**

**Action Plan**

Who: _____  Target Date: _____

Specific Steps for Compliance: _____

Person(s) Responsible For Training: _____

Operations Manual Policy Reference: _____

Rev. 9/2004

Page 2

D000229
Murphy v. Advance America

## SECTION A - DAILY OPERATIONS (continued)

### 3. Cash Audit

| | | Assigned Point Value | Points Earned |
|---|---|---|---|
| a) Are Team Members adhering to company guidelines regarding loose change or bills? | Y | 3 | 3 |
| b) Do all cash drawers and the safe balance? | Y | 3 | 3 |
| c) Are all Cash Drawer Balance and Safe Balance Receipts signed by appropriate Team Member(s)? | Y | 3 | 3 |
| d) Can the Assistant Manager or CSR explain the "Banker" procedure in detail? | Y | 3 | 3 |
| e) Are cash drawers locked at all times and keys secured on the Team Member? | Y | 3 | 3 |
| f) Are cash drawer levels acceptable? | Y | 3 | 3 |

### 4. Transaction Closing, and Consecutive Transaction Program

*Review transaction closing for the following:*

| | | | |
|---|---|---|---|
| a) Is the preferred method of payback explained? | Y | 1 | 1 |
| b) Is the due date, time (if allowed), and amount due explained? | Y | 1 | 1 |
| c) Does the Team Member dictate terms of the transaction? | Y | 1 | 1 |
| d) Is a copy of agreement, signed by both parties, given to customer (nothing on top)? | Y | 1 | 1 |
| e) Is the APR verbally disclosed? | Y | 4 | 4 |
| f) Is the Privacy Notice(s) handed out at appropriate times? | Y | 4 | 4 |
| g) Can Team Members explain when Privacy Notices must be distributed (UPDAN)? | Y | 4 | 4 |
| h) Does the due date on the agreement match the due date agreed upon during the transaction closing? | Y | 4 | 4 |

*Review CFSA Consecutive Transaction program for the following:*

| | | | |
|---|---|---|---|
| i) Are materials handed out at appropriate times? | Y | 2 | 2 |
| j) Are materials explained to the customer? | Y | 2 | 2 |
| k) Is the customer given second brochure according to the Operations Manual? | Y | 2 | 2 |
| l) Can Team Members verbally explain CFSA and some of the 11 Best Practices? | Y | 1 | 1 |

**Comments**

**Action Plan**

Who:                          Target Date:

Specific Steps for Compliance:

Person(s) Responsible For Training:

Operations Manual Policy Reference:

Rev. 9/2004

D000230
Murphy v. Advance America

## SECTION A – DAILY OPERATIONS (continued)

**5. Paperwork Review**

*Review 14 random days of the daily paperwork for the following:*

List dates audited: _____

| | Assigned Point Value | Points Earned |
|---|---|---|
| a) Do deposit slips balance and match the bank validation and the End of Day reports? | 3 | 3 |
| b) If discrepancies are evident, is a reasonable explanation documented by Team Members? | 3 | 3 |
| c) Are deposit slips itemized correctly? | 3 | 3 |
| d) Do all items listed on the deposit slip match the End of Day Reports? | 3 | 3 |
| e) Are copies of the deposited cashier checks and money orders attached to the End of Day Report? | 3 | 3 |
| f) Are mid-day deposits made where/when as required? | 3 | 3 |
| g) Are Deposit Tracking Sheets completed and signed correctly? | 3 | 3 |
| h) Are the appropriate number of cash counts being performed daily? (opening, mid-day, banker-switch, EOD) | 3 | 3 |
| i) Are Team Members adhering to all company guidelines regarding cash handling procedures? | 3 | 3 |
| j) Are all voided checks and documents accounted for and retained? | 5 | 5 |
| k) Do void receipts have a clearly written explanation? | 5 | 5 |
| l) Are all restrictions in compliance with company policy and procedure? | 3 | 3 |
| m) Are all transactions completed before End of Day closer? | 4 | 4 |

*Review the Cash Disbursement Log since the last DDO audit for the following:*

| | | |
|---|---|---|
| n) Are all cash disbursements receipts signed, accounted for, reasonable, and properly coded in Advantage? | 5 | 5 |

**Comments**

**Action Plan**

| Who: | Target Date: | Person(s) Responsible For Training: |
|---|---|---|

Specific Steps for Compliance:

Operations Manual Policy Reference:

Rev: 9/2004

Page 4

D000231
Murphy v. Advance America

SECTION A – DAILY OPERATIONS (continued)

| | Assigned Point Value | Points Earned |
|---|---|---|

**6. General Compliance**

~~Is the 10 Minute Paid Break log current and complete for all Team Members? (when applicable)~~

a) Are Team Members adhering to company guidelines regarding the Gramm-Leach-Bliley Act (GLBA)? — 4 / 4
b) Are Team Members adhering to the policy regarding not disclosing fees/APR over the telephone? — 4 / 4
c) Is the location using the most recent Operations Manual? — 10 / 10

