# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **DIANE MURPHY,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO.:1:05CV443-W |
| | ) Demand for Jury Trial |
| **ADVANCE AMERICA CASH ADVANCE** | ) |
| **CENTERS OF ALABAMA,** | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the Plaintiff, Diane Murphy, by and through her attorney of record, and hereby submits her brief in support of her opposition to Defendant's Motion for Summary Judgment.

Respectfully Submitted,

s/Kenneth F. Gray, Jr.
Kenneth F. Gray, Jr.
Attorney for Plaintiff

STEPHEN B. GRIFFIN & ASSOCIATES
2100 River Haven Drive
Suite 1
Hoover, AL 35244

## I. <u>STATEMENT OF THE FACTS</u>

A.  <u>RESPONSE TO MOVANT'S CLAIMED UNDISPUTED FACTS</u>

1.      Admitted

2.      Admitted

3.      Admitted.

4.      Admitted

5.      Admitted

6.      Denied. Plaintiff had the necessary qualifications for the Enterprise Branch Manager position. Plaintiff had been employed with the Defendant since March 23, 2000 as an Assistant Manager for the Enterprise Branch. (Depo. Of Plaintiff - p. 39(1-2); p.   40(1-4); p.117(4-21). In addition, Plaintiff has a college degree with a computer/clerical major while Mr. Finnegan does not have a college degree. (Pl. Ex. 1 - Application of Plaintiff(p.3); Application of Edward Finnegan (Def. Ex. A)(p.3). When Mr. Finnegan received the position of Enterprise Branch Manager, Mr. Knowles made the Plaintiff train Mr. Finnegan on how to perform the duties of Branch Manager. (Pl. Ex. 4 - Affidavit of Plaintiff); (Depo. Of Plaintiff - p. 55(10-15)).

7.      Admitted in part. Denied as to Plaintiff not having the minimal qualifications for the Branch Manager position in Enterprise. (See Response No. 6 above).

8.      Admitted

9.      Admitted.

10.     Admitted.

11.     Admitted.

12.     Admitted.

2

13.     Denied. Plaintiff had expressed an interest in the Ozark Branch Manager position dating back to when Mr. Finnegan was hired in as the Enterprise Branch Manager. In fact, Plaintiff interviewed for the position of Ozark Branch Manager with DDO Jennifer Rodriguez (Mr. Knowles supervisor) when it became available (Depo. Of Plaintiff - p. 60(1-10); p. 62(1-2)). At no time did Plaintiff ever inform Mr. Knowles that she did not want him to interview her for the Ozark Branch Manager position when it became available. (Pl. Ex. 4).

14.     Admitted

15.     Admitted.

16.     Admitted

17.     Admitted.

18.     Admitted

19.     Admitted.

20.     Admitted

21.     Admitted.

22.     Admitted.

23.     Denied. Mr. Knowles never offered the Plaintiff the Andalusia Branch Manager position. (Depo. Of Plaintiff - p. 66(15-21).

24.     Denied. Plaintiff was never offered the position so she could not decline taking the position. (See Response No. 23 above).

25.     Admitted.

26.     Denied. Plaintiff was never offered the Opp Branch Manager position. (Pl. Ex. 4).

27.    Denied. (See Response No. 26 above).

28.    Admitted.

29.    Admitted.

30.    Admitted.

31.    Admitted.

32.    Admitted.

33.    Admitted.

34.    Admitted in part. Plaintiff had more experience working with the Defendant than

       other Branch Managers. (Depo. Of Plaintiff - p. 229(7-20)).

35.    Admitted that this is a statement made by Mr. Knowles.

36.    See Response No. 35.

37.    Admitted as to salary of Hughes and Bartholomew being higher than the Plaintiff.

       Denied as to Mercer having better qualifications than the Plaintiff and denied as to

       larger store and budget size playing a role in salary as Defendant has not produced

       any evidence which shows the size and/or budget of particular store locations.

38.    Admitted.

39.    Admitted.

40.    Admitted.

41.    Denied. Defendant has produced a document marked as "Ex. E" to the Declaration

       of John Knowles. However, this document does not support the statement of fact

       made by the Defendant.

