IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| DIANE MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:05CV443-SRW |
| | ) | (WO) |
| ADVANCE AMERICA CASH | ) | |
| ADVANCE CENTERS OF ALABAMA, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Diane Murphy brings this action against defendant Advance America Cash Advance Centers of Alabama, Inc., alleging that defendant discriminated against her on the basis of her race in violation of 42 U.S.C. § 1981 when it: (1) denied her promotions to "at least two management positions"; (2) transferred her from Ozark to Enterprise; (3) paid her less than similarly situated white employees; (4) subjected her to a hostile work environment; and (5) terminated her employment. This action is presently before the court on the motion for summary judgment filed by defendant on June 30, 2006 (Doc. # 21). Upon consideration of the motion, the court concludes that it is due to be denied as to plaintiff's promotion claim regarding the Dothan branch manager position, and granted in all other respects.

# BACKGROUND[1]

Plaintiff, a black female, was hired by Advance America on March 23, 2000 as Assistant Manager for its Enterprise branch office.   After plaintiff's manager transferred to a different branch, plaintiff told the Divisional Director of Operations, John Knowles, that she was interested in the manager position. (UF ## 1, 4).   Knowles met with plaintiff and explained that he did not think that she was qualified to be the manager.  He told her that, after she proved herself, he would give her the next available manager position, "which was supposed to be the Ozark store."  (Murphy depo., pp. 59-60).  On May 28, 2001, Murphy appointed Edward Finnegan – a white male who had been serving as the branch manager in Troy since sometime after March 27, 2001 –  for the Enterprise branch manager position. (Knowles dec., ¶¶ 6-7 and Exhibit A).

When the Ozark branch manager position became available soon thereafter, plaintiff told Knowles more than once that she was interested in the position.   (Murphy dec., p. 1). Plaintiff was interviewed for the position by Jennifer Rodriguez. (Murphy depo., pp. 60-62). Deborah Mercer, a white female, was selected and became the branch manager on September 24, 2001.  (UF # 12).

---

[1]  As it is required to do, the court has viewed the evidence presented on the motion for summary judgment in the light most favorable to the plaintiff.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992).  Defendant has set forth a statement of undisputed material facts – for purposes of this motion only – in separate numbered paragraphs with citations to the record. Plaintiff has denied some of these facts and has admitted others.  As to admitted facts, the court cites to the statement of undisputed facts ("UF #__").  Where plaintiff denies the fact or points to additional evidence, the court cites directly to the evidence.

Plaintiff spoke with Knowles about a branch manager position in Dothan. Knowles "would pretty much blow [plaintiff] off and he said he didn't know when it would open or what or how." (Murphy depo., pp. 67-68). Soon thereafter, on September 30, 2002, defendant promoted Jennifer Baker, a white female, to the Dothan branch manager position. (Id.; UF # 21).

On November 25, 2002, Knowles promoted plaintiff to the Ozark branch manager position. Shortly thereafter, another branch manager told plaintiff that plaintiff's salary was less than that of the other branch managers. (UF ## 29, 31). Plaintiff received a raise in August 2003. In June 2004, plaintiff was transferred to the position of "floating branch manager." She received the same salary and benefits after her transfer and retained the same basic duties. (Knowles dec., ¶¶ 28, 29).[2]

On August 3, 2004, Knowles counseled plaintiff regarding a customer complaint. In an "employee counseling report," Knowles stated:

> In violation of Federal Law – to wit; The Fair Debt Collections Practices, and Company Policy, you allowed your subordinate, Shmeka Cohen, to contact and leave detailed messages regarding a customer[']s account with third party contacts. Also in violation of same, false names were used and left with third parties in an attempt to deceive the customer into calling a number other than the branch number. Also in violation of same, threatening remarks were left with third parties in an attempt to [frighten] the third parties into pressuring the customer to contact or pay you. Also, in violation of same, messages were left on third parties answering machine detailing the customer[']s information. Any further violation of the Fair Debt Collection Laws and Company Policies

---

[2] Plaintiff "denies" this fact (# 41), but does not cite to any evidence controverting Knowles' statement in his declaration. (See Knowles dec. ¶ 29).

regarding collection practi[c]es will result in your immediate termination. (Murphy depo, pp. 156-62 and Exhibit 9).  Plaintiff responded that she had no recollection of the facts alleged against her, that she had asked Knowles if she could see the evidence but her request was refused, and that she had spoken with the customer on several occasions and the customer had not complained.   Plaintiff refused to sign the counseling report.  (Id.).