~~Does the Operations Manual have all Team Member signatures?~~

d) Are Team Members adhering to company guidelines for issuing advances to eligible individuals? — 4 / 4
e) Are files using Military Power of Attorney compliant with company policy? — 4 / 4
f) Is there proper documentation for all cleared checks - less than 60 days outstanding? — 10 / 10
g) Are all current, documented per policy copies of all Team Member timesheets within the Team Member files? — 4 / 4
h) Is the DDO Approval Log up to date and accurate per DDO records? (points for bank states only) — 0 / 0

**7. Denial/Incomplete Application Files**

a) Do all denial/incomplete customer files have a copy of the correct notice? — 4 / 4
b) Are the notices properly completed and free of alterations or hand-written comments? — 4 / 4
c) Are the files maintained in a separate location from all other files? — 4 / 4

**Comments**

**Action Plan**

Who:                          Target Date:                    Person(s) Responsible For Training:

Specific Steps for Compliance:                               Operations Manual Policy Reference:

Rev: 9/20/04

D000232
Murphy v. Advance America

## SECTION A - DAILY OPERATIONS (continued)

**8. Bankruptcies**

a) Does each file have a bankruptcy case number, filing date, and name and phone number of attorney?
b) On Chapter 13, has the Proof of Claim form been completed correctly?
c) If a customer is no longer in bankruptcy, are discharge or dismissal papers in the file and appropriate action taken?
d) Did Team Members obtain a qualifying bank statement and pay stub for customers who conducted transactions after being removed from bankruptcy?
~~If a customer in bankruptcy has returned check, is a copy of the Advantage bankruptcy letter in the file? (Doesn't apply in Bank States)~~

| | Assigned Point Value | Points Earned |
|---|---|---|
| Y | 1 | 1 |
| Y | 1 | 1 |
| Y | 1 | 1 |
| Y | 1 | 1 |

**9. Forms**

*Are the correct versions of the following forms being used?*

a) Application
b) Terms and Conditions
c) Crash Package Agreements
d) Notice of Incomplete Application
e) Notice of Denial/Adverse Action
f) Privacy Notice Brochure
g) Customer Information Log (not measured in CA)

| | Assigned Point Value | Points Earned |
|---|---|---|
| Y | 4 | 4 |
| Y | 4 | 4 |
| Y | 4 | 4 |
| Y | 4 | 4 |
| Y | 4 | 4 |
| Y | 4 | 4 |
| Y | 4 | 4 |

**Comments**

**Action Plan**

Who:                          Target Date:          Person(s) Responsible For Training:

Specific Steps for Compliance:                      Operations Manual Policy Reference:

## SECTION A - DAILY OPERATIONS RESULTS

| | Total Possible Points | Total Points for Correct Questions |
|---|---|---|
| | 219 | 219 |
| Section Score | | 100.0% |

Rev. 9/20/04

Page 6

D000233
Murphy v. Advance America

## SECTION B - SECURITY

**1. Location Security**

| | | Assigned Point Value | Points Earned |
|---|---|---|---|
| a) | Do Team Members know the location of the most current Loss Prevention Kit? | 3 | 3 |
| b) | Do Team Members have separate alarm codes? | 3 | 3 |
| c) | Is the security company's call list current? | 3 | 3 |
| d) | Are the security camera and monitor working? | 3 | 3 |
| e) | Is the time lapse recorder on, with the proper tape and an accurate time and date stamp? (if applicable) | 3 | 3 |
| f) | Is this location free of any handwritten or printed side combinations? | 3 | 3 |
| g) | Is the back door secured? | 3 | 3 |
| h) | Is the trash taken out front door? | 3 | 3 |
| i) | Is the alarm system tested quarterly? | 3 | 3 |
| j) | Do the Team Members know about and understand how to use the "Buddy System" at closing? | 3 | 3 |
| k) | Do the Team Members know about and understand how to use the "Solar Branch Program"? | 3 | 3 |
| l) | Do the Team Members know about and understand how to use the "Duress" Code? | 3 | 3 |
| m) | Do the Team Members know about and understand how to use the panic button? | 3 | 3 |
| n) | Are workstations logged off when not in use? | 3 | 3 |

**Comments**

**Action Plan**

Who:    Target Date:    Person(s) Responsible For Training:

Specific Steps for Compliance:    Operations Manual Policy Reference:

## SECTION B - SECURITY RESULTS

| Total Possible Points | Total Points for Correct Questions |
|---|---|
| 42 | 42 |
| Section Score | 100.0% |

Rev: 9/20/04

D000234
Murphy v. Advance America

SECTION C.- CHECK & FILE AUDIT

*1. Check Audit*

| | Assigned Point Value | Points Earned |
|---|---|---|
| a) Are you able to account for all checks (includes all active Held, NSF, Bankruptcy, & Charge Offs)? | 3 | 3 |
| b) Are all checks negotiable and written for the correct amount? | 3 | 3 |
| c) Are all checks signed by the AANCA account holder/authorized user of the checking account? | 3 | 3 |
| d) Are all checks properly dated? | 3 | 3 |
| e) Are all checks payable to correct payee (no abbreviations)? | 3 | 3 |
| f) Does the number on each check held check match the check number recorded in Advantage? | 3 | 3 |
| g) Is a new check accepted for each customer transaction? | 1 | 1 |
| h) Are all checks drawn on personal bank accounts? | 1 | 1 |
| i) Are all counter checks accepted as defined in the "Operations Manual? | 10 | 10 |
| j) Have all "PAID" checks been returned? | 3 | 3 |
| k) Have past due checks been held within the allowable maximum number of days? | 3 | 3 |
| l) Have all returned checks been properly stamped  For Deposit Only? | 3 | 3 |
| m) Is one full Held Check Audit performed weekly and properly documented? | 1 | 1 |
| n) Are the 4 check audit reports retained and signed (Active Held Check, Returned Items, NSF Pre-payment and Write Off)? | 1 | 1 |
| o) Are DDO-documented bank bags stored and undisturbed? | 1 | 1 |