42.    Admitted.

4

43.     Admitted.

44.     Admitted in part. Plaintiff admits she was counseled but denies any wrongdoing. (Depo. Of Plaintiff - p. 159(3-23)).

45.     Admitted.

46.     Admitted.

47.     Admitted as to salary and benefits. Denied as to job duties. Plaintiff had a staff member taken away when she was brought into the Enterprise Branch and therefore she had many more duties than before. (Depo. Of Plaintiff - p. 90(14-23); p. 91(1-9)).

48.     Denied. See Response No. 47 above.

49.     Admitted.

50.     Denied. Plaintiff was not told that she had to come up with a marketing plan upon her transfer. (Depo. Of Plaintiff p. 173(1-12)).

51.     Denied. Plaintiff had implemented a marketing plan. (Depo. of Plaintiff - p. 174(10-14)).

52.     Admitted.

53.     Denied. See Response No. 51.

54.     Admitted as to Plaintiff being terminated. Denied as to reasons for termination. (Depo. Of Plaintiff - p. 200(1-5).

55.     Admitted.

56.     Admitted.

57.     Admitted.

58.     Denied. The Enterprise location had not been cleaned by Manager Edward Finnegan during his tenure there. In addition, managers were not doing the door to door marketing at other locations (Pl. Ex. 4).

59.     Admitted.

60.     Admitted.


## II. ARGUMENT

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.Civ. P. 56(c). The inquiry when ruling on a Rule 56 motion is 'whether the evidence presents a sufficient disagreement to require submission to the trier of fact or whether it is so one-sided that one party must prevail as a matter of law. *Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590 (11th Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986))*.

In *United States v. Crosby, 59 F.3d 1133 1135 (11th Cir. 1995)*, the Eleventh Circuit, responding to the Supreme Court's decision in *St. Mary's Honor Ctr. v. Hicks, 113 S.Ct. 2742 (1993)*, has narrowed the scope of the court's inquiry at this stage of the McDonnel Douglas query by emphasizing "that once the defendant satisfies its burden of articulating a legitimate non-discriminatory reason for its actions,... the sole inquiry becomes whether the plaintiff has proven intentional discrimination. The Court went on to say that proof that evidence of similarly situated white employees where treated more leniently is not conclusive proof of intentional discrimination. *Crosby, 59 F.3d 1135, 1136.* In spite of this narrowing of the issue, the

plaintiff's burden of proving "intentional discrimination," and thus pretext, at the summary judgment stage remains the same. The tighter constraints seemingly imposed by St. Mary's on proving pretext have done nothing to diminish the following statement by the Eleventh Circuit describing the plaintiff's burden of proving pretext in opposing a summary judgment motion:

In order to establish pretext, the plaintiff is not required to introduce evidence beyond that already offered to establish the prima facie case...Evidence already introduced to establish the prima facie case may be considered, and indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation and establish pretext...The burden to avoid summary judgment is not to show by a preponderance of the evidence that the reasons stated were pretext. Rather, plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext. Issues of fact and sufficiency of evidence are properly reserved for the jury. The only issue to be considered by the judge at summary judgment is whether the plaintiff's evidence has placed material facts at issue. *Hairston v. Gainesville Sun. Pub. Co., 9 F.3d 913, 921 (11th Cir. 1993)*. "In discrimination cases, an employer's true motivations are particularly difficult to ascertain, thereby making such factual determinations generally unsuitable for disposition at the summary judgment stage." *Hairston at 919*.

The plaintiff claims a prima facie case by showing that she was a member of a protected class, was qualified for the position sought, that she was not selected for the position and that the position was then left open, or, in the alternative, the position was given to a person outside the protected category. *Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981)*:

7

In the instant case, the Plaintiff was not promoted to the position of Branch Manager on two separate occasions. The first occasion when the Plaintiff was not promoted to the position of Branch Manager was when the Enterprise location became available. This position was instead given to Edward Finnegan (Caucasian) on or around May 28, 2001. Defendant makes the claim that John Knowles (Caucasian) decided to give the Enterprise Branch Manager position to Mr. Finnegan because Plaintiff lacked the necessary qualifications for the position. Mr. Knowles did not hire the Plaintiff when she began her employment. (Pl. Ex. 4). At the time the decision was made to give the Enterprise Branch Manager position to Edward Finnegan, Plaintiff had been employed with the Defendant for over a year in the position of Assistant Branch Manager. In addition, Plaintiff had a college degree with a major in computer/clerical studies. Mr. Finnegan did not have a college degree. Defendant makes the claim that the Plaintiff lacked the necessary qualifications to hold the position of Branch Manager. However, Defendant has not produced any evidence detailing what specific qualifications the Plaintiff lacked.