On October 4, 2004, Knowles transferred plaintiff to the Enterprise branch due to a corporate reorganization.  (UF ## 45, 46; Exhibit F to Knowles dec.).  Plaintiff received the same salary and benefits after the transfer.  (UF # 47).   However, she had "a lot more to do" because the office had more customers and a lot more bad debt.  (Murphy depo., pp. 90-92). According to plaintiff, she had the "[s]ame basic outline [of duties] but more things to do. More bad debt to chase down.  More people to tend to." (Id.).   When Finnegan was the Enterprise branch manager, he had one more employee working in the office; when plaintiff assumed the job, one employee was taken away, leaving just plaintiff and one other employee.  However, in addition to his responsibilities as branch manager, Finnegan also served as training manager for Enterprise.  Plaintiff did not assume these additional training responsibilities when she became the Enterprise branch manager.  (Id.).

When plaintiff was transferred to the Enterprise branch, Knowles directed her to come up with a marketing plan for the branch.  (Knowles dec., ¶ 35; Murphy dec., p. 2; Murphy

depo., pp. 172-73).[3]  On November 2, 2004, Knowles conducted an audit of the Enterprise branch.  (Knowles dec., ¶ 36).  Although plaintiff had a marketing plan (Murphy depo., p. 174), Knowles determined that she had not implemented a marketing plan (Knowles dec., ¶ 36).  On December 16, 2004, Knowles conducted another audit of the Enterprise branch. (UF # 52).  In the marketing section of the audit, Knowles gave the branch 7 points out of a possible 15 points.  He answered negatively to the questions: (1) "Is the Local Store Marketing Binder accessible, current, and productive?"; (2) "Is the referral program in place and used correctly?"; (3) "Is the current marketing program being used effectively?"; and (4) "Is the location meeting its expectations for growth?"  In the "Comments" section, Knowles noted:

> 1 – Daily/Weekly Tracking sheets in[]complete.  2 – Team Members Marketing program sheets not available. 3 – No evidence of Street Marketing, Tear Sheet Route, Flyer Route, exist[s].  Cannot find proof of any Marketing Activity.  When asked Manager Diane Murphy produced a one page sheet of paper with one set of apartments where door hangers were placed with a date of 12/13/04 as the date of the marketing activity.  No other proof was presented.  She said she had other sheets with information on them but did not know what happen[e]d to them.    CONCLUSION: THE REQUIRED MARKETING PROGRAM ACTIVITY IS NOT BEING WORKED THEREFORE, IT IS INEFFECTIVE.  THIS IS A REPEAT FINDING FROM THE PREVIOUS DDO AUDIT DATED 11/2/04.

(Murphy depo., pp. 168-76 and Exhibit 10, p. 10).[4]  Knowles also indicated that the location

---

[3] Plaintiff "denies" this fact.  However, in her declaration, she states, "I was then told by Mr. Knowles to develop a marketing plan immediately upon my arrival as Branch Manager at the Enterprise location . . . ."  (Murphy dec., p. 2).

[4] Plaintiff testified as follows:

was not meeting the region's collection standards.  He noted, "NSF 10.9%, WO 18.5% MTD

and 19.1% YTD, Pay to Charge Ratio = .33 (33%).  Large time lapse between collection

activity on Written Off Customers.  Field Calls are not being made timely.  Collection

---

Q.  You had three months to get a marketing plan in effect and you hadn't done it?

A.  That's what [Knowles] said.  I had a marketing plan.  I asked John Knowles several times to send me some help because I could not do everything that was called to do during the course of the day with one less person.  I didn't have half the help that Edward Finnegan had and I told him that I needed help.  He stated to me don't worry about it.  We will eventually get you somebody in because we've got this one, his name is Todd.  He was a floater and he was going around helping out in the branches because there was a high rate of bad debt at that time.

Q.  It appears from this that your boss couldn't find any evidence of marketing, . . . and you only produced a small amount of documents relating to a December 13, 2004 attempted marketing, correct?

A.  That's what he is stating.

Q.  Did you give him any other documents?

A.  I have him an additional page to what I had in the marketing book.

Q.  And when did you do that?

A.  That day when he requested – he asked for my marketing.  I said well I don't have anything organized. This is what I have.  I said there's an additional page. That's when I gave him that page.

Q.  Right.  Now, he found that unacceptable that you had not done your marketing plan, correct, in his mind?

A.  Right.  He had something [t]hat I did not do my marketing plan.

Q.  Had you done a marketing plan?

A.  Yes, I had to the best of my knowledge and my ability with the help that I had.

(Murphy depo., pp. 174-76).

program not being work[ed] properly and effectively on Writ[t]en Off Customers. REPEATING FINDING FROM PREVIOUS DDO AUDIT DATED 11/2/04." (Murphy depo., pp. 168-76 and Exhibit 10, p. 11).

On December 29, 2004, Knowles fired plaintiff. He noted her "poor performance" and indicated that her initiative and quality of work were unsatisfactory. The reason he gave for the termination was:

> (1) - Violation of Company Policy and the FDCPA. I.e. Refusal to allow customer to rewrite without justification.
> (2) - Failure to follow instructions. I.e. Failure to set up a Center Marketing Plan as directed.
> (3) - Non compliance of the Company Collection Policy.