**Comments**

**Action Plan**

Who:                     Target Date:

Specific Steps for Compliance:

Person(s) Responsible For Training:

Operations Manual Policy Reference:

Rev: 9/2004

D000235
Murphy v. Advance America

## SECTION C – CHECK AND FILE AUDIT (continued)

**2. Customer File Exceptions -** *(NOTE: In this section, this separate  CUSTOMER FILE EXCEPTIONS WORKSHEET  automatically calculates the overall totals for both columns A & B. It is not required to input numbers in these columns if the worksheet is completed properly. Also, see  CUSTOMER FILE EXCEPTIONS WORKSHEET  for comments.)*

*Review at least 20 (twenty) active customer files, including (preferably) 10 new customers.*

| | Assigned Point Value A | Points Earned B |
|---|---|---|
| a) Any discrepancies regarding the customer's name have been explained? | 4 | |
| b) Customer's social security number is correct and without any discrepancies? | 4 | |
| c) There are no discrepancies regarding the customer's home phone number and/or address? | 4 | |
| d) There are no discrepancies regarding the pay frequency, amount or pay date? | 4 | |
| e) All customer files and agreements are accounted for? | 4 | |
| f) All transactions are free of any evidence of any manipulation? | 4 | |
| g) Are agreements free of alterations and failed toner? | 5 | |
| h) Is it evident that the customer has only 1 outstanding account/transaction (or 2 if allowed by state)? | 4 | |
| i) Are customer folders stamped "Confidential" and free of personal or experience-related information on the cover? | 5 | |
| j) Is all paperwork properly signed and dated by the customer and Team Member? | 4 | |
| k) Is the application 100% completed, and are changes initialed by the account holder? | 0 | |
| l) Does the customer file contain evidence of two forms of proper ID, as stated in the Operations Manual? | 4 | |
| m) Does the file include required income source or verification, per Operations Manual? | 4 | |
| n) Does the file include required bank statement or verification, per Operations Manual? | 4 | |
| o) Are the proper state specific Terms and Conditions on the back of all agreements, right side up? | 4 | |
| o) Is the correct itemization of Amount Financed, APR, and Finance Charges properly disclosed in all crash package documents? | 3 | |
| o) Are changes due to updates documented by a signed Customer Information Summary sheet? | 10 | |
| | 1 | |

**Comments**

**Action Plan**

| Who: Lisa Taylor | Target Date: Immediate | Person(s) Responsible For Training: Diane Murphy |
|---|---|---|

Specific Steps for Compliance:

Application for two customers date different than first transaction - no pending or denial letter in file.

Operations Manual Policy Reference: A - 1

## SECTION C – CHECK & FILE AUDIT RESULTS

| | |
|---|---|
| Total Possible Points | 115 |
| Section Score | 96.5% |

| | |
|---|---|
| Total Pts for Correct Questions | 111 |

Rev. 9/20/04

Page 9

D000236
Murphy v. Advance America

## SECTION D - MARKETING

**1. Local Store Marketing**

|  | Assigned Point Value | Points Earned |
|---|---|---|
| a) Is the location spending the appropriate amount of LSM dollars? | 1 | 1 |
| b) Are current marketing supplies on hand in the Location? | 1 | 1 |
| c) Is the Local Store Marketing Binder accessible, current, and productive? | 1 | 0 |
| d) Is the pin map current and complete with legend? | 1 | 0 |
| Are the Competitor Surveys updated every 6 months and when a competitor moves in? | 1 | 1 |
| e) Is the referral program in place and used correctly? | 1 | 0 |
| f) Are on / off site events being planned with the approval of the Regulatory and Marketing Departments? | 4 | 4 |
| g) Is the current marketing program being used effectively? | 1 | 0 |

**2. Growth Standards**

Checks List
Checks This Year, Same Year    Day

| Year | Day | Value |
|---|---|---|
| 258 | 289 | -31 |

|  | Assigned Point Value | Points Earned |
|---|---|---|
| a) Is the location meeting its expectations for growth? | 5 | 0 |

**Comments**

1- Daily/Weekly Tracking sheets in complete. 2- Team Members Marketing program sheets not available. 3- No evidence of Street Marketing, Tear Sheet Route, Flyer Route, exist. Cannot find proof of any Marketing Activity. When asked Manager Diane Murphy produced a one page sheet of paper with one set of apartments where door hanger were placed with a date of 12/19/04, as the date of the marketing activity. No other proof was presented. She said she had other sheets with information on them but did not know what happened to them. THE REQUIRED MARKETING PROGRAM (ACTIVITY) IS NOT BEING WORKED THEREFORE, IT IS INEFFECTIVE. THIS IS A REPEAT FINDING FROM THE PREVIOUS DOO AUDIT DATED 11/2004.