As with the Defendant's Enterprise location, Plaintiff was again passed up for the position of Branch Manager at the Defendant's Ozark location. This position was instead given to a Caucasian female, Deborah Mercer. Defendant claims, in the submitted declaration of John Knowles, that the Plaintiff informed Mr. Knowles that she was not interested in the Ozark Branch Manager position. This statement could not be farther from the truth. In fact, as stated earlier, the Plaintiff interviewed with the Defendant's Divisional Director of Operations ("DDO") Jennifer Rodriguez specifically for the Ozark Branch Manager position. In addition, the Plainitff informed Mr. Knowles on more than one occasion verbally that she was interested in the Ozark Branch Manager position. Now the Defendant, through Mr. Knowles own statement, is admitting that even

though the Plaintiff informed him verbally that she was interested in the Ozark Branch Manager position; and even though she interviewed with DDO Jennifer Rodriguez for the Ozark Branch Manager position, that she was never considered. The Defendant goes on to state in its submission that even if the Plaintiff was considered for the position (which clearly she was not), she would not have gotten it anyway because of Ms. Mercer's qualifications. A review of Ms. Mercer's qualifications are as follows: she received her GED in 1991 and has no formal education beyond receiving her GED. Ms. Mercer's "25 years of experience in management" consists of working as an assistant manager and floral designer at a flower shop and working as a line supervisor at ayarn manufacturing plant and a ladies clothing store. (See Mercer resume attached as exhibit to statement of John Knowles). Ms. Mercer clearly does not have the qualifications the Plaintiff had at the time the Ozark Branch Manager position became available (See Pl. Ex. 1). Plaintiff had over a year of experience working for the Defendant in management as an Assistant Branch manger for the Defendant at the time of the Ozark Branch Manager position coming open. In addition, Plaintiff had a college degree in the computer/clerical field. (See Pl. Ex. 1). A look at the job descriptions for the Assistant Branch Manager position and the Branch Manager position shows that they share many of the same job duties; duties which the Plaintiff would have had the experience performing on a daily basis when the Ozark Branch Manager job became available (Pl. Ex. 3 - Job descriptions for Assistant Branch Manager and Branch Manager). In addition, under the educational experience required section of the Branch Manager job description, it states that a college degree is preferred. Ms. Mercer had a GED. The Plaintiff had a college degree in a field which requires computer and clerical work (Pl. Ex. 3).

In *Jones v. Firestone Tire and Rubber Co., Inc.*, *977 F.2d 527 (11th Cir. 1992)*, a promotion case, the Title VII plaintiff did not have to show that he applied for position, but he had to show he was qualified. Where an employer uses an informal promotion system, in which it does not post job openings or take applications for positions, and the plaintiff has no means to know about the job, the employer has the duty to consider all those who might reasonably be interested, as well as those who learned of the job opening and expressed an interest. A plaintiff makes out a presumption of discrimination if he establishes that the company had some duty or reason to **consider him** and that he was qualified for the post. The employer cannot avoid a Title VII violation by showing that it incorrectly assumed that the plaintiff was not interested.

Defendant goes on to state that the Plaintiff was not qualified for the Dothan Branch Manager position either and, prior to the Dothan Branch even becoming open, the Plaintiff turned down the Branch Manager positions for the Andalusia and Opp locations. Again, this is simply not the case. The Plaintiff never turned down the Branch Manager positions at Andalusia and Opp because she was never offered these positions by John Knowles. (Depo. Of Plaintiff p. 66(15-21); Ex. 4). Defendant's argument is that the Plaintiff was never considered for the Dothan Branch Manager position because she had been offered the Andalusia and Opp Branch Manager positions and turned them down. The problem with that argument is that the Plaintiff was never offered these locations to be in a position where she could accept them or reject them.