Plaintiff signed the termination report but wrote, "I do not agree & do not think this decision was made fairly." (Knowles dec., ¶ 39 and Exhibit H; Plaintiff's depo., pp. 190-97 and Exhibit 15, p. 4).

### THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact. Hairston v. Gainesville Publishing Co., 9 F.3d 913 (11th Cir. 1993). In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that if a party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to their party's case, and on which their party will bear the burden of proof

at trial," summary judgment shall be granted.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial. . . We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment. . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56 except the mere pleadings themselves. . . ."

Id. at 324.

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.  Matsushita Electrical Industrial Company v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party.  Welch v. Celotex Corp., 951 F.2d 1235, 1237 (11th Cir. 1992); Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987).  It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.  Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact,

then the court should refuse to grant summary judgment." <u>Barfield v. Brierton</u>, 883 F.2d 923, 933-34 (11th Cir. 1989) (citation omitted).

## DISCUSSION

### Hostile Environment Claim

Plaintiff "admits" that her hostile environment claim is based only on Knowles requirements that she: (1) clean the toilet; and (2) conduct door-to-door marketing. (<u>See</u> UF # 57 and plaintiff's response).  John Knowles visited the Enterprise store shortly after plaintiff was assigned there as branch manager.  He observed that the store was dirty, and told plaintiff that somebody needed to clean the toilet.  None of the stores used a cleaning service; in each branch office, the managers and employees were responsible for cleaning the office, including the toilet. (Murphy depo., pp. 176-80).  Knowles told plaintiff to come up with a cleaning schedule.  He said that "he realized it should have been taken care of when Edward Finnegan or whoever else was there but it needed to be taken care of at that point." (<u>Id</u>., p. 180).  Plaintiff and Lisa, her white branch employee, split the cleaning evenly. (<u>Id</u>., p. 181-82, 224-25).  Plaintiff's complaint is apparently based not on the fact that she had to continue cleaning the toilet and the branch office, but that she was made to clean up after Edward Finnegan had left the mess.  (<u>Id</u>., pp. 221-22).[5]

The door-to-door marketing was required by defendant's company policy. (Murphy

---

[5] Plaintiff testifies that Finnegan was not "written up" for the toilet, but her testimony does not demonstrate that plaintiff has personal knowledge of Finnegan's evaluations or disciplinary history. (Murphy depo., pp. 222-23).

9

dec., p. 2).  Knowles told plaintiff that Deborah Mercer marketed by rolling up the marketing

materials and throwing it into front yards, but that plaintiff had to "literally go door-to-door

to houses to market."  (<u>Id</u>.).  Additionally, "many" branch managers at other locations told

plaintiff that they did no door-to-door marketing.  Others did door-to-door marketing, but did

not have to do "the same amount as [plaintiff] did."  (<u>Id</u>., pp. 1-2).

Defendant has an anti-harassment policy which includes reporting procedures, and

plaintiff was aware of the policy.  (UF # 59).  Plaintiff admits that she never used defendant's

complaint procedures to report any harassment or discrimination.  (UF. # 60).

To prevail on her hostile environment claim, plaintiff must establish that: (1) she

belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the

harassment was based on her race; (4) the harassment affected a term, condition, or privilege

of her employment; and (5) a basis for holding the employer liable.  <u>See</u> <u>Johnson v. Booker</u>

<u>T. Washington Broadcasting Service, Inc.</u>, 234 F.3d 501, 508 (11th Cir. 2000).  Defendant

argues that it is entitled to summary judgment because plaintiff has not established that:

(1) the conduct of which she complains was based on her race; or (2) that the alleged

instances of conduct were sufficiently "severe or pervasive" to alter the terms and conditions

of her employment.  Defendant further argues that it is entitled to summary judgment on the

basis of the <u>Faragher/Ellerth</u> defense.  Although plaintiff's brief mentions evidence of having

to clean the store and conduct door-to-door marketing (Plaintiff's brief, p. 13), the plaintiff

does not respond to defendant's arguments regarding her hostile environment claim.

Plaintiff has not introduced evidence demonstrating a genuine issue of material fact regarding the third element – whether she was made to clean the toilet and conduct door-to-door marketing because of her race.  Although plaintiff states that "many" other branch managers were not required to conduct door-to-door marketing, she has not identified these managers and has not introduced evidence of their races.[6]  Plaintiff's evidence that Mercer was permitted to throw marketing materials in front yards and that Finnegan did not keep the toilet clean or have a marketing plan is not sufficient to permit an inference that Knowles required plaintiff to clean the toilet and conduct door-to-door marketing because of her race.