**Action Plan**

| Who: | Diane Murphy | Target Date: | Immediate | Person(s) Responsible For Training: | Diane Murphy |
|---|---|---|---|---|---|

Specific Steps for Compliance:

You have 2 weeks to establish the marketing program as outlined in the LSM Manual and the Division Marketing Guidelines.

Operations Manual Policy Reference:   LSM and Division Plan

## SECTION D - MARKETING RESULTS

| Total Possible Points | Total Points for Correct Questions |
|---|---|
| 15 | 7 |
| Section Score | 46.7% |

## SECTION E - COLLECTIONS

### 1. Collection Practices

| | | Assigned Point Value | Points Earned |
|---|---|---|---|
| Y | a) Is the "Quick Update" being used before every transaction (home phone or work phone or address)? | 1 | 1 |
| Y | b) Are funds verified daily on ALL uncommitted accounts (Overdue, NSF, last 6 months of Charge Offs)? | 1 | 1 |
| Y | c) Are collection calls made (in compliance with Operations Manual)? | 4 | 4 |
| N | d) Are all collection efforts being recorded in Advantage through the use of the Collections Module? | 4 | 0 |
| Y | e) Do all PTP's have Date, Time, Dollar Amount, and employee's initials? | 1 | 1 |
| Y | f) Are recorded collection efforts complete and compliant, per Operations Manual? | 4 | 4 |
| N | g) Are reminder calls made and documented each day? | 1 | 0 |
| Y | h) Are Team Members adhering to all company collection practices? | 5 | 5 |
| Y | i) Are NSF's and nonposted checks posted immediately upon receipt of the physical item, if not done by CSS? | 5 | 5 |
| Y | j) Are customers contacted by phone/letter the day the Location is notified about NSF? | 3 | 3 |
| N | k) Is there a correct copy of the NSF notice in the customer's file? | 3 | 0 |
| Y | l) Are field calls done when necessary? | 3 | 3 |
| N | m) Do all legal action files have the necessary documented approval? | 3 | 0 |
| Y | n) Has all required follow-up been completed on pending legal cases? | 3 | 3 |
| Y | o) Have all refunds been issued per policy? | 5 | 5 |

### 2. Collection Standards

| | | | |
|---|---|---|---|
| N | a) Is location meeting region's collection standards (BB%, NSF%, CO%)? | 5 | 0 |

**Comments**

NSF 10.9%, WO 18.5% MTD and 19.1% YTD, Pay to Charge Ratio = 33 (33%). Large time lapse between collection activity on Written Off Customers. Field Calls are not being made timely. Collection program not being work properly and effectively on Written Off Customers. REPEAT FINDING FROM PREVIOUS DDO AUDIT DATED 11/2/04

### Action Plan

| Who: | Diane Murphy | Target Date: | 1/5/2005 | Person(s) Responsible For Training: | Diane Murphy |
|---|---|---|---|---|---|

| Specific Steps for Compliance: | | | | Operations Manual Policy Reference: | |
|---|---|---|---|---|---|

Bring NSF and Write off into compliance by following good collection practices outlined in the Company, Region, and Division collection plan.

## SECTION E - COLLECTIONS RESULTS

| Total Possible Points | Total Points for Correct Questions |
|---|---|
| 46 | 38 |
| Section Score | 82.6% |

D000238
Murphy v. Advance America

## SUMMARY OF RESULTS

| | Total Possible Points | Total Points for Correct Questions | Section Score |
|---|---|---|---|
| SECTION A - DAILY OPERATIONS | 219 | 219 | 100.0% |
| SECTION B - SECURITY | 42 | 42 | 100.0% |
| SECTION C - CHECK & FILE AUDIT | 115 | 111 | 96.5% |
| SECTION D - MARKETING | 16 | 7 | 43.7% |
| SECTION E - COLLECTIONS | 45 | 38 | 82.6% |
| SECTION F - STATE COMPLIANCE | 33 | 33 | 100.0% |

| Total Possible Points | Total Points Earned |
|---|---|
| 470 | 450 |

| Total Questions Missed for Medium-Level/ Gross Violation/ Income Standard | Total Questions Missed for Potential Federal Law Implications | Total Questions Missed for Cash Control/ Security/ Potential State Law Implication |
|---|---|---|
| 2 | 1 | 0 |

*These totals assume completion of the audit and the earning of points.*

*To Maintain Form Integrity, Rename This File Before Saving It.*

"I acknowledge that I have received and reviewed the DDO Audit with the Divisional Director/Area Manager named above and I understand the standards by which the location and I are measured. Furthermore, I agree to correct any deficiencies documented within this audit. Failure to do so could lead to disciplinary action up to and including termination."

LOCATION MANAGER SIGNATURE

DIVISIONAL DIRECTOR / AREA MANAGER SIGNATURE

Page 12

Rev. 9/23/04

D000239
Murphy v. Advance America

# EXHIBIT H





**ADVANCE AMERICA**
CASH ADVANCE CENTERS

## Termination Report

| MURPHY | DIANNE | Middle | 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 |
|---|---|---|---|
| Last Name | First | | Social Security Number |
| 1622 | 12/29/2004 | P - Poor Performance | |
| Location # | Termination Effective Date | | Termination Code |

**Type of Separation:** Resignation: ☐    Dismissal: X

Other: ☐

**Rehire ?** No

**Reason for Termination:**
(1) - Violation of Company Policy and the FDCPA. I.e. Refusal to allow customer to rewrite without justification.
(2) - Failure to follow instructions. I.e. Failure to set up a Center Marketing Plan as directed.
(3) - Non compliance of the Company Collection Policy.