On November 25, 2002, Plaintiff was given the Branch Manager position for the Ozark Location. During the course of her employment at the Ozark location, the Plaintiff received approximately 22 bonuses while she was the Branch Manager at the Ozark location. (Pl. Ex. 2 - Murphy Bonus Report). The Defendant claims that Ms. Mercer was a "team player" and helped turn

the Ozark location around while she was Branch Manager there. But where are Ms. Mercer's bonuses during the tenure of her employment as Branch Manager at the Ozark location? During the course of time as Branch Manager at Ozark, the Plaintiff also received awards for being the Manager of the Month for June 2003 and July 2003 as well as the Keys to Success Awards for excellence in all areas designated as keys to success for April, May, June and July 2003. (Depo. Of Plaintiff - Ex. 15). If qualifications are a consideration for salary for Branch managers, then clearly the Plaintiff should have been paid more than Deborah Mercer. Mercer was promoted to the Branch manager position in Ozark only because Mr. Knowles selected her over the Plaintiff. The fact that Ms. Mercer has more experience as a Branch Manager is because Mr. Knowles selected her over the Plaintiff and put her in that position even though the Plaintiff was more qualified. (See Def. Ex. "D" to Knowles Declaration).

In August 2004, while working as a Floating Branch Manager, the Plaintiff was written up by Mr. Knowles for allegedly violating the Fair Debt Collection Practice Act and the Defendant's collection policy. The Plaintiff was not the individual who violated the Fair Debt Collection Practice Act and the Defendant's collection policy. As part of her duties as a Floating Manager, the Plaintiff was placed in a location as Branch Manager with a CSR named Shmeka. (Depo. Of Plaintiff - p.160(2-6)). Both Shmeka and the Plaintiff were written up for violating the Fair Debt Collection Practice Act and the Defendant's collection policy when in fact it was Shmeka who violated these policies, not the Plaintiff. (Depo. Of Plaintiff - p. 157(5-20). Plaintiff informed Mr. Knowles that she had nothing to do with the violations and requested he show her the alleged evidence he had against her. Mr. Knowles refused to show the Plaintiff any of the evidence he supposedly had against her. (Depo. Of Plaintiff - p. 159(11-23); p. 160(1-6).

In October 2004, Plaintiff was then transferred to the Defendant's Enterprise location as Branch Manager. Plaintiff was terminated in December 2004, two months after she was transferred to the Enterprise branch. Upon being transferred to the Enterprise location, Plaintiff was told to develop a marketing plan by John Knowles. For the two years prior to Plaintiff taking over as Branch manager in Enterprise, there was no marketing plan in place. In fact, Mr. Knowles was well aware that there was no marketing plan in place the entire time prior to the Plaintiff taking over as Branch Manager. (Pl. Ex. 5 - Sworn statement of Trish Crowe). Mr. Knowles did not require Edward Finnegan, the Branch Manager in Enterprise prior to Plaintiff, to have a marketing plan in place, yet he expected the Plaintiff to develop one with weeks. (Pl. Ex. 5). In addition, Mr. Knowles was aware of the toilet being broken at the Enterprise branch while Mr. Finnegan was Branch Manager. We know this because Mr. Knowles would use that same leaky toilet when he came to the store to visit. It was not until the Plaintiff took over as Branch Manager that Mr. Knowles demanded it be fixed. (Pl. Ex. 5). The Branch Managers for those two years prior were Caucasian. (Pl. Ex. 4). In the limited time she was at the Enterprise location as Branch Manager, the Plaintiff devised a marketing plan as per the instructions of Mr. Knowles. (Depo. Of Plaintiff p. 174(10-14)). Plaintiff continually requested additional staff help at the Enterprise store from Mr. Knowles, but she never got the help even though there was an individual availabale to assist.The Plaintiff told Mr. Knowles that it was going to be impossible to do all the collections without additional assistance. The employee available to assist managers at the Defendant's various locations was named Todd. (Depo. Of Plaintiff p. 174(13-23)). Todd's job was to go from store to store and assist the Branch Managers with collections. The Plaintiff spoke directly with Todd on the telephone while employed at the Enterprise location as Branch Manager and Todd confirmed to the Plaintiff that his job was to assist the

12

different branches with collection efforts. Todd also informed the Plaintiff that John Knowles did not tell him to go to the Enterprise location and assist the Plaintiff with collections. (Pl. Ex.4). The Plaintiff had this conversation with Todd after she had gone to Mr. Knowles requesting assistance. (Pl. Ex. 4).