To satisfy the fourth element, conduct must be objectively[7] "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993)(quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)).  "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is a physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23.  Plaintiff has not introduced evidence regarding the number of times, if any, she was actually required to go

---

[6] Several other branch managers in Knowles' division during plaintiff's tenure were also black.  (Knowles dec., ¶¶ 3, 25 and Exhibit D).

[7] Defendants do not appear to contend that plaintiff did not subjectively perceive the environment to be sufficiently severe or pervasive.

door-to-door to market.    Additionally, plaintiff's own testimony on the "toilet cleaning"

requirement is that it is the responsibility of all of the branch managers.  To the extent that

plaintiff has demonstrated that the requirement was not enforced against Finnegan so that she

had to perform cleaning tasks that should have been completed before her arrival, the court

concludes that the impact on the terms and conditions of plaintiff's employment was of short

duration and was minimal. Plaintiff's evidence does not permit a reasonable conclusion that

she was subjected to conduct which was objectively sufficiently severe or pervasive to create

an abusive working environment.

Since plaintiff has not demonstrated the existence of a genuine issue of material fact

with regard to two elements of her hostile environment claim, defendant is entitled to

summary judgment on the claim.[8]

## Disparate Treatment Claims

### Analytical Framework

The <u>McDonnell Douglas</u>/<u>Burdine</u>[9] framework was established by the Supreme Court

for evaluating a Title VII plaintiff's claims of discrimination against an employer where, as

here, there is no direct evidence of discrimination.  <u>See</u>  <u>Combs v. Plantation Patterns</u>, 106

F.3d 1519, 1527-28 (11th Cir. 1997).  This analytical framework is also applicable to race

discrimination claims asserted pursuant to 42 U.S.C. § 1981.  <u>Standard v. A.B.E.L. Servs.,</u>

---

[8]   For this reason, the court does not address defendant's argument regarding the <u>Ellerth/Faragher</u> defense.

[9]   <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).

Inc., 161 F.3d 1318, 1330 (11th Cir.1998).  The plaintiff must first make out a *prima facie* case of discrimination.  Burdine, 450 U.S. at 252-53; Walker v. Mortham, 158 F.3d 1177, 1183 (11th Cir.1998); Combs, 106 F.3d at 1527-28.  "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee.  If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case."  Id. (quoting Burdine, 450 U.S. at 254); Walker, *supra*.

If the plaintiff establishes a *prima facie* case, the employer has the burden of producing "legitimate, non-discriminatory reasons for the challenged employment action." Combs, 106 F.3d at 1528 (citing McDonnell Douglas, 411 U.S. at 802).  "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Combs, 106 F.3d at 1528 (quoting Burdine, 450 U.S. at 257).  If the employer articulates a legitimate, nondiscriminatory reason for its decision, the mandatory inference of discrimination arising from the *prima facie* case is destroyed. Walker, 158 F.3d at 1184.  The plaintiff must then produce evidence "including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision."  Combs, 106 F.3d at 1528.

<u>Pay Claim</u>

To establish her *prima facie* case of pay discrimination, plaintiff must demonstrate

13

that she performs a job that is similar to one performed by a higher paid individual outside her protected class. See Ledbetter v. Goodyear tire and Rubber Co., 421 F.3d 1169, 1185 (11th Cir. 2005). Defendant argues that plaintiff cannot establish a *prima facie* case as to her pay claim and, further, that she cannot establish that the legitimate, nondiscriminatory reasons it has articulated are pretextual.

The court does not decide whether plaintiff has established a *prima facie* case of pay discrimination because it is apparent that she has not established pretext. Plaintiff's claim is based on a pay disparity at the time she was promoted to branch manager of the Ozark store. (UF # 33). Knowles, the decisionmaker, states that he sets the salary of branch managers based upon his consideration of their experience and qualifications and the size of the branch to which the manager is being assigned. (Knowles dec., ¶ 24). Knowles states that the white branch managers in his division who had a higher salary than plaintiff at the time that she was promoted to branch manager "managed a larger store and/or had better qualifications and experience than [plaintiff]." (Id., ¶ 26). The two white managers who then had higher salaries than plaintiff's ($23,004.80) were Deborah Mercer (then Hughes)($24,564.00) and Eunice Bartholomew ($24,999.78). (Id. and Exhibit D). According to Knowles, Mercer "had over 25 years of prior management experience and managed a larger store (Eufaula # 1635) with almost twice the budgeted revenue ($25,406) of the Ozark store ($13,325)."[10] He also testifies that Bartholomew's store (Dothan) had

---

[10] In June 2004, when plaintiff became a "floating" manager and, in October 2004, when she was transferred to Enterprise, her salary was higher than six white branch managers in Knowles' division. (Exhibit D to Knowles dec.).

14

three times the budgeted revenue of the Ozark store.  (Id).