**Employee Evaluation (mark appropriate boxes)**

| | Unsatisfactory | Fair | Satisfactory | Good | Excellent |
|---|---|---|---|---|---|
| Attendance | | | | X | |
| Cooperation | | | X | | |
| Initiative | X | | | | |
| Job Knowledge | | | | X | |
| Quality of Work | X | | | | |

| | Yes | | No | |
|---|---|---|---|---|
| Company Property (I.E. Keys) accounted for? | Yes | X | No | |
| Security Codes, Changed? | Yes | X | No | |
| Bank Authorization, Changed? | Yes | X | No | |
| Computer Codes, Changed? | Yes | X | No | |
| Emergency Contact List, Changed? | Yes | X | No | |

**Employee Comments:**

Employee Signature / Date

Witness Signature / Date

Supervisor Signature / Date

DDO, RDO or COO Signature / Date

**If final pay check is needed touch here to complete**
Please note: All terminations must be approved in advance by a second level of management. (DDO, RDO, COO)
Email Completed Copy to your Designated HR Representative -- 4/03

D000002
Murphy v. Advance America

# EXHIBIT I

Harassment Policy

## ACKNOWLEGEMENT

I HEREBY ACKNOWLEDGE RECEIPT OF ADVANCE AMERICA'S HARASSMENT POLICY.

• I HAVE READ (OR THIS HAS BEEN READ TO ME) THE STANDARDS OUTLINED IN THE HARASSMENT POLICY. I UNDERSTAND THAT FAILURE TO COMPLY WITH THIS POLICY AND PROCEDURE CAN RESULT IN DISCIPLINE AND/OR TERMINATION.

Dianne Murphy
Employee's Name (Please Print)

03-23-00
Date

Signature

Hope French
Witness' Name (please print)

3/23/00
Date

Signature

cc: Employee, File, HR File

INT000073

NOV.29.2001   3:54PM   ADVANCED                                    NO.953   P.16




## Acknowledgement and Proof of Acceptance of the Anti-Harassment Policy

I have viewed the Anti-Harassment videotape and completed the Anti-Harassment quiz.
I have also reviewed my quiz answers along with the companion answer sheet and the
comments it contains. I have had the opportunity to ask questions. I now understand
each and every question and related answer. I understand that failure to comply with the
policy and procedures can result in discipline up to and including termination.

Diane Murphy
_____
Employee's Name (Please Print)

_____
Employee's Signature

_____
Witness Signature

11-27-01
_____
Date

1022      8      7
_____  _____  _____
Branch   Region   Division

11-27-01
_____
Date

### Please Check Current Position

___ CSR      ✓ Assistant Manager      ___ Branch Manager (Equivalent or Above)

## FAX ALL COMPLETED ACKNOWLEDGEMENT FORMS
## TO EMPLOYEE RELATIONS
## (864) 591-5868

D000052
Murphy v. Advance America

JAN. 9.2003  9:04AM   JOHN KNOWLES                    NO.480   P.4/13





## <u>Acknowledgement and Proof of Acceptance of the Anti-Harassment Policy</u>

By signing below, I acknowledge that I have viewed the Company's Anti-Harassment videotape dated 9/24/02 and have had an opportunity to ask questions regarding the Company's Anti-Harassment Policy. I also acknowledge that failure to comply with the Company's Anti-Harassment Policy and Procedures can result in discipline up to and including termination of my employment.



Employee's Name (please print)

Employee's Signature

Witness Signature

Date  1/08/03

Branch  1093   Region  8   Division  4

Date  1/8/03

### Please Check Current Position

_____ CSR          _____ Assistant Manager          ✓ Branch Manager (Equivalent or Above)

## Fax all completed acknowledgement forms to your HR/Payroll Representative

D000036
Murphy v. Advance America

# EXHIBIT J

## SECTION II

### Employment Policies and Procedures

### (A) EQUAL OPPORTUNITY EMPLOYMENT

National Cash Advance is an equal opportunity employer. The Company does not discriminate on the basis of race, religion, color, national origin, sex, age, pregnancy, disability, veteran status, handicap, citizenship or any other legally protected category in connection with any phase of the employment process, including hiring, promotion, discharge, compensation, and benefits.

It is also the practice and policy of National Cash Advance to comply with all applicable Federal, State and Local Labor Laws.

### (B) HARASSMENT OR DISCRIMINATION

### Policy:

The workplace is for work. Harassment disrupts the work environment. The Company is committed to maintaining a work environment free from harassment. The Company does not approve of harassment of any type within the workplace and will not tolerate the harassment of its employees by anyone, including managers, supervisors, co-workers, customers or vendors. Harassment consists of unwelcome conduct based upon an individual's protected status such as sex, color, race, religion, national origin, age or disability. While all forms of unlawful harassment are prohibited, sexual harassment deserves special mention.