While employed at the Enterprise location, in addition to running the branch, cleaning the store and devising a marketing plan, the Plaintiff was told by Mr. Knowles that she would be required to conduct door-to-door marketing. Upon speaking with the Branch managers at the Defendant's other locations, Plaintiff was told that Mr. Knowles did not require them to go door-to-door for marketing purposes. (Pl. Ex. 4).

In *Combs v. Plantation Patterns, 106 F.3d 1519 (11th Cir. 1997)*, the court, quoting Hicks, said: "The fact finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, '[n]o additional proof of discrimination is required'".

In *Batey v. Stone*, 24 F. 3d 1330 (11th Cir. 1994), this Court stated that "in order to establish pretext, the plaintiff is not required to introduce evidence beyond that already offered to establish the prima facie case...Evidence already introduced to establish the prima facie case may be considered, and 'indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant during trial, will suffice to discredit the defendant's explanation' and establish pretext...The burden to avoid summary judgment is not to

show by a preponderance of the evidence that the reasons stated were pretext. Rather, plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of fact, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext."

"Issues of fact and sufficiency of evidence are properly reserved for the jury. The only issue to be considered by the judge at summary judgment is whether the plaintiff's evidence has placed material facts at issue." *Hairston* at 913, 921. "In discrimination cases, an employer's true motivations are particularly difficult to ascertain, thereby making such factual determinations generally unsuitable for disposition at the summary judgment stage." *Hairston* at 919. See also *Howard v. BP Oil Co., Inc.*, 32 F.3d 520 (11th Cir. 1994), "In the context of summary judgment, this circuit has adopted a narrow view of a Court's role in evaluating the inference to be drawn from evidence of pretext."

The Eleventh Circuit has noted that where there is sufficient evidence for the fact-finder to disbelieve the legitimate reasons for the employment decision proffered by the employer, summary judgment should not be granted. *Batey,* 1335-36. The Court, just like all courts, must make all "reasonable inferences most favorable to the party opposed to the motion." *Wally v. Button Gwinnett Bancorp, Inc.,* 1 F.3d 1198 (11th Cir. 1993). And if the plaintiff can produce evidence that the reason given for the adverse employment decision is a lie, then there is a very real inference that the real reason was a forbidden one, especially in light of a prima facie case. If an inference of improper motive can be drawn, then there must be a trial.

There are three ways that the plaintiff can show that the articulated reason is not true. One is by showing that the proffered reasons did not actually motivate the employment decision

14

(slurs, statistics, inconsistent employment decisions, secret employment decisions, failure to follow written rules, and the like). Another is by showing that the articulated reasons were insufficient to motivate the employer. In other words, the business reason offered is simply unworthy of belief. The third method is that the proffered reason has no basis in fact (unworthy of credence). Based on the evidence presented by the Plaintiff in establishing her prima facie case, and the lack of evidence presented by the Defendant to support their position for the failure to promote the Plaintiff, the disparate pay Plaintiff received in relation to other Branch Managers, the additional workload the Plaintiff received in comparison with similarly situated Caucasian Branch Managers and the pretextual reasons articulated by the Defendant for the Plaintiff being terminated, the Defendant's motion for summary judgment should be denied.

## III.  CONCLUSION

Therefore, the Defendant's motion for summary judgment is due to be **DENIED.**

Respectfully Submitted,

s/Kenneth F. Gray, Jr.
Kenneth F. Gray, Jr.

OF COUNSEL:
STEPHEN B. GRIFFIN & ASSOCIATES
2100 River Haven Drive
Suite 1
Hoover, AL 35244
(205) 402-7476

15

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served on all parties in this case via electronic filing on this the 20th day of July, 2006 using the CM/ECF system.

_____
s/Kenneth F. Gray, Jr.
OF COUNSEL

16