>    With regard to her pay claim, plaintiff argues only that:

>    [i]f qualifications are a consideration for salary for Branch managers, then clearly the Plaintiff should have been paid more than Deborah Mercer.  Mercer was promoted to the Branch manager position in Ozark only because Mr. Knowles selected her over the Plaintiff.  The fact that Ms. Mercer has more experience as a Branch Manager is because Mr. Knowles selected her over the Plaintiff and put her in that position even though the Plaintiff was more qualified.

(Plaintiff's brief, p. 11).  She "denies" that Mercer has better qualifications than plaintiff, and denies that store and budget size play a role in salary "as Defendant has not produced any evidence which shows the size and/or budget of particular store locations." (Plaintiff's brief, p. 4, response to UF # 37).

>    Plaintiff seeks to establish pretext by proof that plaintiff earned bonuses and awards while she was branch manager at Ozark and by arguing that Mercer had more experience as a branch manager only because defendant discriminated against plaintiff in selecting Mercer earlier.  However, with regard to Mercer's qualifications, Knowles states that she had "over 25 years of prior management experience."   (Knowles dec., ¶ 26).  He did *not* say that he paid Mercer a higher salary because she earned more bonuses or awards than plaintiff, nor did he say that he considered only experience as a branch manager in determining salary.  Plaintiff's apparent disagreement with the factors considered by Knowles is immaterial.  "If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Quarreling with that reason is not sufficient."  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079 (11th Cir. 2004)(citation omitted).

Additionally, plaintiff's contention that defendant failed to produce any evidence of the size and budget of particular stores is without merit.    Knowles' declaration regarding the size and budgets of the stores managed by the two white managers earning a higher salary than plaintiff at the time she was promoted to branch manager *is* evidence.  Plaintiff has not introduced any evidence to rebut it.[11]    She has failed to demonstrate that the reasons articulated by Knowles for the pay disparity are pretextual.  Accordingly, defendant is entitled to summary judgment on plaintiff's discriminatory pay claim.

<u>Transfer Claim</u>

To establish a claim of discrimination, plaintiff must demonstrate, as part of her *prima facie* case, that she suffered an adverse employment action.  <u>Davis v. Town of Lake Park, Florida</u>, 245 F.3d 1232, 1238 (11th Cir. 2001).  "An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'"  <u>Gupta v. Florida Bd. of Regents</u>, 212 F.3d 571, 587 (11th Cir. 2000).  "[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."  <u>Davis</u>, *supra*, 245 F.3d at 1239.

In this case, there is nothing in the record to indicate that the action at issue was

---

[11]  Additionally, the defendant's burden at this stage of the analysis is only that it articulate its reasons, not that it prove those reasons.

anything other than a lateral transfer. Plaintiff has not provided evidence that the transfer

resulted in "lesser pay, responsibilities, or prestige," or that it otherwise caused a substantial

negative impact on the plaintiff. See Doe v. Dekalb County School Dist., 145 F.3d 1441,

1452 (11th Cir. 1998). Plaintiff's testimony that, upon transfer, she had the "[s]ame basic

outline [of duties] but more things to do" – *i.e.*, "[m]ore bad debt to chase down" and "[m]ore

people to tend to"[12] – is insufficient to permit a conclusion that plaintiff's transfer  is

objectively adverse. Fed. R. Civ. P. 56(e) requires that the party opposing summary

judgment "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ.

P. 56(e). The Eleventh Circuit has "'consistently held that conclusory allegations without

specific supporting facts have no probative value.'" Leigh v. Warner Bros., Inc., 212 F.3d

1210, 1217 (11th Cir. 2000)(quoting Evers v. General Motors Corp., 770 F.2d 984, 985 (11th

Cir. 1985)); see also Miller v. Citizens Security Group, Inc., 116 F.3d 343, 346 (8th Cir.

1997)("A conclusory statement in an affidavit, however, cannot create a genuine issue of

material fact which precludes summary judgment."). Plaintiff's testimony that the Enterprise

location was "a lot" busier because it had more bad debt and more customers is not

sufficiently specific to demonstrate that plaintiff's transfer from "floating" manager at Ozark

to branch manager at Enterprise was objectively materially adverse. Thus, plaintiff has not

met her burden on the present motion of establishing a *prima facie* case of discriminatory

---

[12] Murphy depo., pp. 90-92.

transfer.[13]

## Termination Claim

A plaintiff may establish a *prima facie* case of discriminatory discharge by showing that she is a member of a protected class, that she was qualified for her position, that she was terminated and that she was replaced by someone outside her protected class.  See Hawkins v. Ceco Corporation, 883 F.2d 977, 982 (11th Cir. 1989)(citing Marks v. Prattco, 607 F.2d 1153 (5th Cir. 1979)).   In lieu of showing that she was replaced by a person outside her protected class, a plaintiff alleging discriminatory termination may instead establish a *prima facie* case of discriminatory termination by showing that "[her] employer treated similarly situated employees outside [her] classification more favorably . . . ."  Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