### Definition of Sexual Harassment:

The Equal Employment Opportunity Commission (EEOC) has issued guidelines regarding sexual harassment in the workplace. Under these guidelines, sexual harassment will be treated as unlawful sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended.

Effective 06/01/00

8

"Sexual Harassment" is defined by the EEOC guidelines as follows:
"Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when:

1. Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment;
2. Submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or
3. Such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment.

Sexual harassment includes threats or insinuations, either explicitly or implicitly, that an employee's refusal to submit to sexual advances will adversely affect the employee's employment, evaluation, wages, advancement, assigned duties, shifts or any other conditions of employment."

Sexually harassing conduct in the workplace, whether committed by superiors, co-workers or customers, is also prohibited. Such conduct may include, but is not limited to, unwanted sexual flirtations, advances, or propositions; verbal abuse of a sexual nature; unwanted graphic verbal comments about an individual's body; the display in the workplace of inappropriate and sexually suggestive objects, pictures, writing, language or drawings; or unwelcome touching or physical contact. Such conduct, whether committed by persons of the same or opposite sex, is prohibited.

**Responsibility and Complaint Procedure:**

Each manager and supervisor should maintain his workplace free from harassment, sexual harassment, and intimidation. In addition, managers and supervisors should discuss this policy with their Employees, and assure them that they are not required to endure insulting, degrading or exploitive sexual treatment, or unlawful harassment of any type. Managers and supervisors must immediately report to the Director of Employee Relations any complaints received from their employees concerning harassment, including, but not limited to, sexual harassment. Managers and supervisors must also report to the Director of Employee Relations any other potentially harassing conduct or

Effective 06/01/00

9

incidents, which they might see, hear or otherwise become aware.

Any employee affected by any type of visual, verbal or physical harassing conduct, whether from supervisors, co-workers or customers, should report the matter to his manager, the Director of Employee Relations at (888) 316-4238 ext. 5610 or the Legal Department Hotline at (888) 314-4238. Employees who in good faith complain of harassing or inappropriate conduct will not be retaliated against. An investigation of the complaint will be handled with confidentiality to the fullest extent possible. Any employee who subjects another to harassment will be subject to disciplinary action up to and including discharge. It is the responsibility of the Director of Employee Relations to make the intensely fact-specific determination of whether harassment actually has occurred, and to help determine what, if any, disciplinary or corrective action will be taken.

## (C) EMPLOYMENT-AT-WILL

National Cash Advance believes in the principle of employment-at-will. This means that you or the Company may terminate your employment at any time, for any reason or for no reason at all with or without a notice.

YOU HAVE THE RIGHT TO RESIGN AT ANY TIME. CONVERSELY, NATIONAL CASH ADVANCE MAY SEVER THE EMPLOYMENT RELATIONSHIP AT ANY TIME FOR ANY REASON, EXCEPT WHEN PROHIBITED BY LAW. Your at-will employment may not be changed by written documentation or by conduct unless such change is specifically acknowledged in writing by the President of National Cash Advance or its affiliate.

## (D) EMPLOYMENT OF RELATIVES

Employment of persons related by blood or marriage is prohibited where one of the employees will be in a position to exert influence over any condition of employment of the other employee or where the positions of the two related employees might create an appearance of impropriety. However, if the desired positions of the relatives are totally separate, the hiring of relatives shall be at the discretion of the Company.

Current employees who subsequently become related are also subject to the same policy.

Effective 06/01/00

10

*Employee Handbook*                                                    PEOPLE MANUAL

# Employment

## Introductory Period

The term "Introductory Period" is the first 90 days of continuous employment that a new Employee may work. This period only includes the days in which the Employee is actively working. Absences for any reason may result in an extension of the period. If progress, behavior, attitude, attendance or performance is not acceptable at any time during this period, the Employee may be placed on an "action plan" or termination may occur at or before the completion of the 90 day Introductory Period.

Temporary, contract and rehired Employees who have been inactive for more than 60 days, are subject to the Introductory Period. Time worked by temporary and contract Employees prior to going on the Company's payroll does not count toward the Introductory Period.

## Equal Opportunity Employment

The Company is an Equal Opportunity Employer. The Company does not discriminate on the basis of race, religion, color, national origin, sex, age, pregnancy, disability, veteran status, citizenship or any other legally protected category in connection with any phase of the employment process, including, but not limited to, hiring, promotion, discharge, compensation, and benefits.

It is also the practice and policy of the Company to comply with all applicable Federal, State and Local Labor Employment Laws.

## Harassment or Discrimination

The Company does not permit or tolerate any form of harassment of its Employees, by Employees, managers, supervisors, vendors, customers, contractors or applicants for employment. The Company is committed to maintaining a work environment that is free from harassment, where Employees at all levels are able to devote their full attention and best efforts to their jobs. Harassment, either intentional or unintentional, has no place in the work environment. Accordingly, the Company does not authorize and will not tolerate any form of harassment of or by any Employee, vendor, manager, supervisor, customer, contractor or applicant based on race, gender, religion, color, national origin, age, disability or any other legally protected category.