Plaintiff does not clearly argue that she has satisfied a *prima facie* case.  She does not direct the court to evidence regarding the race of her replacement.  She argues that Knowles did not require Finnegan to have a marketing plan in place for the two years prior to her

---

[13] Even if plaintiff had established a *prima facie* case as to the transfer, however, defendant has produced evidence that Knowles transferred plaintiff from the position of "floating" manager to branch manager at Enterprise due to a corporate reorganization and with the approval of the Regional Director of Operations.  (Knowles dec., ¶ 32; Stewart dec., ¶¶ 2-3; UF ## 45-46).  The manager slot had been empty in Enterprise for a few months at the time of the reorganization. Knowles transferred plaintiff to fill the vacant manager slot in Enterprise and transferred a manager (a white female) from Dothan to plaintiff's previous position in Ozark.   As part of the reorganization, the Ozark store was transferred to the supervision of a DDO other than Knowles. (Murphy depo., pp. 92-100).  Plaintiff has not demonstrated that the reason articulated by defendant – the corporate reorganization – is pretextual.

assignment to the branch.[14]  Even assuming that this is so, this evidence does not establish

that Finnegan and plaintiff were similarly situated.  Defendant terminated plaintiff for three

reasons: (1) the failure to implement a marketing plan; (2) the violation of company policy

and the Fair Debt Collection Practices Act; and (3) noncompliance with the company's

collection policy.   Plaintiff has not produced any evidence that Finnegan was involved in

any violation of company policy regarding collections or any violation of the Fair Debt

Collection Practices Act.  Plaintiff argues that the FDCPA violation was committed by

Shmeka, her subordinate, that she informed Knowles of this, and that he "refused to show

the Plaintiff any of the evidence he supposedly had against her."  (Plaintiff's brief, p. 11).

Knowles wrote plaintiff up for allowing her subordinate to commit the violations.  Plaintiff

testified that Shmeka was also written up for the alleged infraction. (Murphy depo., pp. 156-

60 and Exhibit 9).

However, plaintiff has directed the court to no evidence of record – and the court has

found none – indicating that the Knowles did not believe that plaintiff had allowed Shmeka

---

[14] Plaintiff states, in her declaration, "There was no marketing plan in place at the Enterprise location when I was transferred there as Branch Manager for the two years prior where then were Caucasian Branch managers running that location."  (Murphy dec., p. 2).  Although plaintiff may testify that there was no marketing plan when she arrived, her declaration does not indicate how she has knowledge of the state of the branch for the two years prior to her arrival.  Plaintiff's Exhibit 5, the statement from Trish Crowe, bears a notary's signature; however, it is neither dated nor sworn to and, thus, is not admissible evidence.   See Carr v. Tatangelo, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003)("Unsworn statements 'do[] not meet the requirements of Fed. Rule Civ. Proc. 56(e)' and cannot be considered by a district court in ruling on a summary judgment motion.")(citation omitted).

to commit the reported FDCPA infraction.[15]  Additionally, even assuming that Knowles'

decision to write plaintiff up because of her subordinate's misconduct was unfair, "[a]

plaintiff does not shift the burden to the defendant under McDonnell Douglas merely by

stating that he was fired or treated unfavorably."  Morris v. Emory Clinic, Inc., 402 F.3d

1076, 1082 (11th Cir. 2005).  Rather, he must "establish a *prima facie* case which includes

identifying an individual who replaced him or was treated better than he was who was not

a member of his protected class . . . ."  Id.  Plaintiff has not demonstrated that Finnegan – or

any other employee outside her protected class – engaged in conduct similar to hers and was

treated more favorably.  Accordingly, she has not established a *prima facie* case of

discriminatory termination, and defendant is entitled to summary judgment on this claim.[16]

Promotion Claims

To establish a *prima facie* case of discrimination with regard to her promotion claims,

plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified

and applied for the promotion; (3) she was rejected despite her qualifications; and (4) after

plaintiff's rejection, defendant filled the position with a person outside of plaintiff's protected

---

[15]  In Jones v. Bessemer Carraway Medical Center, 137 F.3d 1306 (11th Cir.), *superseded
in part on other grounds on denial of rehearing*, 151 F.3d 1321 (11th Cir. 1998), the court noted that
the plaintiff may establish a *prima facie* case of discrimination by showing: "(1) the plaintiff is a
member of a protected class; (2) the plaintiff has engaged – either (a) disputedly or (b) admittedly
– in misconduct similar to persons outside the protected class; and (3) that similarly situated,
nonminority employees (that is, persons outside the protected class) received more favorable
treatment."  137 F.3d at 1311 n. 6.