"Harassment" may include offensive language, jokes, or other verbal, graphic or physical conduct relating to an Employee's race, gender, sex, religion, color, national origin, age, disability or any other legally protected category which could make a reasonable person experiencing such harassment uncomfortable in the work environment, or which could interfere with a person's job performance.

While all forms of unlawful harassment are prohibited, sexual harassment deserves special mention.

Sexual Harassment includes, but is not limited to:

- Physical assaults (e.g., intentional physical conduct that is sexual in nature, such as touching, pinching, or brushing against another Employee's body).
- Unwelcome sexual advances, comments or requests for sex or sexual activities concerning one's employment or advancement, regardless of whether they are accompanied by promises or threats.
- Sexual displays or publications such as a calendar, email, sexually oriented web sites, voicemail messages or graffiti.
- Other verbal or physical conduct or writings of a sexual nature that have the purpose or effect of interfering with an individual's work performance, or creating an intimidating, hostile or offensive work environment.

**Responsibility and Complaint Procedure:**

Any Employee affected by any type of visual, verbal or physically harassing conduct, including, but not limited to, sexual harassment must report the matter to the Employee Relations Harassment Hotline.

The Employee Relations Harassment Hotline is a toll free number that may be reached by calling:
**1-866-ER-AT-CSS (1-866-372- 8277).**

It is the Employee's responsibility, without fear of reprisal, to report any form of harassment, including, but not limited to, sexual harassment, to the Employee Relations Harassment Hotline. Employees who in good faith complain of harassing or inappropriate conduct will not be retaliated against in any way.

When contacting the Employee Relations Harassment Hotline, the Employee must communicate the alleged inappropriate conduct and the steps, if any, the Employee has already taken to attempt to resolve the problem.

Once an Employee has reported alleged harassment to the Employee Relations Harassment Hotline, the Employee Relations Department will promptly conduct a discreet and thorough investigation of the claim of harassment. The investigation of the complaint will be handled with confidentiality to the fullest extent possible.

It is the responsibility of the Employee Relations Department to make the intensely fact-specific determination as to whether the harassment actually has occurred and to help determine what, if any, disciplinary or corrective action will be taken.

In addition to contacting the Employee Relations Harassment Hotline, if the Employee feels comfortable doing so and he reasonably believes that he has been subjected to or has witnessed harassment on the job, the Employee always has the right to tell the alleged harasser that the behavior is offensive and unwelcome. He may also report the matter to his supervisor or any other member of management.

Managers and supervisors must immediately report to the Employee Relations Department any complaints received from an Employee concerning harassment, including, but not limited to, sexual harassment. Additionally, managers and supervisors are to report to the Employee Relations Department any other potentially harassing conduct or incidents that they may see, hear or otherwise be aware of. They must maintain their work place free from all harassment and intimidation.

Any Employee who subjects another to harassment will be subject to disciplinary action up to and including discharge.

### Open Door Policy

If an Employee has a concern at work, he should speak with his supervisor as soon as possible. The supervisor will attempt to answer the question and/or resolve the issue. If the Employee believes his supervisor did not resolve the issue or if the issue directly involves the Employee's supervisor, then the Employee should take the issue to the next level of management or to the Employee Relations Department.

### Hours of Operation

Corporate hours are generally 8:00 a.m. to 5:00 p.m. Eastern time Monday through Friday. Branch hours are generally from 10:00 a.m. to 6:00 p.m. Monday through Saturday. At its discretion, management may alter Employees' work schedules and opening/closing times of the branches and offices.

### Attendance

Employees should report to work as scheduled and be at their workstation at their starting time and again after their lunch break at the prescribed time. Punctuality and regular attendance are in keeping with our Creed. Employees who do not call in, do not show up for work, and/or who have excessive absences or excessive tardiness may be disciplined up to and including termination.

Absences and tardies are defined as any missed time that the Employee was scheduled to work, regardless of the reason.

Whenever an Employee is unable to report to work at all or on time because of illness or emergency, the Employee must call his supervisor as far in advance as possible **prior** to his scheduled start time, or in the event of an emergency, as soon as practicable. Such notification should include a reason for the absence or tardiness and an indication of when the Employee can be expected to report to work.

# HARASSMENT POLICY

## I.   PURPOSE/SCOPE:

Advance America ("AA") will not permit or tolerate any form of harassment of any of its employees, vendors, customers, contractors, or applicants for employment.

AA is committed to maintaining a work environment which is free from discrimination and where employees at all levels are free to devote their full attention and best efforts to the job. It is the policy of AA to provide a work environment that is free from harassment, whether committed by management personnel, non-management personnel, or third parties. Harassment, either intentional or unintentional, has no place in the work environment. Accordingly, AA does not authorize and will not tolerate any form of harassment of or by any employee based on race, gender, religion, color, national origin, age, disability or any other legally protected class. The term "harassment" for all purposes includes, but is not limited to, offensive language, jokes, or other verbal, graphic or physical conduct relating to any employee's race, gender, religion, color, national origin, age, disability or any other legally protected class which would make a reasonable person experiencing such harassment uncomfortable in the work environment, or which could interfere with a person's job performance.

## II.   EMPLOYEES COVERED BY THE POLICY:

All employees of AA are covered by this policy.

## III.   RESPONSIBILITIES FOR ADMINISTRATION:

Employee Relations Department and all levels of management.