[16]  Additionally, plaintiff has not produced evidence demonstrating the existence of a genuine
issue of material fact regarding whether all of defendant's articulated reasons for her termination
were pretextual.

group or continued to seek applicants for the position.  <u>Summerlin v. M & H Valve Co.</u>, 167

Fed. Appx. 93, 94-95 (11th Cir. Jan. 17, 2006)(unpublished opinion)(citing <u>Walker v.</u>

<u>Mortham</u>, 158 F.3d 1177 (11th Cir. 1998)).

<em>Enterprise and Ozark Branch Manager Positions</em>

Concerning plaintiff's claims based on defendant's failure to select her as the branch

manager in Enterprise and as the branch manager in Ozark, defendant argues that plaintiff

cannot establish a prima facie case because: (1) she cannot show that she met the minimum

qualifications for those promotions; and (2) that she cannot prove that she was equally or

more qualified for the positions than the selectees, Finnegan and Mercer.  Plaintiff need not

demonstrate, as part of her *prima facie* case, that her qualifications were equal to or better

than those of the selectees.  <u>Walker</u>, *supra*, 158 F.3d at 1191-92.  Thus, the court does not

address defendant's argument regarding relative qualifications at this stage of the analysis.

With regard to minimum qualifications, plaintiff argues that "[d]efendant has not

produced any evidence detailing what specific qualifications the Plaintiff lacked."

(Plaintiff's brief, p. 8).   Plaintiff's observation is correct; the evidence cited by defendant

establishes, at most, that Knowles did not believe plaintiff to be qualified.  Defendant's

evidence does not address the specific qualifications that plaintiff failed to meet.  (<u>See</u>

Knowles dec., ¶¶ 6-9).  However, for issues on which the non-movant bears the burden of

proof at trial, "the moving party is not required to support its motion with affidavits or other

similar material negating the opponent's claim in order to discharge [its initial burden on

summary judgment].  Instead, the moving party simply may show [ ] – that is, point[ ] out to

21

the district court – that there is an absence of evidence to support the non-moving party's case." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993)(quoting U.S. v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991)(*en banc*)).

As noted above, defendant argues that plaintiff cannot establish that she was minimally qualified for the branch manager vacancies filled by Finnegan and Mercer.  To satisfy this prong of her *prima facie* case, plaintiff must introduce evidence: (1) of the minimum requirements for the position; and (2) that she met those requirements.  Plaintiff seeks to prove her qualifications by filing copies of the job descriptions for the positions of Assistant Branch Manager and Branch Manager, arguing that the fact that she performed the job duties of Assistant Branch Manager for more than a year demonstrates that she had the experience necessary to perform the Branch Manager position.  (Plaintiff's brief, p. 9).  It appears from the "Bates stamps" that the job descriptions (Plaintiff's Exhibit 3) were produced to the plaintiff in discovery.  However, plaintiff has filed neither the request to which these documents were responsive, nor any explanatory affidavit.  Thus, there is no evidence permitting the inferences that: (1) the assistant branch manager position description filed by plaintiff was in effect between March 23, 2000, when plaintiff began working as an assistant branch manager, and May 28, 2001, when Finnegan was selected for the Enterprise branch manager position, or the later date when Mercer was selected as branch manager at Ozark; and (2) the branch manager position description was the one in effect in May 2001 and September 2001, when Finnegan and Mercer were selected for their respective branch manager positions.  The present action was filed nearly four years after the Enterprise and

Ozark promotion decisions at issue; the discovery deadline expired in May 2006, five years after these decisions.  Thus, the mere fact that these position descriptions were produced in discovery does not permit the inference that they were in effect during the time at issue.[17] Plaintiff directs the court to no other evidence regarding the minimum qualifications for the positions at issue.  Accordingly, she has failed to demonstrate the existence of a genuine issue of material fact regarding the "qualification" prong of her *prima facie* case, and defendant is entitled to summary judgment on these claims.[18]

*Dothan Branch Manager Position*

Plaintiff's final claim is that defendant discriminated against her when it failed to select her for the position of Dothan branch manager in September 2002.  Defendant does not argue that plaintiff cannot demonstrate that she was qualified for this promotion.  Rather, defendant contends that plaintiff cannot prove a *prima facie* case because "[p]laintiff cannot establish that she was considered for the Dothan Branch Manager position as John Knowles testified that she was not."  (Defendant's brief, p. 16).[19]  As defendant argues, John Knowles

---

[17]  The court further concludes that the fact that plaintiff was promoted to branch manager on November 25, 2002 does not support a reasonable inference that plaintiff was qualified to be a branch manager in May and September 2001.

[18]  In view of this conclusion, the court does not reach defendant's argument that plaintiff has not established pretext.