## IV.   TYPES:

Harassment situations can generally be placed into one of two broad categories: quid pro quo situations or hostile working environment situations.

• A quid pro quo situation involves, for example, a situation where employment (or a specific term of employment, such as a raise or a promotion, etc.) is conditioned upon receipt of sexual favors from an employee. Actual or potential tangible economic losses are usually involved in this type of situation.

• Hostile working environment situations occur when the employee has not suffered any tangible economic loss (such as demotion, suspension, discharge, etc.) but rather the employee has been subjected to a working environment, which the employee feels, is offensive and/or intimidating.

### SEXUAL HARASSMENT DESERVES SPECIAL MENTION

Sexual harassment includes:

• Physical assaults (e.g., intentional physical conduct that is sexual in nature, such as touching, pinching, or brushing against another employee's body.)

• Unwelcome sexual advances, comments or request for sex or sexual activities concerning one's employment or advancement, regardless of whether they are accompanied by promises or threats.

• Sexual displays or publications such as a calendar or graffiti.

• Other verbal or physical conduct of a sexual nature that has the purpose or effect of interfering with an individual's work performance, or creating an intimidating, hostile or offensive work environment.

• Retaliation for complaints of harassment.

AA regards all such conduct as creating a hostile and offensive work environment in violation of this policy. Examples of harassment may include explicit sexual propositions, sexual innuendo, sexually suggestive comments, sexually oriented "kidding" or "teasing", or "practical jokes", jokes about gender specific traits, foul or obscene language or gestures, displays of foul or obscene printed or visual material, and physical contact, such as patting, pinching, or brushing against another's body; or reading or otherwise publicizing in the work environment materials that are sexually suggestive or revealing.

If an employee finds himself/herself in a situation which the employee believes to be harassment (either of a conscious or an unconscious nature), the employee should immediately bring the situation to the attention of an appropriate member of management as outlined in the procedures below.

## V.   PROCEDURES:

Employees, without fear of reprisal, are encouraged to bring any form of harassment to management's attention by calling the Employee Relations (ER) Hotline at 1-866-ER-AT-CSS (1-866-372-8277).

If an employee is experiencing what he/she believes to be harassment, the employee should follow these steps:
1. Tell the alleged harasser that the behavior is offensive and unwelcome.

2. If the problem continues, or if the employee feels physically threatened by the alleged harasser, the employee must report the harassment to CSS by calling the ER Hotline. The employee may also inform his immediate supervisor and/or Employee Relations.

3. Make the appropriate Employee Relations Representative aware of the alleged behavior and of the steps already taken by the employee to attempt to resolve the problem.

4. If the immediate supervisor is the alleged harasser, the employee should talk with that person's supervisor and the appropriate Employee Relations Representative about the situation after reporting harassment to CSS by using the ER Hotline.

5. At this point, when the employee has reported having been subjected to harassment on the job, the appropriate Employee Relations Representative with assistance from the appropriate member of management will promptly conduct as discreet and thorough an investigation as practicable.

6. Upon completion of the investigation, AA will determine the proper course of action. Appropriate corrective action shall be taken commensurate with the seriousness of the particular offense, up to and including termination.

7. Information developed during the investigation is to be held in strict confidence. Supervisors and other members of management are to investigate and discuss a claim of harassment only with those individuals who have a need to know or who are needed to supply necessary background information. Individuals who file a complaint or otherwise participate in an investigation are asked to keep all such discussions confidential.



 

Advance America, National Cash Advance,
and United Cash Advance have
ZERO tolerance for any type of harassment

If you believe you have been harassed in any way,
report it to your manager, any other manager, DDO,
RDO or call Employee Relations toll free at:

# 1-866-ER-AT-CSS
# (1-866-372-8277)

(It is our policy to prohibit all forms of harassment based on race, color, age, disability, sex,
religion, citizenship, pregnancy, national origin or any other protected category. It includes, but is
not limited to, offensive language, jokes or other verbal, graphic or physical conduct
communicated through any type of media.)



Advance America and National Cash Advance have
ZERO tolerance for any type of harassment.

**If you believe you have been harassed in any way, <u>you</u>
<u>must</u> call the Employee Relations Harassment Hotline
toll free at:**

# 1-866-ER-AT-CSS
# (1-866-372-8277)

(It is our policy to prohibit all forms of harassment based on race, color, age, disability, sex,
religion, citizenship, pregnancy, national origin or any other protected category. It includes, but is
not limited to, offensive language, jokes or other verbal, graphic or physical conduct
communicated through any type of media.)

AA8499

Revised 9/02

AA8499.qxd 5/24/2004 7:27 AM Page 1



Advance America and National Cash Advance have
**ZERO TOLERANCE**
for any type of harassment or discrimination.

**If you believe that you have been harassed in any way,**
**<u>YOU MUST</u>**
**call the Employee Relations Harassment Hotline toll-free at:**

# 1-866-ER-AT-CSS
# (1-866-372-8277)

It is our policy to prohibit all forms of harassment based on race, color, age, disability, sex,
religion, citizenship, pregnancy, national origin or any other protected category. It includes, but is
not limited to, offensive language, jokes or other verbal, graphic or physical conduct
communicated through any type of media.

AA8499 (Rev. 5/04)