[19]  In its reply brief, defendant suggests that, because plaintiff argues that she "was not promoted to the position of Branch Manager on two separate occasions" and because she did not compare her qualifications with those of the person who received the Dothan branch manager position as she did for the Enterprise and Ozark positions, she "apparently does not contend that the

(continued...)

testifies that he did not consider plaintiff for the Dothan branch manager position. He states that he asked plaintiff whether she wanted to be considered for the position and she declined. (Knowles dec., ¶ 16). Thus, it appears that defendant contends that plaintiff cannot establish her *prima facie* case because she cannot demonstrate that she "applied" for the position.

However, as defendant recognizes,[20] "when an employer uses [informal methods for promotion consideration], it has a duty to consider all those who might reasonably be interested, as well as those who have learned of the job opening and expressed an interest." Jones v. Firestone Tire and Rubber Co., Inc., 977 F.2d 527, 533 (11th Cir. 1992).[21] Contrary to Knowles' testimony, plaintiff testified that she "constantly asked Mr. Knowles" about the position in Dothan, that he "would pretty much blow [her] off and he said he didn't know when it would open or what or how," and "the next thing [she] knew they had already hired a manager [Jennifer Baker] for that position." (Murphy depo., pp. 67-68). Taken as true, this testimony proves that plaintiff specifically expressed an interest in the Dothan position to

---

[19](...continued)
Dothan Branch Manager promotion decision was discriminatory." (Defendant's reply brief, p. 1 n. 1). However, on page 10 of her brief, plaintiff responds to defendant's argument regarding the Dothan position. Thus, the court concludes that plaintiff intends to pursue this claim.

[20] See Defendant's brief, at p. 14 n. 9.

[21] It appears from Knowles' declaration that defendant uses an informal promotion process. (See Knowles dec., ¶ 9)("I told Plaintiff that, if she later improved and became qualified, she would be considered for promotion with her peers to any available Branch Manager position – not a specific location."); see also Murphy depo., p. 69 (plaintiff not aware of any application or interview process for Dothan position) and pp. 61-62 (to apply for Ozark position, plaintiff interviewed with Jennifer Rodriguez ; Rodriguez asked plaintiff if she was interested in the job).

Knowles and, thus, that he had a duty to consider her for the position. Plaintiff's testimony is sufficient to demonstrate that she "applied" for the position, for purposes of establishing her *prima facie* case.

Defendant further argues that plaintiff cannot establish pretext, citing to evidence that: (1) plaintiff does not know the qualifications of the selectees for any of the positions; (2) that plaintiff was offered and declined branch manager positions before the Dothan position was filled; and (3) that defendant later promoted plaintiff to the position of branch manager in Ozark. However, the reason articulated by defendant for its decision not to select plaintiff as manager in Dothan is that, according to Knowles, he did not consider her because she told him that she did not want to be considered for the position. (Knowles dec., ¶ 16).[22] As noted above, plaintiff testified to the contrary. (Murphy depo., pp. 66-67). Additionally, while plaintiff testified that she would not have moved to Andalusia for personal reasons, she denies that she was offered and declined the positions at either Andalusia or Opp before the Dothan position was filled. (Murphy depo., pp. 65-69).

> The only question remaining, then, is whether [plaintiff] may proceed to trial on evidence that only undermines the credibility of [defendant's] asserted reason for not considering her for the . . . position, without directly showing that [defendant] harbored an illegal motive. As [the Eleventh Circuit] has repeatedly held, [an employment discrimination] plaintiff may defeat a motion for summary judgment by undermining the credibility of a defendant's explanation for its actions:

---

[22] Knowles did *not* state that he selected Baker over plaintiff because Baker was more qualified. Thus, the relative qualifications of plaintiff and Baker are not relevant to the pretext analysis.

> [P]roof that a defendant's articulated reasons are false is not *proof* of intentional discrimination; it is merely *evidence* of intentional discrimination. However, *evidence* of intentional discrimination is all a plaintiff needs to defeat a motion for summary judgment. That evidence must be sufficient to create a genuine factual issue with respect to the truthfulness of the defendant's proffered explanation.

Arrington v. Cobb County, 139 F.3d 865, 875 (11th Cir. 1998)(quoting Howard v. BP Oil Co., 32 F.3d 520, 525 (11th Cir. 1994))(emphasis in original). Plaintiff's testimony clearly undermines the credibility of Knowles' stated reason for his failure to award the Dothan position to plaintiff and, thus, is a sufficient showing of pretext to overcome the present motion for summary judgment. Accordingly, defendant's motion is due to be denied as to this promotion claim.

## CONCLUSION

For the foregoing reasons, it is

ORDERED that defendant's motion for summary judgment (Doc. # 21) is DENIED as to plaintiff's claim that defendant discriminated against her when it failed to select her for the position of branch manager in Dothan in September 2002. In all other respects, the motion is GRANTED.

Done, this 1st day of November, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE